### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH S. AUTERI, M.D. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 22-3384 |
| : | |
| VIA AFFILIATES, d/b/a : | |
| DOYLESTOWN HEALTH PHYSICIANS. : | |

### MEMORANDUM

**SURRICK, J.**                                                                 **OCTOBER 30, 2023**

Presently before the Court is Defendant's Motion to Dismiss Counts II and III of the Complaint for Failure to State a Claim. (ECF No. 6). For the following reasons, Defendant's Motion is granted in part without prejudice and denied in part.

### I.  BACKGROUND

Plaintiff, Dr. Joseph Auteri, is a cardiac surgeon who was employed by Defendant Doylestown Health from May 2007 to November 2021. (Compl., ECF No. 1, ¶¶ 10-11, 43, 130-31; Medical Exemption Request, Compl., Ex. 3 at 67 (ECF pagination)). He contracted COVID-19 in May 2021, and followed Defendant's isolation requirements, including not being present on site for fourteen days, before returning to work. (*Id.*, ¶ 23; Medical Exemption Request at 67.)

On August 6, 2021, Defendant announced that it required all of its Doylestown Health employees to receive the COVID-19 vaccine by October 11, 2021. (Compl., ¶¶ 38-39; Oct. 11, 2021 Letter from B. Foley to J. Auteri, Compl., Ex. 4 at 70.) Employees seeking a medical or religious exemption from the vaccine mandate were required to request an exemption by September 10, 2021. (Compl., ¶ 39.)

Plaintiff studied the emerging literature on potential dangers of the vaccine, including for individuals with SARS-CoV-2 antigens in their system. (*Id.*, ¶¶ 26-27, 45, 51-53.) Before and after Defendant imposed a vaccine mandate, Plaintiff expressed concerns to Defendant's Medical Executive Committee, of which Plaintiff was a member, and representatives of Defendant about the vaccine and its effect on individuals who had recovered from COVID-19. (*Id.*, ¶¶ 26-34, 45, 48.) Plaintiff claims that after he expressed concerns, Defendant's Chief Medical Officer and other employees harassed and tried to intimidate him, among other negative behaviors. (*Id.*, ¶¶ 35-37, 46-47, 54-56, 61.)

Plaintiff did not submit a request for an exemption from the vaccine mandate by the September 10 deadline. (*Id.*, ¶ 40.) Plaintiff submitted two written requests, which were both dated October 6, 2021, seeking medical and religious exemptions. (*Id.*, ¶ 58; Religious and Medical Exemption Requests, Compl., Ex. 3, at 65-68.) In his medical exemption request, Plaintiff wrote that he "had a positive antigen test in May, and recently [was] tested for both antibody as well as T-cell immunity." (Medical Exemption Request at 67.) "Based on these results my physician describes me as having 'robust immunity,'" Plaintiff wrote. (*Id.*) He added that he believes that "the natural God-given immunity one gets from having been infected previously with Covid confers as good and in some cases better protection from a future covid infection than any vaccination could." (*Id.* at 68.) He concluded that "I am therefore requesting this medical exemption since I believe [that] I am better protected than many others currently working at the hospital." (*Id.*)

In his religious exemption request, Plaintiff wrote that he is "being led by the Holy Spirit to respectfully decline the Covid vaccine. I believe my body belongs to God. … I believe that for me to ingest this vaccine is a violation of the Holy Spirit's leading, and therefore would be

sin." (Religious Exemption Request at 66.)  Complying with the vaccine mandate would require Plaintiff to "disobey God's Word," and he therefore wrote that he is "unable to submit" to the mandate.  (*Id*.)

On the deadline for all employees to be vaccinated, Plaintiff was suspended for thirty days because he had not provided proof of vaccination.  (*Id*., ¶¶ 39, 73; Oct. 11, 2021 Letter at 70.)  Plaintiff was informed on October 11, 2021, that if he did not provide proof of vaccination by November 10, 2021, the Medical Staff will accept that he has voluntarily resigned his privileges at Doylestown Hospital.  (*Id*.)  His written exemption requests were denied on October 13, 2021.  (*Id*., ¶ 78.)

Plaintiff also alleged that the Chief Medical Officer engaged in further harassing behavior, including threatening Plaintiff that he would be fired if he was not inoculated.  (*Id*., ¶¶ 62-69.)

Plaintiff submitted a second exemption request through his counsel on October 22, 2021, proposing that he test weekly for COVID-19 and submit a daily health screening as a reasonable accommodation.  (*Id*., ¶¶ 84-85, 87; Second Exemption Request, Compl., Ex. 6 at 76-81.)  Plaintiff alleges that he included a letter from his treating physician stating that the physician did not recommend that Plaintiff be vaccinated against coronavirus.  (*Id*., ¶ 86.)  The letter was not attached to the Complaint.  Defendant, through its counsel, denied Plaintiff's second exemption request on November 9, 2021.  (*Id*., ¶ 102.)  With respect to Plaintiff's medical exemption request, Defendant claimed that Plaintiff's physician did not provide sufficient information about Plaintiff's underlying medical condition to demonstrate that Plaintiff is entitled to an exemption from the vaccination requirement.  (*Id*., ¶ 103; Nov. 9, 2021 Letter from C. Durham to K. Russell, Compl., Ex. 7 at 84.)

On November 11, 2021, two days after denying Plaintiff's second exemption request, Doylestown Hospital terminated Plaintiff's medical privileges.  (*Id*., ¶ 128.)  Maintaining medical privileges at Doylestown Hospital was a condition of his employment. (*Id*., ¶¶ 15-16, 130.)   Defendant terminated Plaintiff a week later, on November 18, 2021.  (*Id*., ¶¶ 130-31; Nov. 18, 2021 Letter from J. Reiss to J. Austin, Compl., Ex. 9 at 95-96.)

Plaintiff filed this action on August 24, 2022, alleging: (Count I) a violation of Title VII based on Plaintiff's religious affiliation for religious discrimination and retaliation; (Count II) a violation of the Americans with Disabilities Act ("ADA") for disability discrimination and retaliation; and (Count III) breach of contract.  (*Id*., ¶¶ 167-209.)  On October 24, 2022, Defendant moved to dismiss Counts II and III of the Complaint for failure to state a claim.  (Mot., ECF No. 6.)

## II.   LEGAL STANDARD

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss pursuant to Rule 12(b)(6).  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  The court should also consider the exhibits attached to the complaint and matters of public record.  See *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint must contain "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III.  DISCUSSION

#### A.  Count II: ADA Discrimination

Defendant argues that Plaintiff's ADA discrimination claim should be dismissed because Plaintiff has not pled that he has a qualifying disability under the ADA. (Mot. at 6-7, 9-10.) In opposition, Plaintiff argues that his pleading regarding his disability satisfies the ADA Amendments Act regulations, and that if Defendant did not believe that Plaintiff was disabled, it was still obligated to engage in the interactive process. (Opp'n, ECF No. 9 at 7-10.) Defendant's Motion to Dismiss Count II of the Complaint is granted because Plaintiff has not adequately alleged that he has a qualifying disability within the meaning of the ADA.

To state a claim under the ADA, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). The ADA defines a disability as (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment"; or (3) when an individual is "regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).

"Major life activities" include but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id*. § 12102(2)(B).

The ADA does not define the phrase "substantially limits." Under 29 C.F.R. § 1630.2(j)(1)(ii), "[a]n impairment is a disability … if it substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*." (emphasis added.) "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. Factors to analyze when determining whether an impairment is substantial include the nature and severity of the impairment, the duration or expected duration of the impairment, and its long-term impact. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 952 (3d Cir. 1996).

6

The Equal Employment Opportunity Commission has released guidance regarding when COVID-19 can constitute a disability under the ADA and notes that "[COVID-19] may be a disability, but it is not always a disability." *Whitebread v. Luzerne Cnty.*, No. 22-133, 2023 WL 349939, at *4 (M.D. Pa. Jan. 20, 2023). "Whether [COVID-19] is an actual disability under the ADA requires a 'case-by-case determination.'" *Id*. Someone who is asymptomatic or has mild symptoms will not have a qualifying disability under the ADA, but someone whose medical condition substantially limits one or more major life activities will qualify. *Id*.

As a result, to survive a motion to dismiss a plaintiff must allege facts to show that the "nature, severity, and duration" of COVID-19 symptoms "rose to the level where it substantially limited one or more major life activities." *See Brown v. Clemens*, No. 22-1067, 2023 WL 6216717, at *4 (M.D. Pa. Sept. 25, 2023); *see also Payne v. Woods Serv.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021) (granting a motion to dismiss when a plaintiff did not allege "any facts regarding his symptoms or impairments as a result of his COVID-19 diagnosis, and has not alleged what 'major life activity' or activities he was unable to perform as a result"); *Whitebread*, 2023 WL 349939, at *4 (granting a motion to dismiss when "[t]he complaint is devoid of … factual allegations to enable us to determine whether [plaintiff] had, in fact, tested positive for the virus, the nature of her symptoms before the test, whether her stepson in fact tested positive for COVID-19 or the nature and length of his symptoms.").

The Complaint alleges that Plaintiff is a qualified individual with a disability "as the functioning of his immune system has been impaired by [Plaintiff's] infection with COVID-19." (Compl., ¶ 185.) The functioning of the immune system is a major life activity. *See* 42 U.S.C. § 12102(2)(B). However, Plaintiff has not alleged how his immune system has been substantially limited since testing positive for COVID-19 more than five months before he was terminated. In

7

fact, Plaintiff alleged that he is "otherwise qualified to perform the essential function of his job as a cardiac surgeon subject to his need for a reasonable accommodation" from Defendant's vaccine mandate. (Compl., ¶ 186.) In seeking a medical exemption, Plaintiff wrote in October 2021 that he had "robust immunity" and "believe[s that he is] better protected than many others currently working at the hospital" because of the strength of his immunity. (Request for a Medical Exemption at 67.) When Plaintiff tested positive for COVID-19 in May 2021, he returned to work after fourteen days, and he does not allege that he experienced any subsequent symptoms or impairments that substantially limited a major life activity. (Compl., ¶ 23; Request for a Medical Exemption at 67.) Accordingly, Plaintiff has not alleged facts to show that he was substantially limited by any physiological changes he may have experienced after contracting COVID-19 to qualify as disabled under the ADA.

      Plaintiff also alleged that he was concerned that the coronavirus vaccine could harm the immune systems of those who had recovered from a prior infection. (*Id*., ¶¶ 27, 32, 45.) He expressed concern to his employer about the potential "effect of the vaccine on [his] medical condition (i.e. his altered immune system after contracting COVID-19)." (*Id*., ¶ 48; *see also id*., ¶ 83 (stating that Plaintiff was "concern[ed] about the alteration of his immune system by his prior COVID-19 infection and effects of the COVID-19 vaccine on those with that altered immune system.")) Here too, Plaintiff does not allege that he experienced symptoms or was impaired "as compared to most people in the general population" to qualify as disabled under the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(ii). Accordingly, Defendant's Motion to Dismiss Count II is granted without prejudice.

B.  **Count II: ADA Retaliation**

Defendant argues that Plaintiff's ADA retaliation claim should be dismissed because Plaintiff has not pled that he requested an accommodation in good faith.  (Mot. at 10-12.) In opposition, Plaintiff argues that Plaintiff had a good faith basis to believe that he was disabled under the ADA and requested an accommodation because he believed that the vaccine could injure his "impaired immune system." (Opp'n at 10-11.)  Defendant's Motion to Dismiss Count II of the Complaint is denied because construing the allegations in Plaintiff's favor, he sufficiently pleads that he had a reasonable, good faith belief that he was entitled to request a reasonable accommodation to survive a motion to dismiss.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).  "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Requesting a reasonable accommodation is protected activity under the ADA. *Sulima*, 602 F.3d at 188.  "[A]n ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested." *Id*. at 188 (quoting *Williams v. Phil. Hous. Auth. Police Dept.*, 380 F.3d 751, 759 n.2, *abrogated on other grounds*, *see Robinson v. First State Comm. Action Agency*, 920 F.3d 182, 188 n.30 (3d Cir.

9

2019)). In other words, "the protection from retaliation afforded under the ADA does not extend to an employee whose request is motivated by something other than a good faith belief that [they] need[] an accommodation." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Congress did not intend to extend ADA coverage to "employees whose motivation for requesting an accommodation is something other than a good faith belief that an accommodation … is necessary or appropriate." *Shellenberger*, 318 F.3d at 191. Courts look to whether there is evidence that the individual requesting an accommodation "was motivated by anything other than good faith" when evaluating whether a plaintiff requested an accommodation reasonably and in good faith. *Id.*; *Suarez v. Penn. Hosp. of Univ. Penn. Health Sys.*, No. 18-1596, 2018 WL 6249711, at *10 (E.D. Pa. Nov. 29, 2018) ("There is nothing in the record to indicate that her request for reinstatement under the ADA was unreasonable or in bad faith, so the request could be construed as a protected activity even though she was not entitled to that accommodation."). Courts should be cautious and ensure that determining whether a plaintiff "lacked a reasonable, good faith belief" that they are entitled to request an accommodation does not "require a credibility determination." *See Schirnhofer v. Premier Comp Solutions, LLC*, 303 F. Supp. 3d 353, 375 (W.D. Pa. 2018).

Some courts have held on summary judgment that a plaintiff did not have a reasonable, good faith belief that they were entitled to request a reasonable accommodation when they sought relief from a temporary condition. *See Sulima*, 602 F.3d at 188-89; *Isley v. Aker Philadelphia Shipyard, Inc.*, 191 F. Supp. 3d 466, 471 (E.D. Pa. 2016) (granting summary judgment on ADA retaliation claim when "there is no evidence that Plaintiff believed his [] injury was anything other than a temporary condition"). *Sulima* involved an employee who requested an accommodation related to side effects from a medication. 602 F.3d at 188. The

individual knew that his medical issues were caused by his medicine and that he could change his medicine, as he had done before. *Id*. Affirming the district court's grant of summary judgment on the plaintiff's ADA retaliation claim, the court found that "[t]here is no evidence indicating that [plaintiff] believed his condition to be anything but temporary" and that, as a result, when the plaintiff "requested the accommodation, he did not have a good faith belief that he was disabled within the meaning of the ADA." *Id*.

Here, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, Plaintiff alleged that he was concerned about negative side effects from receiving the coronavirus vaccine and, in particular, that it might harm his immune system. (Compl., ¶¶ 27, 45, 48-49, 51-53.) He alleged in his first Medical Exemption Request that he believed that he had a "robust immunity" and believed that he was protected by his "God-given immunity." (Medical Exemption Request at 67-68.) Unlike *Sulima* and *Isley*, there is no evidence that Plaintiff believed that any negative consequences from the vaccine would be short-term or temporary. Without making credibility determinations and at this early juncture, we cannot determine that Plaintiff made his request for an accommodation unreasonably or in bad faith to dismiss the claim. Accordingly, Defendant's Motion to Dismiss Count II of the Complaint is denied.

        **C.**     **Count III: Breach of Contract**

Defendant argues that Plaintiff's breach of contract claim (Count III) should be dismissed because it is preempted by Plaintiff's ADA and Title VII claims. (Mot. at 18-20.) Plaintiff argues that his breach of contract claim is not preempted by his discrimination claims because he sufficiently alleged that Defendant breached the parties' employment agreement and the duty of good faith and fair dealing. (Opp'n at 12-14.) We conclude that Plaintiff has not pled facts to

support his breach of contract claim that are independent of his Title VII and ADA claims. Therefore, Count III of the Complaint is dismissed without prejudice.

State and federal discrimination laws preempt breach of contract claims "that arise solely from alleged discriminatory conduct." *Weirich v. Horst Realty Corp., LLC*, No. 07-871, 2007 WL 2071904, at *2 (E.D. Pa. July 13, 2007); *see also Waggaman v. Villanova Univ.*, No. 04-4447, 2008 WIL 4091015, at *21, n.29 (E.D. Pa. Sept. 4, 2008). When a plaintiff's breach of contract claim is "based entirely on the alleged acts of discrimination" that support the discrimination claim and "no separate set of facts to support a breach of contract claim … outside of the acts of discrimination" are pled, the contract claim must be dismissed. *Styles v. Philadelphia Elec. Co.*, No. 93-4593, 1994 WL 245469, at *3 (E.D. Pa. June 6, 1994); *Weirich*, 2007 WL 2071904, at *2.

However, when separate facts are pled to support a breach of contract claim independent of a discrimination claim, the contract claim may survive a motion to dismiss. *See Styles*, 1994 WL 245469, at *3; *Waggaman v. Villanova Univ.*, No. 04-cv-4447, ECF No. 24 at 4-5 (E.D. Pa. filed Sept. 28, 2005); *see also Doe v. Kohn, Nast & Graf, P.C.*, 862 F. Supp. 1310, 1316-23, 1325 (E.D. Pa. 1994) (allowing a claim for breach of the implied covenant of good faith and fair dealing to survive summary judgment when different facts supported the breach of contract and discrimination claims). In other words, "[f]or a breach of contract claim, the breach complained of must be something other than the discrimination complained of." *Keck v. Commercial Union Ins. Co.*, 758 F. Supp. 1034, 1039 (M.D. Pa. 1991).

Pennsylvania law defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa. Stat. and Cons. Stat. Ann. § 1201. Pennsylvania courts have adopted the Restatement (Second) of Contracts formulation of the

general duty of good faith and fair dealing. *See Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). A breach of an express or implied covenant of good faith in an employment contract is brought as a breach of contract, rather than as an independent action for a breach of the duty of good faith and fair dealing. *Engstrom v. John Nuveen and Co., Inc.*, 668 F. Supp. 953, 958 (E.D. Pa. 1987). "The obligation to act in good faith in the performance of contractual duties varies somewhat with the context," but Pennsylvania courts have recognized "certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers*, 613 A.2d at 1214.

Here, Plaintiff has alleged facts that may support his claim that Defendant breached its duty of good faith and fair dealing, including that Defendant's Chief Medical Officer harassed and tried to intimidate Plaintiff to comply with the hospital system's vaccine mandate. *See* Compl., ¶¶ 35-37, 46-47, 54-56, 61-69. However, Plaintiff has also stated that this conduct exemplifies and is evidence of Defendant's discriminatory conduct. *See, e.g., id.*, ¶ 70 ("Dr. Levy's conduct is a quintessential example of the threats, harassment, discrimination, and retaliation which Title VII, the ADA, and the PHRA are meant to prevent and eliminate"); ¶ 132 ("Doylestown Health's termination of Dr. Auteri's employment is the culmination and direct result of Doylestown Health's concerted pattern of harassment, discrimination, and retaliation against Dr. Auteri …"); ¶ 133 ("Doylestown Health's subsequent conduct and policies after Dr. Auteri's termination [is] evidence that Doylestown Health's invocation of patient safety" and "undue burden" of testing as the basis for the Exemption Denial and Second Exemption Denial was pretext for Doylestown Health's discrimination, harassment, and retaliation against Dr.

Auteri on the basis of Dr. Auteri's medical condition and religious beliefs."). Accordingly, Plaintiff has not pled facts to support his breach of contract claim that are distinct from the facts alleged in support of his discrimination claims. As a result, Defendant's Motion to Dismiss Count III is granted without prejudice.

## IV. CONCLUSION

For the following reasons, Defendant's Motion to Dismiss Counts II (ADA discrimination) and III of the Complaint is granted without prejudice. Defendant's Motion to Dismiss Count II (ADA retaliation) is denied. Plaintiff has requested leave to amend the Complaint if Counts II and/or III are dismissed. We have no basis on which to conclude that an amendment would be futile or inequitable. Accordingly, Plaintiff's request to amend the Complaint within twenty-one days of this Order is granted.

BY THE COURT:

 /s/ R. Barclay Surrick
R. BARCLAY SURRICK, J.