IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH S. AUTERI, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 2:22-cv-03384 |
| VIA AFFILIATES d/b/a DOYLESTOWN HEALTH PHYSICIANS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## ORDER

AND NOW this ___ day of _____, 202__, upon consideration of Defendant VIA Affiliates d/b/a Doylestown Health Physicians' Motion to Dismiss Count I (In Part), Count II and Count III of the Amended Complaint (ECF No. 13), and all documents submitted in support thereof and in opposition thereto, it is ORDERED that the Motion is GRANTED with prejudice.

**IT IS SO ORDERED.**

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| JOSEPH S. AUTERI, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 2:22-cv-03384 |
| VIA AFFILIATES d/b/a DOYLESTOWN | : | |
| HEALTH PHYSICIANS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**DEFENDANT'S MOTION TO DISMISS COUNT I (IN PART),**
**COUNT II AND COUNT III OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant VIA Affiliates d/b/a Doylestown Health Physicians hereby moves pursuant to

Fed. R. Civ. P. 12(b)(6) to dismiss the retaliation claim in Count I of Plaintiff's Amended

Complaint with prejudice, and Count II and Count III of Plaintiff's Amended Complaint in their

entirety with prejudice. The basis for the Motion is set forth in the attached Memorandum of

Law, which is incorporated herein.

Respectfully submitted,

*/s/ Christopher D. Durham*
Christopher D. Durham, Esquire
Elisabeth G. Bassani, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1800

*Attorneys for Defendant VIA Affiliates*
*d/b/a Doylestown Health Physicians*

Dated: December 4, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH S. AUTERI, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 2:22-cv-03384 |
| VIA AFFILIATES d/b/a DOYLESTOWN HEALTH PHYSICIANS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT I (IN PART), COUNT II AND
<u>COUNT III OF PLAINTIFF'S AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................1

II.    RELEVANT AND/OR NEWLY-ASSERTED FACTUAL ALLEGATIONS..................3

III.    STANDARD OF REVIEW ................................................................................5

IV.    LEGAL ARGUMENT.......................................................................................7

      A.    Plaintiff's Renewed Breach of Contract Claim in Count III Should Be
           Dismissed with Prejudice Because it is Preempted by the ADA and Title
           VII. ...................................................................................................... 7

      B.    Plaintiff's Title VII and ADA Retaliation Claims in Counts I and II Should
           Be Dismissed as a Matter of Law Because He Has Not Pled Facts
           Plausibly Establishing A Causal Connection Between His Alleged
           Protected Activity and Adverse Employment Action........................................... 10

V.    CONCLUSION.............................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL
    5003593 (S.D.N.Y. Aug. 4, 2023) ............................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 5-6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 5-6

*Divine Equality Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023
    WL 4763994 (E.D. Pa. July 26, 2023)...................................................11

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000) ...............................6

*E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444 (3d Cir. 2015)...........................................10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)..........................................6

*In re 15 Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...............................11

*In re Westinghouse Sec. Litig.,* No. Civ.A.91–354, 1998 WL 119554 (W.D. Pa.
    1998) ....................................................................................10

*Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL
    1472022 (D. Md. Feb. 2, 2023), aff'd, No. 23-1198, 2023 WL 4105705 (4th
    Cir. June 21, 2023)...........................................................................11

*Lundstrom v. Contra Costa Health Servs.*, No. 22-CV-06227-CRB, 2022 WL
    17330842 (N.D. Cal. Nov. 29, 2022), aff'd, No. 22-16946, 2023 WL 6140588
    (9th Cir. Sept. 20, 2023)....................................................................12

*O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294 (D. Haw. 2022),
    appeal dismissed, No. 22-15215, 2022 WL 3339844 (9th Cir. July 13, 2022) .....................12

*Penn-Mont Benefit Servs., Inc. v. Crosswhite*, No. CIV.A. 02-1980, 2003 WL
    203570 (E.D. Pa. Jan. 29, 2003) ..........................................................10

*Sally-Harriet v. N. Child. Servs.*, No. CV 17-4695, 2019 WL 1384275 (E.D. Pa.
    Mar. 26, 2019) (Surrick, J.)..................................................................5

*Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920 (E.D. Mo. 2022), aff'd, No. 22-
    2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023), cert. denied, No. 23-145,
    2023 WL 6558492 (U.S. Oct. 10, 2023).................................................12

*Speaks v. Health Sys. Mgmt., Inc.*, No. 522CV00077KDBDCK, 2022 WL
    3448649 (W.D.N.C. Aug. 17, 2022)......................................................12

*West v. Scott Lab'ys, Inc.*, No. 22-CV-07649-CRB, 2023 WL 2632210 (N.D. Cal. Mar. 24, 2023), aff'd, No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023) ................................................................................................................12

**Rules**

Fed. R. Civ. P. 8 .........................................................................................................5

Fed. R. Civ. P. 8(a) .....................................................................................................5

Fed. R. Civ. P. 8(a)(2) ..............................................................................................5-6

Fed. R. Civ. P. 12(b)(6).............................................................................................5-6

**Periodicals**

Harold Brubaker, *Doylestown Health breaks ground on heart and vascular center*, Phila. Inquirer (Sept. 15, 2017) ..................................................................13

## I.    INTRODUCTION

By Memorandum (ECF No. 11) and Order (ECF No. 12) dated October 30, 2023, this Court dismissed Plaintiff's ADA discrimination claim in Count II and his breach of contract claim in Count III of Plaintiff's Complaint (ECF No. 6), without prejudice.  This Court dismissed Plaintiff's breach of contract claim because "Plaintiff has not pled facts to support his breach of contract claim that are distinct from the facts alleged in support of his discrimination claims." ECF No. 11 at 14.  This Court also denied Defendant's motion to dismiss Plaintiff's ADA retaliation claim because the Court could not determine, based on the allegations in the Complaint, "that Plaintiff made his request for an accommodation unreasonably or in bad faith." *Id.* at 11.

On November 20, 2023, Plaintiff filed an Amended Complaint, in which he reasserts a breach of contract claim in Count III, and alleges additional facts that bear on his Title VII retaliation claim in Count I and his ADA retaliation claim in Count II.  In the Amended Complaint, Plaintiff still fails to plead facts to support his breach of contract claim that are distinct from the facts alleged in support of his discrimination claim.  Plaintiff also pleads facts that do not plausibly establish a causal connection between his requests for accommodation and the termination of his employment.  Accordingly, Plaintiff's Title VII retaliation claim in Count I of the Amended Complaint, and Counts II and III of the Amended Complaint, should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The only substantive changes in the Amended Complaint relating to the breach of contract claim are in Count III itself (as opposed to the Factual Background section), and are comprised of a handful of allegations regarding the alleged "animosity" of Doylestown Hospital's Chief Medical Officer, Dr. Levy, toward Plaintiff.  *See* Am. Compl., ¶¶ 201-06, 208-10, 212, 214.  These allegations of Dr. Levy's purported animosity toward Plaintiff, which

Plaintiff claims undergirded Defendant's alleged pretextual use of his non-compliance with its COVID-19 vaccine mandate as grounds to breach his Employment Agreement, do not provide a distinct factual basis for a breach of contract claim, particularly where he alleges that Defendant went to great lengths to get him to comply with its COVID-19 vaccine mandate.  Furthermore, Plaintiff continues to assert the specific allegations to which this Court cited when holding that Plaintiff failed to plead facts in support of his breach of contract claim that are distinct from the allegations supporting his discrimination claims.  *See* ECF No. 11 at 14 (quoting Compl., ¶¶ 70, 132, 133); Am. Compl., ¶¶ 70, 132, 133.  Accordingly, his breach of contract claim remains preempted by federal law.

Although they do not save his breach of contract claim, Plaintiff's new allegations of Dr. Levy's purported animosity toward him are relevant to his retaliation claims.  Try though he might, Plaintiff cannot evade the impact of his newly-asserted factual allegations on his Title VII and ADA retaliation claims by attempting to sequester them to Count III.  Plaintiff's allegations that Dr. Levy's animosity pre-dating his alleged protected activity (accommodation requests) was the basis of Defendant's decision to terminate his employment, coupled with the fact that his accommodation requests were made after Defendant established its COVID-19 vaccination mandate, preclude him as a matter of law from establishing the requisite causal connection between his accommodation requests and the termination of his employment.  For that reason, Plaintiff's Title VII retaliation claim in Count I and his ADA retaliation claim in Count II fail as a matter of law and should be dismissed.

## II.      RELEVANT AND/OR NEWLY-ASSERTED FACTUAL ALLEGATIONS[1]

Plaintiff began his employment at Doylestown Health in 2007 as the Chief of Cardiovascular Surgery and the Medical Director of the Doylestown Heart Institute at Doylestown Hospital.  Am. Compl., ¶¶ 10-11.  Plaintiff was subject to an Employment Agreement, effective April 1, 2012, which the parties extended through December 31, 2024.  *Id.* at ¶¶ 13-14, Exs. 1 & 2.  The Employment Agreement required Plaintiff to maintain privileges at Doylestown Hospital, but those privileges could be revoked at any time by Defendant.  *Id.* at ¶ 15, Ex. 1, § 2.1.8.  If Plaintiff's privileges at Doylestown Hospital were revoked, Defendant could terminate his employment.  *Id.* at ¶ 16, Ex. 1, § 9.2.2.3.

Plaintiff contracted COVID-19 in May 2021 and followed the isolation requirements of Doylestown Health before returning to work.  *Id.* at ¶ 23.  Subsequently, Doylestown Health implemented a COVID-19 vaccine mandate and set a September 10, 2021 deadline for employees to seek an exemption to the vaccine mandate on the basis of a medical condition or religious affiliation.  *Id.* at ¶¶ 38-39.  Defendant, including through Dr. Levy, urged and pressured Plaintiff to comply with the COVID-19 vaccine mandate by getting the COVID-19 vaccine.  These efforts included asking large donors to persuade Plaintiff to comply with the mandate, offering Plaintiff monetary payments if he received the vaccine and the vaccine impacted his ability to perform surgery, and Dr. Levy meeting with Plaintiff the day before the mandate went into effect to urge him to comply with the mandate.  *See id.* at ¶¶ 47, 49, 62-63.

---

[1] For purposes of this Motion to Dismiss only, Defendant accepts as true the allegations in the Amended Complaint.  No admission of fact is intended or should be inferred from Defendant's recitation of any factual allegation.

Plaintiff did not submit an exemption request by the deadline. *Id.* at ¶ 40. On October 11, 2021, Defendant suspended Plaintiff because he failed to comply with the COVID-19 vaccine mandate. *Id.* at ¶ 73.

Also on October 11, 2021, Plaintiff submitted two requests for an exemption from the vaccine mandate: "one on the basis of a medical exemption and one on the basis of a religious exemption." *Id.* at ¶ 58, Ex. 3. On October 22, 2021, Plaintiff, through his legal counsel, submitted "another request for a medical exemption, repeated the request for a religious accommodation, and proposed specific reasonable accommodations." *Id.* at ¶ 85.

On November 9, 2021, Doylestown Health, through its counsel, denied Plaintiff's exemption requests. *Id.* at ¶ 102, Ex. 7. Defendant subsequently "caused Doylestown Hospital to terminate [Plaintiff's] medical privileges at Doylestown Hospital" by letter from Doylestown Hospital dated November 11, 2021. *Id.* at ¶ 128. According to Plaintiff, the termination of Plaintiff's medical privileges was "based upon Doylestown Health's unlawful refusal to engage in the interactive process," including through the unlawful actions of Scott Levy, M.D. the Chief Medical Officer of Doylestown Health. *Id.* at ¶¶ 127, 129. On November 18, 2021, Doylestown Health terminated Plaintiff's employment "because [Plaintiff] no longer had medical privileges at Doylestown Hospital." *Id.* at ¶¶ 130-31.

Plaintiff newly alleges that Dr. Levy generally harbored "animosity" toward Plaintiff. Plaintiff alleges that:

- At some undefined point "[d]uring Dr. Auteri's employment . . . Dr. Levy began to demonstrate significant animosity toward [Plaintiff]." *Id.* at ¶ 201.

- "On at least one [unidentified] occasion, when [Plaintiff] questioned" an unidentified Doylestown Health policy, "Dr. Levy criticized [Plaintiff]'s views and continued by stating that [Plaintiff] made too much in compensation" and was paid more than Dr. Levy and Doylestown Hospital's CEO. *Id.* at ¶ 202.

4

- "Dr. Levy raised Dr. Levy's voice to [Plaintiff]" when "[Plaintiff] tried to have discussions with Dr. Levy about administrative and policy matters", and "those discussions became 'heated.'" *Id.* at ¶ 204.

- Doylestown Health was "aware of" and "acknowledged" Dr. Levy's "animosity toward [Plaintiff]." *Id.* at ¶¶ 205-06.

According to Plaintiff, it was "in furtherance of Dr. Levy's continued animosity toward [Plaintiff]" that "Dr. Levy, on behalf of Doylestown Health . . . used the pretext of the Mandate to evade the spirit of the Employment Agreement and interfere with [Plaintiff]'s performance of the Employment Agreement" and "caused Doylestown Hospital to rescind [Plaintiff]'s medical staff privileges at Doylestown Hospital so that Doylestown Health could use that rescission of medical staff privileges as a pretext for [Plaintiff]'s termination." *Id.* at ¶¶ 209-10.

## III.    <u>STANDARD OF REVIEW</u>

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint against the pleading requirements set forth in Rule 8. *Sally-Harriet v. N. Child. Servs.*, No. CV 17-4695, 2019 WL 1384275, at *3 (E.D. Pa. Mar. 26, 2019) (Surrick, J.).  Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

If a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," a court must dismiss the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (Rule 8(a) requires that the facts in a complaint plausibly suggest that the pleader is entitled to relief).  Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 555).  The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

While a court is required to accept as true all factual allegations in the complaint, when reviewing a Rule 12(b)(6) motion, the court "need not accept as true 'unsupported conclusions and unwarranted inferences.'" *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Moreover, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686; *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

After *Iqbal*, district courts must conduct a two-part analysis when evaluating a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). If, upon completing this analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

IV.    **LEGAL ARGUMENT**

Plaintiff's breach of contract claim in Count III, and his retaliation claims in Counts I and II, should be dismissed with prejudice because as a matter of law Plaintiff fails to state claims for breach of contract or for retaliation under Title VII or the ADA.  Plaintiff's breach of contract claim should be dismissed as preempted by federal law because he fails to allege a factual basis for such a claim that is distinct from his federal civil rights claims.  Plaintiff's Title VII and ADA retaliation claims should be dismissed because he fails to plausibly allege a causal connection between his requests for accommodation and the termination of his employment.

A.    **Plaintiff's Renewed Breach of Contract Claim in Count III Should Be Dismissed with Prejudice Because it is Preempted by the ADA and Title VII.**

As noted above, this Court dismissed Plaintiff's breach of contract claim because "Plaintiff has not pled facts to support his breach of contract claim that are distinct from the facts alleged in support of his discrimination claims."  ECF No. 11 at 14.  In its opinion, this Court cited three specific allegations in support of its holding.  *See* ECF No. 11 at 14 (quoting Compl., ¶¶ 70, 132, 133).  In his Amended Complaint, Plaintiff *reasserts the very allegations on which this Court previously relied* in dismissing his breach of contract claim.  *See* Am. Compl., ¶¶ 70, 132, 133.  It is difficult to imagine a clearer concession that Plaintiff's breach of contract claim is inextricably intertwined with his Title VII and ADA claims, and thus preempted by federal law.

In an attempt to end-run preemption, in addition to his extensive allegations that Dr. Levy "harassed and tried to intimidate Plaintiff to comply with the hospital system's vaccine mandate" (ECF No. 11 at 13.), Plaintiff now contends that Dr. Levy also generally harbored animosity toward him.  Plaintiff supports this contention with non-specific allegations[2] regarding Dr.

---

[2] Plaintiff does not provide approximate dates of these alleged interactions or identify the administrative or policy matters that were the subject of the alleged interactions.

Levy's alleged criticism of Plaintiff's compensation and Dr. Levy raising his voice when speaking with Plaintiff about unidentified "administrative and policy matters." *See* Am. Compl., ¶¶ 201-05. Plaintiff then makes the conclusory allegation that "Dr. Levy, on behalf of Doylestown Health and in furtherance of Dr. Levy's continued animosity toward [Plaintiff], used the pretext of the Mandate to evade the spirit of the Employment Agreement and interfere with [Plaintiff]'s performance of the Employment Agreement." *Id.* at ¶ 209.

Plaintiff's new allegations tucked away in Count III of the Amended Complaint, which in essence contend that Dr. Levy did not like and was not very nice to Plaintiff, cannot be isolated to prop up his purported breach of contract claim. These allegations do not change the fact that the entire thrust of the Amended Complaint is that Defendant discriminated against Plaintiff because of his religion and retaliated against him for requesting an accommodation when it declined to grant him an exemption to Defendant's COVID-19 vaccine mandate and terminated his employment. As this Court correctly noted, Plaintiff supports those claims with no less than 17 paragraphs of factual allegations[3] regarding Dr. Levy's conduct centered on the enforcement of Defendant's COVID-19 vaccine policy.

Critically, Plaintiff does *not* allege that Defendant prevented him from complying with the vaccine mandate so that it could terminate his employment because Dr. Levy did not like him. To the contrary, Plaintiff actually alleges that Defendant, including Dr. Levy, went to great lengths to convince him to comply with the vaccine mandate. In other words, Plaintiff alleges that Defendant in fact tried to *avoid* the very termination of Plaintiff's Employment Agreement

---

[3] *See* ECF No. 11 at 13 (citing 17 paragraphs of the Complaint – all of which are reasserted in the Amended Complaint – as alleging that Dr. Levy "harassed and tried to intimidate Plaintiff to comply with the hospital system's vaccine mandate").

and employment that Plaintiff only now tries to claim was Dr. Levy's goal all along.  *See*, *e.g.*,

Am. Compl., ¶¶ 47 ("Doylestown Health requested multiple large donors to the hospital,

including donors to the cardiac program which Dr. Auteri was continuing to build, to meet with

Dr. Auteri in an effort to 'persuade' Dr. Auteri to comply with the Mandate."), 49 ("Dr. Levy

offered to have Doylestown Health make certain payments to Dr. Auteri if Dr. Auteri complied

with the Mandate and suffered an adverse condition which impacted Dr. Auteri's ability to

perform surgery."), 62-63 (alleging that Dr. Levy met with Plaintiff the day before the mandate

went into effect to convince Plaintiff to comply with the mandate).  Plaintiff cannot have it both

ways.

       Thus, as a matter of law, these new allegations do not plausibly demonstrate a failure by

Defendant to act in good faith in the performance of contractual duties that is independent of the

alleged discrimination, harassment and retaliation to which Plaintiff dedicates the entirety of the

Factual Background in the Amended Complaint.  Plaintiff's breach of contract claim is

inextricably intertwined with his federal civil rights claims, and rises or falls on whether

Defendant enforced its COVID-19 vaccine mandate with respect to Plaintiff in compliance with

federal civil rights law.

       As this Court and others before it have recognized, where there are no facts that would

support a breach of contract claim distinct from the facts supporting a discrimination claim, the

breach of contract claim is preempted and dismissal is appropriate.  *See* ECF No. 11 at 12-14.

That is the case here.  Because the new allegations that Dr. Levy did not like Plaintiff do not

provide a basis for a breach of contract claim that is distinct from Plaintiff's federal civil rights

claims, Plaintiff's breach of contract claim is preempted by federal law.  Count III of Plaintiff's

Amended Complaint should be dismissed with prejudice.

**B.** **Plaintiff's Title VII and ADA Retaliation Claims in Counts I and II Should Be Dismissed as a Matter of Law Because He Has Not Pled Facts Plausibly Establishing A Causal Connection Between His Alleged Protected Activity and Adverse Employment Action.**

To state a retaliation claim under Title VII or the ADA, Plaintiff must establish: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (citation omitted). Here, Plaintiff claims that Defendant retaliated against him by terminating his employment after he requested an accommodation – *i.e.* an exemption from Defendant's COVID-19 vaccine mandate – on religious and medical grounds. Am. Compl., ¶¶ 179, 197. Plaintiff, however, has not plausibly alleged a causal connection between his accommodation requests and his termination. Therefore, as a matter of law, he cannot establish the requisite third element of his Title VII and ADA retaliation claims.[4]

Plaintiff admits that Doylestown Hospital established its COVID-19 vaccine mandate before his first accommodation request on October 11, 2021. *Id.* at ¶¶ 38-40, 58; *see also*

---

[4] Although Defendant did not raise this specific argument in its initial motion to dismiss, the new and revised allegations in Plaintiff's Amended Complaint, as well as the development of case law pertaining to COVID-19 vaccine mandates in the more than 13 months since Defendant filed its motion to dismiss Plaintiff's Complaint in October 2022, supports this Court's consideration of Defendant's argument. Resolving Plaintiff's Title VII and ADA retaliation claims now will support judicial economy and conserve the parties' resources.

Courts in the Third Circuit have found that "it is advisable for a court to permit a motion to dismiss for failure to state a claim even though the basis for the motion had not been asserted initially in the defendants' first motion to dismiss." *Penn-Mont Benefit Servs., Inc. v. Crosswhite*, No. CIV.A. 02-1980, 2003 WL 203570, at *6 (E.D. Pa. Jan. 29, 2003). In permitting the motion to proceed, "[t]here is simply no reason to put the defendant to the time and expense of filing an answer, or both defendant and plaintiff to the time and expense of addressing an issue to be raised later in a motion for judgment on the pleadings, when that issue can easily be resolved now." *Id.* citing *In re Westinghouse Sec. Litig.,* No. Civ.A.91–354, 1998 WL 119554, at *6 (W.D. Pa. 1998) (noting that many courts permit the defense of failure to state a claim upon which relief can be granted to be asserted in a subsequent motion as a means of preventing unnecessary delay).

Exhibit A, Doylestown Health System's Required COVID-19 Vaccine Policy dated August 6, 2021.[5]  As stated clearly in the mandate established on August 6, 2021, receiving the COVID-19 vaccine was a "condition of employment."  *See* Ex. A.  In other words, employees could be subject to unpaid leave or termination for failing to comply with the policy irrespective of whether they submitted an accommodation request.[6]

Courts regularly dismiss Title VII and ADA retaliation complaints connected to COVID-19 vaccine mandates where the alleged protected activity occurs only after the mandate is established.  *See Divine Equality Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023) (granting motion to dismiss plaintiffs' religious, race, and disability retaliation claims where "the sum of Plaintiffs' allegations tends to support that the claimed adverse actions were not done in retaliation for any protected activity but were instead merely actions taken consistent with Defendant's stated vaccination policy"); *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) (granting motion to dismiss plaintiff's Title VII retaliation claim because plaintiff's termination followed the defendants' COVID-19 vaccine policy that was announced before she applied for a religious exemption); *Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), aff'd, No. 23-

---

[5] The August 6, 2021 written mandate is attached hereto, as it is "integral to the complaint."  *In re 15 Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (in evaluating a motion to dismiss, courts may consider a "'document integral to or explicitly relied upon in the complaint' 'without converting the motion to dismiss into one for summary judgment'").  "Plaintiffs cannot prevent a court from looking at the text of the documents on which its claim is based by failing to attach or explicitly cite them."  *Id.*  Here, Plaintiff's claims – which generally challenge the Defendant's vaccine mandate as applied to him – integrally rely upon (and even create a defined term, "Mandate," for) the written vaccine mandate promulgated on August 6, 2021.

[6] This is self-evident: absent the vaccine mandate, there would be no accommodation to request.

1198, 2023 WL 4105705 (4th Cir. June 21, 2023) (citations omitted) (granting motion to dismiss plaintiff's retaliation claim because the mandatory vaccine policy was put in place before plaintiff refused to comply with it); *West v. Scott Lab'ys, Inc.*, No. 22-CV-07649-CRB, 2023 WL 2632210, at *6 (N.D. Cal. Mar. 24, 2023), aff'd, No. 23-15502, 2023 WL 6172009 (9th Cir. Sept. 22, 2023) (granting motion to dismiss plaintiff's complaint and finding that "[plaintiff] was not terminated for objecting to Scott Labs' COVID-19 policy.  Rather, he was terminated for refusing to comply with it."); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 927 (E.D. Mo. 2022), aff'd, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023), cert. denied, No. 23-145, 2023 WL 6558492 (U.S. Oct. 10, 2023) (granting motion to dismiss plaintiff's complaint and noting that, "[g]iven that the adverse action taken against [plaintiff] was taken pursuant to policies that were implemented before [plaintiff] engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events"); *Lundstrom v. Contra Costa Health Servs.*, No. 22-CV-06227-CRB, 2022 WL 17330842, at *6 (N.D. Cal. Nov. 29, 2022), aff'd, No. 22-16946, 2023 WL 6140588 (9th Cir. Sept. 20, 2023) (granting motion to dismiss plaintiff's retaliation claim because defendant's COVID-19 policies were in place before plaintiff engaged in protected activities); *Speaks v. Health Sys. Mgmt., Inc.*, No. 522CV00077KDBDCK, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022) (granting motion to dismiss plaintiff's ADA retaliation claim where the defendant's COVID-19 vaccine policy was enacted before plaintiff engaged in protected activity); *see also O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1311 (D. Haw. 2022), appeal dismissed, No. 22-15215, 2022 WL 3339844 (9th Cir. July 13, 2022) (denying plaintiffs' motion for a temporary restraining order and noting that "Plaintiffs are unlikely to establish a prima facie case of retaliation . . . because the adverse employment actions . . . appear to be unconnected to their

[reasonable accommodation] requests.  Indeed, the vaccine policy was established, as well as the consequences for failing to comply . . . before Plaintiffs submitted their [reasonable accommodation] requests.").

Here, Defendant's vaccine mandate, which expressly states that COVID-19 vaccination was a condition of employment, predated Plaintiff's accommodation requests.  Furthermore, Plaintiff alleges Dr. Levy's "continued animosity" toward Plaintiff – which Plaintiff makes clear both long predated his accommodation requests[7] and was unrelated to the vaccine mandate – was the reason that Dr. Levy "caused Doylestown Hospital to rescind [Plaintiff]'s medical staff privileges at Doylestown Hospital so that Doylestown Health could use that rescission of medical staff privileges as a pretext for [Plaintiff]'s termination."  Am. Compl., ¶ 210.  Thus, it is unreasonable to infer that there was a causal connection between Plaintiff's accommodation requests and the revocation of his medical staff privileges and subsequent termination.

Because Plaintiff fails as a matter of law to establish the requisite causal connection for his Title VII and ADA retaliation claims, those claims in Counts I and II should be dismissed with prejudice.

---

[7] Among other things, Plaintiff alleges that while Plaintiff engaged in "efforts to build the cardiac program into one of the top cardiac programs in the Commonwealth and raised millions in funds for facility construction, Dr. Levy began to demonstrate significant animosity toward [Plaintiff]."  Am. Compl., ¶ 210.  Defendant broke ground on the facility for which Plaintiff raised funds in 2017, and Plaintiff referenced his ongoing fundraising efforts in his first exemption request.  *See* Am. Compl., Ex. 3; Harold Brubaker, *Doylestown Health breaks ground on heart and vascular center*, Phila. Inquirer (Sept. 15, 2017), https://www.inquirer.com/philly/business/doylestown-health-breaks-ground-on-heart-and-vascular-center-20170915.html.

V.    **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant respectfully requests that the Court dismiss the retaliation claim in Count I of Plaintiff's Amended Complaint, and Count II and Count III of Plaintiff's Amended Complaint in their entirety, with prejudice.

Respectfully submitted,

<u>/s/ Christopher D. Durham</u>
Christopher D. Durham, Esquire
Elisabeth G. Bassani, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1510/1813

Date:  December 4, 2023                *Attorneys for Defendant VIA Affiliates*
*d/b/a Doylestown Health Physicians*

14

**EXHIBIT A**

**DOYLESTOWN HEALTH SYSTEM**

MEMO TO:       ALL ASSOCIATES
MEMO FROM:  Barbara Hebel, VP Human Resources
DATE:             August 6, 2021
SUBJECT:        **REQUIRED COVID-19 VACCINE**

First, thank you. The last 16 months health care professionals have sacrificed much to care for many, fighting COVID-19 skillfully, bravely and tirelessly. A grateful community has watched and rightly bestowed upon you a legacy of respect. On behalf of Senior Leadership and the Boards of our organizations, we add our own thanks for the tremendous dedication you each have shown in the face of a relentless pandemic. Yet, we must ask more.

While the arrival of vaccines was great news in the fight to defeat COVID-19, it has not brought an immediate end the pandemic.  Just as we have been pushing for adoption of the precautions we all know work – masking, hand hygiene and physical distancing – we must also push for high rates of vaccination within our communities and the U.S. population if we hope to overcome this virus. This will require trust in the COVID vaccination process, from the development, distribution and the administration of a safe and effective vaccine as well as a willing public to be vaccinated.

As frontline caregivers, our essential role in protecting the health and wellbeing of our communities goes beyond the care we provide. As a valued and trusted voice, our example is perhaps the strongest health resource we have. **Therefore, in keeping with our commitment to protect the health and safety of our Associates, volunteers, patients, Medical Staff and the community we proudly serve, Doylestown Health will require that all Associates, volunteers and Medical Staff members, whether or not they provide direct patient care, and whether they work on campus or remotely, be vaccinated against COVID-19.** This decision was not made lightly, as members of the senior and Medical Staff leadership conducted a thorough analysis as part of the decision-making process.  Requiring the vaccination as a condition of employment, is the most effective way we can protect our Associates, our patients and the communities we serve. The COVID-19 vaccines offer us the path to move beyond the pandemic in the same way vaccination has brought an end to the epidemics of smallpox, polio, measles and other deadly diseases.

Currently, 82% of our Associate population have already been vaccinated, as have millions of individuals across the country and world.  The decision, is consistent with national, state and local actions, and supported by the major healthcare professional organizations.  Based on current scientific research, the COVID 19 vaccines are safe and effective at preventing COVID, and the few post-vaccine cases are far less likely to cause severe illness or require hospitalization.

Our timeline for completing the vaccine series and meeting this requirement will be **October 4, 2021**. First dose vaccinations must be administered, no later than **September 8, 2021**; with the second dose being completed by **October 4, 2021**.  We will follow Doylestown Health's current vaccination policy (which is attached.)   In those instances when an individual is unable to get vaccinated due to a documented medical condition or strongly held religious belief, Doylestown Health will follow the established process for requesting an exemption consistent with our overall vaccination policy for other diseases including flu, hepatitis B, etc. To offer convenient access to the vaccine, we will offer vaccine clinics at a variety of locations free of charge  If you are not able to attend one of the on-site vaccination clinics, you may choose to get vaccinated by another COVID-19 vaccination provider or site throughout the community  Any Associate that has received the vaccination through an outside organization must provide proof of inoculation by October 4, 2020 to the Occupational Health Department.

We understand you may have questions about the vaccine. COVID-19 vaccines are being held to the same safety standards as all other vaccines.  As such over the next several days, educational sessions and details on the vaccination session will be announced.

Should you have any questions or comments, we have established two communication lines for our Associates to utilize:

**Online Form- insert this link**
**https://doylestownhealth.formstack.com/forms/associate_covid_vaccine_questions**

**Voicemail**
**215-489-1247 (x1247**

We are confident that together, we can make a different in the fight against this pandemic so that we can continue to grow and meet the needs of the community we serve who come to us for care.

## **CERTIFICATE OF SERVICE**

I, Elisabeth G. Bassani, certify that on December 4, 2023, I caused a copy of the

foregoing Motion to Dismiss Count I (In Part), Count II and Count III of Plaintiff's Amended

Complaint and Memorandum of Law in Support to be filed electronically, and the same is

available for viewing and downloading from the ECF System by the following counsel of record:

**Kimberly L. Russell, Esq.**
Kaplan Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corp. Center
910 Harvest Dr.
P.O. Box 3037
Blue Bell, PA 19422
610-941-2541
krussell@kaplaw.com

*Attorney for Plaintiff*

*/s/ Elisabeth G. Bassani*
Elisabeth G. Bassani, Esquire