## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH S. AUTERI, M.D. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 22-3384 |
| | : | |
| VIA AFFILIATES, d/b/a | : | |
| DOYLESTOWN HEALTH PHYSICANS. | : | |

### MEMORANDUM

**SURRICK, J.**                                                                                  **August 8, 2024**

Presently before the Court is Defendant VIA Affiliates, d/b/a Doylestown Health

Physician's ("Defendant" or "Doylestown Health") Motion to Dismiss Counts I (in part), II, and

III of the Amended Complaint.  (Mot., ECF No. 14).  For the following reasons, Defendant's

Motion will be granted.

### I.        BACKGROUND

####         A.        Factual Background

Plaintiff Joseph S. Auteri ("Plaintiff" or "Dr. Auteri") alleges as follows:

Since 2007, Dr. Auteri was employed as a cardiac surgeon at Doylestown Health.  (Am.

Compl., ECF No. 13, ¶¶ 10, 11.)  Dr. Auteri is a follower of Christ, and Doylestown Health

knew that he is a man of faith.  (*Id*., ¶ 42.)  His employment was governed by an Employment

Agreement that was extended and amended on multiple occasions.  (*Id*., ¶¶ 13, 14.)  As a

condition of his employment, Dr. Auteri was required to maintain hospital privileges at

Doylestown Health, and they could be revoked directly or indirectly by Doylestown Health.  (*Id*.,

¶ 15.)  If Dr. Auteri's privileges were revoked, Doylestown Health could terminate Dr. Auteri's

Employment Agreement.  (*Id*., ¶ 16.)

Dr. Auteri alleges that as he "continued to build the prominence of Doylestown Hospital and Doylestown Health" by raising millions of dollars and strengthening Defendant's cardiac program, Dr. Scott Levy, the Chief Medical Officer of Doylestown Health, "began to demonstrate significant animosity toward Dr. Auteri." (*Id.*, ¶ 201.) "On at least one occasion, when Dr. Auteri questioned Doylestown Health policy, Dr. Levy criticized Dr. Auteri's views" and said that Dr. Auteri earned too much money and that he was paid more than Defendant's Chief Executive Officer and Dr. Levy. (*Id.*, ¶ 202.) Dr. Auteri did not state when this comment allegedly was said, but he understood it to be "part of Dr. Levy's continued animosity toward" him. (*Id.*, ¶ 203.) According to Dr. Auteri, when he tried to speak with Dr. Levy about administrative and policy matters, Dr. Levy raised his voice to Dr. Auteri and the discussions were heated. (*Id.*, ¶ 204.) Dr. Auteri alleges that a Human Resources Officer at Defendant acknowledged Dr. Levy's animosity towards Dr. Auteri, telling Dr. Auteri that the two physicians were like oil and water. (*Id.*, ¶ 205.)

In early 2021, after covid-19 vaccines became available, Doylestown Health began to consider the imposition of a vaccine mandate. (*Id.*, ¶¶ 24, 25.) Dr. Auteri was a member of the hospital's Medical Executive Committee. (*Id.*, ¶ 26.) He studied the efficacy of the covid-19 vaccine and potential side effects associated with it, and as a result, he voiced his "clinical concerns" to the Medical Executive Committee about imposing a vaccine mandate. (*Id.*, ¶¶ 26-34.)

After he expressed various concerns about the vaccines, representatives of Doylestown Health, including Dr. Levy, "refused to have any professional, non-hostile discussion with Dr. Auteri regarding the covid-19 vaccines." (*Id.*, ¶¶ 18, 35.) Dr. Auteri claims that Dr. Levy began

to "harass" him, including by screaming at Dr. Auteri in front of staff members and refusing to review data with Dr. Auteri related to a possible vaccine mandate. (*Id.*, ¶¶ 36, 37.)

Doylestown Health ultimately imposed a covid-19 vaccine mandate, in which employees must seek an exemption on the basis of a medical condition or religious affiliation by September 10, 2021, and must be vaccinated by October 11, 2021. (*Id.*, ¶¶ 38, 39.) Dr. Auteri did not submit a request for an exemption by the September 10, 2021, deadline. (*Id.*, ¶ 40.)

As the deadline for the vaccine mandate loomed closer, Dr. Auteri continued to express concerns about the vaccine, including that the vaccine harms the immune system of those recovering from the virus and that it "impact[s] the overall functioning of the human body as designed by God." (*Id.*, ¶¶ 45, 48.) He claims that Doylestown Health and Dr. Levy harassed and intimidated him as he continued to express his concerns about the vaccine. (*Id.*, ¶ 46.) For example, Doylestown Health requested multiple large donors to meet with Dr. Auteri and persuade him to comply with the vaccine mandate. (*Id.*, ¶ 47.) Dr. Levy offered to have Doylestown Health make payments to Dr. Auteri if he complied with the vaccine mandate and suffered an adverse condition that impacted his ability to perform surgery. (*Id.*, ¶ 49.) At a Medical Executive Committee, Dr. Levy became agitated when Dr. Auteri raised concerns about the effect of the vaccine and "belittled Dr. Auteri's concerns." (*Id.*, ¶ 54.) Dr. Auteri emailed Dr. Levy and multiple hospital officials including a representative from Human Resources about Dr. Levy's "improper behavior," but no one responded to investigate and address Dr. Levy's conduct and Dr. Auteri's concerns. (*Id.*, ¶¶ 55-57.)

On October 10, 2021, the day before the vaccine mandate was to take effect, Drs. Levy and Auteri met and Dr. Levy "demanded" that Dr. Auteri comply with the vaccine mandate. (*Id.*, ¶ 63.) Dr. Levy told him that if he did not get the vaccine by 4:59 pm the next day, he

would be terminated at 5:00 pm.  (*Id*.)  Dr. Levy instructed Dr. Auteri that the Medical Executive

Committee would remove him from Doylestown Health's medical staff at 5:00 pm, that he

would be deemed to have breached the Employment Agreement, and Dr. Auteri would be

terminated immediately, without the 30-day cure period mandated by the Employment

Agreement.  (*Id*., ¶ 64.)  Dr. Levy also "berat[ed]" Dr. Auteri, telling him that if he did not

comply with the vaccine mandate, his legacy would be that of a "loser."  (*Id*., ¶ 66.)  Dr. Levy

also mentioned that Dr. Auteri was in the company of four other physicians, who he named, who

refused to comply with the vaccine mandate.  (*Id*., ¶¶ 68, 69.)  Dr. Auteri states in his Amended

Complaint that "Dr. Levy's conduct is a quintessential example of the threats, harassment,

discrimination and retaliation which Title VII, the [Americans with Disabilities Act] ADA, and

the [Pennsylvania Human Relations Act] PHRA are meant to prevent and eliminate."  (*Id*., ¶ 70.)

The next day, on October 11, 2021, Dr. Auteri submitted two written requests for an

exemption from the vaccine mandate on the basis of a medical exemption and a religious

exemption.  (*Id*., ¶ 58; Ex. 3, ECF No. 13-3.)  The written exemption requests memorialized in

writing verbal exemption requests that Dr. Auteri had made.  (Am. Compl., ¶ 59.)

Dr. Auteri claims that "both before and after he submitted the exemption requests,

Doylestown Health through Dr. Levy engaged in additional harassment and egregious behavior

in retaliation for Dr. Auteri's protected activity of seeking lawful exemptions to the vaccine

mandate and reasonable accommodations."  (*Id*., ¶ 61.)

The same day that Plaintiff submitted his exemption requests, Doylestown Health

suspended Dr. Auteri for thirty days without pay because he had not submitted proof that he had

complied with the vaccine mandate.  (*Id*., ¶ 73; Ex. 4, ECF No. 13-4.)  Dr. Auteri was informed

that if he did not submit proof of compliance in thirty days, he would be terminated.  (Am.

Compl., ¶ 76.)  Dr. Auteri was informed in a letter from Dr. Brenda Foley, the President of the

Doylestown Hospital Medical Staff, that if he did not send Doylestown Hospital proof of his

vaccination by November 10, 2021, at 5 pm, the medical staff will accept that he has voluntarily

resigned his hospital privileges and medical staff membership at Doylestown Hospital, effective

November 10, 2021.  (Ex. 8, ECF No. 13-8.)

Dr. Auteri claims that prior to being suspended, Doylestown Health did not investigative

Dr. Levy's conduct or Dr. Auteri's prior report that Dr. Levy harassed him.  (Am. Compl., ¶ 74.)

Dr. Auteri alleges that the suspension letter did not address his exemption requests and that

Doylestown Health did not engage in the interactive process to determine whether a reasonable

accommodation could be offered.  (*Id*., ¶¶ 74, 75.)  Instead of evaluating Dr. Auteri's exemption

requests and engaging in the interactive process with him, Doylestown Health "summarily

suspended Dr. Auteri without pay, threatened Dr. Auteri with termination, and simply told [him]

to comply with the [m]andate without further discussion."  (*Id*., ¶ 77.)

Two days later, on October 13, 2021, Dr. Auteri's exemption requests were denied.  (*Id*.,

¶¶ 78, 79; Ex. 5, ECF No. 13-5.)  Dr. Auteri was informed by email and in a letter that because

he did not receive the covid-19 vaccine by October 11, 2021, or request a medical or religious

exemption by the September 10, 2021, deadline, he would be placed on a 30-day leave of

absence, effective October 12, 2021.  (Ex. 5.)  Dr. Auteri alleges that Doylestown Health did not

engage in the interactive process or discuss with him how he could be accommodated.  (Am.

Compl., ¶ 78.)

Dr. Auteri alleges that "Doylestown Health's attempts to pressure and harass [him] into

complying with the Mandate . . . created a hostile work environment in which Doylestown

Health representatives repeatedly harassed and discriminated" against him.  (*Id*., ¶ 83.)

On October 22, 2021, Dr. Auteri submitted through counsel another set of exemption requests and proposed as a reasonable accommodation that he be tested weekly for covid-19 and submit daily health screenings.  (*Id*., ¶¶ 84-91; Ex. 6, ECF No. 13-6.)  On November 9, 2021, Doylestown Health denied Dr. Auteri's exemption request and did not engage in the interactive process.  (Am. Compl., ¶¶ 102-07, 111, 119-22.)

After denying his second exemption request, Doylestown Health terminated Dr. Auteri's medical privileges at Doylestown Hospital in a letter dated November 11, 2021.  (*Id*., ¶ 128; Ex.7, ECF No. 13-7; Ex. 8.)  Dr. Auteri alleges that Doylestown Health did not engage in the interactive process.  (Am. Compl., ¶¶ 102, 107.)  After his medical privileges were revoked, Doylestown Health terminated Dr. Auteri's employment in a letter dated November 18, 2021. (*Id*., ¶¶ 128, 130, 131; Ex. 9, ECF No. 13-9.)

Dr. Auteri also alleges that "Dr. Levy, on behalf of Doylestown Health and in furtherance of Dr. Levy's continued animosity toward Dr. Auteri, used the pretext of the [vaccine m]andate to evade the spirit of the Employment Agreement and interfere with Dr. Auteri's performance of the Employment Agreement."  (Am. Compl., ¶ 209.)  In particular, "Dr. Levy, on behalf of Doylestown Health and in furtherance of Dr. Levy's continued animosity toward Dr. Auteri, caused Doylestown Health to rescind Dr. Auteri's medical staff privileges at Doylestown Health so that Doylestown Health could use that recission of medical staff privileges as a pretext for Dr. Auteri's termination."  (*Id*., ¶ 210.)  Dr. Auteri blames Doylestown Health's executives as well: "Doylestown Health's executive management staff was aware of Dr. Levy's animosity toward Dr. Auteri and Dr. Levy's efforts to interfere with Dr. Auteri's performance of the Employment Agreement through the recission of Dr. Auteri's privileges at Doylestown Hospital, but

Doylestown Health's executive management staff did not take any action to stop Dr. Levy from doing so." (*Id*., ¶ 212.)

Approximately one month after he was terminated, Doylestown Health began a covid-19 testing program that, according to Dr. Auteri, mirrored the reasonable accommodation that he had sought. (*Id*., ¶¶ 98, 137.) After implementing its testing program, Doylestown Health did not contact Dr. Auteri to offer to reinstate him. (*Id*., ¶ 144.)

### B.      Procedural Background

Plaintiff instituted this action on August 24, 2022. (ECF No. 1.) Defendant filed a motion to dismiss Counts II and III of Plaintiff's Complaint on October 24, 2022, which the Court granted in part and denied in part. (ECF Nos. 6, 12.) Plaintiff filed an Amended Complaint on November 20, 2023. (ECF No. 13.) Defendant moved to dismiss Counts I (in part), II, and III of the Amended Complaint. (ECF No. 14.)

## II.      LEGAL STANDARD

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 231 (3d Cir. 2008)).  The court should also consider the exhibits attached to the complaint and matters of public record.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A complaint must contain "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III.    DISCUSSION

#### A.    Counts I and II: Retaliation

Plaintiff's retaliation claims under Title VII and the ADA are dismissed with prejudice because he has not alleged that he was suspended or terminated because he engaged in protected activity.  To state a retaliation claim, a plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [they] engaged in [protected] conduct . . .; (2) the employer took adverse action against [them]; and (3) a causal link exists between [their] protected conduct and the employer's adverse action."

8

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  Defendant argues that Plaintiff has not satisfied the third element of a *prima facie* retaliation claim.  (Mot. at 10.)

A plaintiff may establish the requisite causal connection between a protected activity and an adverse employment action through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Oberdorf v. Penn Vill. Facility Operations, LLC*, No. 15-1880, 2017 WL 839470, at *3 (M.D. Pa. Mar. 3, 2017) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  In the absence of such evidence, a plaintiff can also satisfy this element if "from the 'evidence gleaned from the record as a whole,'" a trier of fact can infer causation.  *Oberdorf*, 2017 WL 839470, at *3 (quoting *Lauren W. ex rel. Jean W.*, 480 F.3d at 267).

Since the proliferation of covid-19 vaccination mandates, plaintiffs have routinely alleged retaliation claims under Title VII or the ADA when they were terminated after failing to comply with their employers' policies.  *See, e.g.*, *Divine Equality Righteous v. Overbrook Sch. for the Blind*, No. 23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023); *Bey v. Pocono Med. Cntr.*, No. 23-688, 2023 WL 8602284, at *8 (M.D. Pa. Dec. 12, 2023).  Courts have held that "adverse actions were not done in retaliation for any protected activity" when they were "merely actions taken consistent with [an employer's] stated vaccination policy."  *See Divine Equality Righteous*, 2023 WL 4763994, at *10.  For example, in one case, some employees of a private school were terminated after they did not comply with the school's vaccination policy.  *Id.* at *1-3.  They claimed that they engaged in four types of protected activity, including opposing their

employers' policy and filing a charge of discrimination with the EEOC, and were terminated as a result. *Id*. at *10. The district court rejected their argument: "Plaintiffs' termination . . . [was] the consequence[] of Plaintiffs' initial and continued failure to follow the vaccination policy, and there are no non-conclusory allegations supporting that either were done in retaliation for any protected activity." *Id*. Similarly, in another case, a district court found that submitting a religious exemption application could not have been the but-for cause of a plaintiff's termination because even if she "had not submitted the exemption application at all, she still would have been terminated based on her failure to get vaccinated." *Adams v. New York State Unified Court Sys.*, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023); *see also Bey*, 2023 WL 8602284, at *8 ("The substantial factor motivating [the plaintiff's] termination was his failure to comply with [defendant's] covid-19 vaccination policy. Regardless of whether [he] sought a religious accommodation or complained of religious discrimination, [defendant] would have terminated [him] for failing to obtain [the] covid-19 vaccine.")

Defendant argues that Plaintiff has not alleged a causal connection between his accommodation requests and his termination. (Mot. at 10.) Defendant maintains that its vaccine mandate predated Plaintiff's accommodation requests, and courts routinely dismiss Title VII and ADA retaliation claims concerning covid-19 vaccine mandates when the alleged protected conduct occurs after the mandate is established. (*Id*. at 11-13.) In addition, Plaintiff alleges that his hospital privileges were rescinded because of Dr. Levy's "continued animosity" toward Plaintiff, which, according to Defendant, was unrelated to the vaccine mandate and predated his accommodation request, and as such, Defendant argues that it is "unreasonable" to infer a causal connection between Plaintiff's accommodation requests and the revocation of his hospital privileges and termination. (*Id*. at 13.)

In opposition, Plaintiff argues that he has stated retaliation claims because he alleged that he challenged the vaccine mandate before it was imposed and continued to protest it prior to and after submitting his exemption request and through his termination and that Defendant failed to reinstate him.  (Opp'n at 21, 23.)  He maintains that Defendant retaliated against him by harming him and discouraging others from challenging its vaccine mandate and seeking an exemption, and that Defendant's conduct "was unique to [him]."  (*Id*.)  Plaintiff claims that the cases Defendant cites are inapposite because, unlike him, they involve employees who only challenged a vaccine mandate after the imposition of the mandate and/or the submission of an exemption request.  (*Id*. at 21-22.)  In his opposition, Plaintiff extensively refers to the factual allegations in the Amended Complaint, but he does not cite any case law in support of his position.  (*Id*. at 16-20.)

Plaintiff alleges that on October 10, 2021, Dr. Levy demanded that Dr. Auteri comply with the vaccination mandate and told him that if he did not get the vaccine by 4:59 pm the next day, he would be terminated at 5:00 pm.  (Am. Compl., ¶¶ 63, 64.)  He alleges that Doyletown Health suspended him because he did not submit proof of vaccination in compliance with Defendant's vaccination mandate.  (*Id*., ¶ 73.)  He asserts that his medical privileges were revoked and that his employment was terminated after his second exemption request was denied.  (*Id*., ¶¶ 128, 130, 131.)  Dr. Auteri alleges that Defendant retaliated against him by suspending him without pay and terminating him after he asserted his right to religious freedom and requested a reasonable accommodation.  (*Id*., ¶ 179; *see also, Id*., ¶¶ 173, 184, 193, 196.)

Plaintiff's allegations are not sufficient to state a retaliation claim.  Imposing a vaccination requirement is a lawful condition of employment, especially in the healthcare field.  *See Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 314-16 (E.D.N.Y. 2022).  Dr. Auteri was notified by Defendant multiple times and in advance that he could be suspended or terminated for

failing to comply with the vaccination mandate.  (*See, e.g.*, Exs. 4, 5, 8.)  Like similar cases before

this Court, Plaintiff has not pled factual allegation to suggest that his suspension and termination

were anything other than the "consequence[] of Plaintiffs' initial and continued failure to follow

the vaccination policy." *Divine Equality Righteous*, 2023 WL 4763994, at \*10; *see also Bey*, 2023

WL 8602284, at \*8.   Accordingly, Plaintiff's retaliation claims under Title VII and the ADA are

dismissed with prejudice.

### B.     Count III: Breach of Contract

Plaintiff's breach of contract claim is dismissed with prejudice because he has not

sufficiently alleged facts to state a breach of the implied covenant of good faith and fair dealing.

We previously dismissed Plaintiff's breach of contract claim because Plaintiff had not pled

facts to support his claim that were independent of his Title VII and ADA claims.  *Auteri v. Via*

*Affiliates*, No. 22-3384, 2023 WL 7129954, at \*6 (E.D. Pa. Oct. 30, 2023).  After Plaintiff filed

his Amended Complaint, Defendant again moves to dismiss this claim, arguing that it is preempted

by Plaintiff's discrimination claims and that Plaintiff has not alleged that Defendant breached its

duty of good faith and fair dealing to support an independent breach of contract claim.  (Mot. at 7-

9.)

In opposition, Plaintiff raises multiple arguments.   First, Plaintiff argues that anti-

discrimination laws do not preempt a breach of contract claim when a party alleges a "breach of a

written employment agreement for a term."  (Opp'n at 9.)  According to Plaintiff, an employee

who is not at-will but is a party to a written employment agreement for a term may maintain both

a contract and a discrimination claim.  (*Id*. at 10-11, 13.)  Second, Plaintiff maintains that even if

his breach of contract claim is pre-empted by his discrimination claims, he pled facts in the

Amended Complaint "beyond those related directly" to his discrimination and retaliation claims

that support his claim that Defendant breached its duty of good faith and fair dealing.  (*Id*. at 9-10, 12-14.)  Third, Plaintiff argues that at the pleading stage he is entitled to plead discrimination and breach of contract claims in the alternative, and that whether a party breached the duty of good faith and fair dealing should not be decided on a motion to dismiss.  (*Id*. at 9, 11, 14-15.)

When plaintiffs allege "violations of both federal antidiscrimination statutes and state law based on the same set of facts, courts have found that the state law claims are preempted." *Gurchensky v. Potter*, No. 06-5760, 2010 WL 2292171, at *6 (D.N.J. May 28, 2010) (dismissing a breach of implied employment contract claim that is "based on Defendant's written policy against age and racial discrimination" when it "arises out [of] the same facts that form the foundation for [the plaintiff's] discrimination claims"); *Weirich v. Horst Realty Corp., LLC*, No. 07-871, 2007 WL 2071904, at *2 (E.D. Pa. July 13, 2007) (dismissing a common law breach of contract claim when plaintiff "pleads no additional facts" and "tied his breach of contract action to the alleged discriminatory conduct"); *see also King v. M.R. Brown, Inc.*, 911 F. Supp. 161, 168 (E.D. Pa. 1995) ("Since it is impossible for plaintiff to succeed on her breach of contract claim without succeeding on her claim of discrimination, her breach of contract claim is preempted by the PHRA."); *Style v. Philadelphia Elec. Co.*, No. 93-4593, 1994 WL 245469, at *3 (E.D. Pa. June 6, 1994) (dismissing a breach of contract claim when the state law claim is "based entirely on the alleged acts of discrimination" and "there are no separate set of facts to support a breach of contract claim . . . outside of the acts of discrimination").

However, discrimination and breach of contract claims may both proceed when the claims are "factually different" and a plaintiff can succeed on their breach of contract claim without proving discrimination.  *See Deramo v. Consolidated Rail Corp.*, 607 F. Supp. 100, 102 (E.D. Pa. 1985).  For example, in *Deramo*, the district court ruled on summary judgment that a breach of

13

contract claim was not barred by an age discrimination claim when the breach of contract claim

was based on "his detrimental reliance upon representations made by defendants," which was

independent of his age discrimination allegations, and the plaintiff could "succeed on his breach

of contract claim without proving discrimination." *Id*. at 102.

The general rule has been summarized as follows:

If all or part of the facts that would give rise to a discrimination claim would also
independently support a common law claim, the common law claim is not preempted by
the [discrimination claim] and need not be adjudicated within its framework.  If,
however, the act that would support the common law claim is only an act of
discrimination, the claim is preempted by and must be adjudicated within the framework
of the [discrimination claim].

*Keck v. Com. Union Ins. Co.*, 758 F. Supp. 1034, 1039 (M.D. Pa. 1991).

We have found no support to suggest that this general rule does not apply to an employee

whose employment is governed by an employment agreement and is not at-will.  For example, in

*Sola v. Lafayette College*, 804 F.2d 40, 44 (3d Cir. 1986), the Third Circuit recognized that it had

not decided and was not deciding whether Pennsylvania anti-discrimination law preempted an

action based on express contracts.

Plaintiff argues that *Doe v. Kohn, Nast & Graf, P.C.*, 862 F. Supp. 1310 (E.D. Pa. 1994),

supports his position that "where an employee who is NOT an employee 'at-will' but a party to a

written employment agreement for a term brings a discrimination claim, that employee can

maintain both contract and discrimination claims against the employer."  (Opp'n at 10.)

In *Doe*, a lawyer was hired under contract by a law firm, and he alleged that he was fired

because he was HIV positive.  862 F. Supp. at 1313-14.  In addition to alleging ADA and PHRA

violations, he asserted a breach of the implied covenant of good faith and fair dealing and other

state law claims.  *Id*.  The court concluded that plaintiff's discrimination and breach of contract

claims survived summary judgment.  *Id*. at 1317-23, 1325.  In particular, with respect to the breach

of contract claim, the district court concluded that "there is sufficient evidence to suggest that the defendants breached their duty to act in good faith" because "[b]arring an attorney from access to two of the critical tools of his trade – his office and his papers – is readily construable as an interference with, or at the very at least a failure to cooperate in, the performance of his contractual obligations." *Id*. at 1325. With respect to his discrimination claim, the district court found that that there was a genuine issue of material fact whether defendants' discriminatory motives were directly linked to the loss of plaintiff's job based on statements from shareholders in the firm and the firm's administrator. *Id*. at 1317.

The defendant did not argue at summary judgment or at an earlier juncture in the case that Plaintiff's breach of contract claim was preempted by his discrimination claims, and the district court did not address this argument. However, *Doe* is consistent with the general rule because at summary judgment the record included sufficient evidence to independently support both plaintiff's discrimination and breach of contract claims. *See Id*. at 1317-23, 1325; *Keck*, 758 F. Supp. at 1039. Accordingly, we proceed under the assumption that Plaintiff's breach of contract claim is not preempted by his discrimination claims if it is "factually different" from and independent of his discrimination claims. *See Deramo*, 607 F. Supp. at 102; *Keck*, 758 F. Supp. at 1039.

Plaintiff's breach of contract claim is based on the alleged animosity of Defendant's Chief Medical Officer, Dr. Levy, towards Plaintiff and Dr. Levy's purported attempt to use Plaintiff's non-compliance with the hospital system's vaccination mandate as pretext to terminate him. (Am. Compl., ¶¶ 201-05, 209-10, 212.) These allegations are distinct from the allegations that support his discrimination claims—"the act[s] that would support the common law claim [are not] only an act of discrimination," *see Keck*, 758 F. Supp. at 1039—and so

Plaintiff's breach of contract claim is not preempted, and we may analyze whether Plaintiff's claim survives this motion to dismiss.

We find that it does not.  Plaintiff has not pled "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of his breach of contract claim.  *Phillips*, 515 F.3d at 234 (citation omitted).  A breach of an express or implied covenant of good faith in an employment contract is brought as a breach of contract, rather than as an independent action for a breach of the duty of good faith and fair dealing.  *Engstrom v. John Nuveen and Co., Inc.*, 668 F. Supp. 953, 958 (E.D. Pa. 1987).  Pennsylvania courts have adopted the Restatement (Second) of Contracts formulation of the general duty of good faith and fair dealing, which provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *See Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).

Pennsylvania law defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  13 Pa. Stat. and Cons. Stat. Ann. § 1201.  "The obligation to act in good faith in the performance of contractual duties varies somewhat with the context," but Pennsylvania courts have recognized "certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."  *Somers*, 613 A.2d at 1214.  The covenant of good faith may also be breached when a party exercises discretion authorized in a contract in an unreasonable manner.  *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 627 (W.D. Pa. 2013) (citation omitted).

Requiring an employee to get a vaccine or an exemption as a condition of employment does not violate an implied covenant of good faith and fair dealing.  *See Borello v. Respironics California, LLC, et. al*., No. 23-580, 2024 WL 1496215, at \*14 (S.D. Cal. Apr. 5, 2024).  A legitimate business reason for terminating an employee is not evidence of bad faith.  *See Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 391 (D.N.J. 1999).

Plaintiff's breach of the implied covenant of good faith and fair dealing claim rests on his contention that Dr. Levy harbored so much animosity towards him that he caused Doylestown Health to rescind Dr. Auteri's hospital privileges so that his loss of privileges could be pretext for Dr. Auteri's termination.  (Am. Compl., ¶¶ 209-10.)  In support of this theory, Dr. Auteri provides only scant allegations as to Dr. Levy's alleged animosity towards him (*Id*., ¶¶ 201-05), and he does not plead facts to indicate that Dr. Levy wanted Plaintiff to be fired.  More importantly, he provides no factual allegations to support his conclusory allegations that Dr. Levy orchestrated a scheme to use Dr. Auteri's failure to comply with the vaccine mandate as a pretextual basis for Dr. Auteri to be terminated due to his deep-seated animosity towards him.  (*Id*., ¶¶ 209-10.)

Plaintiff's theory is further undermined by factual allegations pled in the Amended Complaint.  For example, Plaintiff asserted that he was notified by Defendant multiple times and in advance of its policy that he could be suspended or terminated for failing to comply with the vaccination mandate.  (*See, e.g.*, Exs. 4, 5, 8.)  This policy applied to all employees who did not comply with the vaccination mandate—it was not targeted to him.  In addition, Plaintiff detailed lengths Dr. Levy took to try to persuade Dr. Auteri to be inoculated and continue his employment at Doylestown Health (*see* Am. Compl., ¶¶ 47, 49, 63), which undercut his conclusory and unsubstantiated allegations that Dr. Levy wanted Dr. Auteri to be fired due to his deep animosity towards him.  Accordingly, Plaintiff's breach of contract claim is dismissed because he has not

pled factual allegations from which we can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *compare Pepe*, 85 F. Supp. 2d at 391 (finding on summary judgment that plaintiff's implied covenant of good faith and fair dealing claim failed because plaintiff "has offered no more than conclusory statements or arguments to support his allegations of bad faith"), *with Somers*, 613 A.2d at 1215 (summarizing the actions plaintiff alleges defendants took "to destroy the rights of the other party to receive the fruits of the agreement" that state a claim for breach of contract based on the implied obligation to act in good faith).[1]

### C.    Leave to Amend

Plaintiff seeks leave to amend his Complaint to add claims under the PHRA.  (Opp'n at 24.)  At this juncture, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  PHRA claims are broadly governed by the same standard as Title VII and the ADA.  *See Connelly*, 809 F.3d at 791 n.8 (Title VII); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (ADA).  Accordingly, we grant Plaintiff's request to add a PHRA discrimination based upon religious affiliation claim, and in line with this Opinion, we deny Plaintiff's request to add a retaliation claim based upon religious affiliation and/or disability.

---

[1] Because we find that Plaintiff has not stated a breach of contract claim, we need not address his argument that he is entitled to plead discrimination and breach of contract claims in the alternative. Nevertheless, courts routinely reject this argument in this context.  "[R]ecogni[zing] a common law action for the same claims that should be raised under [civil rights statues] would allow claimants to circumvent carefully drafted legislative procedures."  *McWilliams v. AT&T Info. Sys., Inc.*, 728 F. Supp. 1186, 1192 (W.D. Pa. 1990) (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 436 (3d Cir. 1986)).  For example, "[t]he Third Circuit has recognized the exclusive procedures established by the PHRA, and therefore has declined to recognize new causes of action which are designed to further Pennsylvania's anti-discrimination policies."  *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 344 (E.D. Pa. 1994) (citing *Sola*, 804 F.2d at 44).  Courts routinely deny a "common law cause of action when a statute provides a legal remedy for the employee."  *McWilliams*, 728 F. Supp. at 1192.  Therefore, while parties can often plead claims in the alternative, *see* Fed. R. Civ. P. 8(d)(2) and (3), Plaintiff may not do so here.

## IV.     CONCLUSION

For the foregoing reason, Defendant's Motion is granted.  An appropriate Order follows.


**BY THE COURT:**


 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**