**EXHIBIT "1"**

**APRIL 1, 2012 EMPLOYMENT AGREEMENT**

EMPLOYMENT AGREEMENT

BETWEEN

VIA AFFILIATES, INC.

AND

JOSEPH S. AUTERI, M.D.

## Table of Contents

Page

1.  Employment ......................................................................................................................... 3

2.  Responsibilities of Physician ............................................................................................... 3

    2.1.  Duties of Physician ..................................................................................................... 3
       2.1.1.  *Full-time Employment/Professional Medical Services* ................................ 3
       2.1.2.  *Reporting Responsibility* ............................................................................. 4
       2.1.3.  *Medical Director Responsibilities* ............................................................... 4
       2.1.4.  *Participation in the Programs* ...................................................................... 4
       2.1.5.  *Quality of Care* ............................................................................................ 4
       2.1.6.  *Continuing Medical Education* ..................................................................... 4
       2.1.7.  *License and DEA Number* ............................................................................ 4
       2.1.8.  *Medical Staff Membership* ........................................................................... 5
       2.1.9.  *Abide by Rules and Regulation* ................................................................... 5
       2.1.10.  *Assignment of Billing Rights* ...................................................................... 5
       2.1.11.  *Record of Patient and Administrative Services* ......................................... 5
       2.1.12.  *Completion of Medical Records* .................................................................. 5
       2.1.13.  *Third-Party Payors* ...................................................................................... 5
       2.1.14.  *Managed Care Organizations* ..................................................................... 5
       2.1.15.  *SERVE* .......................................................................................................... 6
       2.1.16.  *Consultations* ............................................................................................... 6
       2.1.17.  *Relations with Hospital's Medical Staff* ..................................................... 6
       2.1.18.  *Inservice Education* ..................................................................................... 6
       2.1.19.  *Marketing* .................................................................................................... 6
       2.1.20.  *Assist Hospital with Licensure and Accreditation* ..................................... 6
       2.1.21.  *Additional Services* ..................................................................................... 6
       2.1.22.  *Membership in the Affiliates of Hospital* .................................................... 7
    2.2.  Representations of Physician ...................................................................................... 7
       2.2.1.  *Licensure* ..................................................................................................... 7
       2.2.2.  *Pennsylvania Drug Enforcement Administration* ........................................ 7
       2.2.3.  *Board Certification* ...................................................................................... 7
       2.2.4.  *Medical Staff Privileges and Payor Participation* ...................................... 7
       2.2.5.  *Criminal Convictions* ................................................................................... 7
       2.2.6.  *Litigation or Investigation* ........................................................................... 7
    2.3.  Outside Activities ....................................................................................................... 8

3.  Physician's Compensation .................................................................................................... 8

    3.1.  Physician's Salary ....................................................................................................... 8
    3.2.  Payment Schedule for Physician ................................................................................ 8
    3.3.  Limit on Compensation .............................................................................................. 8
    3.4.  Benefits ....................................................................................................................... 8
    3.5.  Insurance ..................................................................................................................... 9
    3.6.  Paid-Time-Off ............................................................................................................ 9
    3.7.  Reimbursement for Continuing Medical Education .................................................... 9
    3.8.  Disability ..................................................................................................................... 9

4.  Responsibilities of VIAA ..................................................................................................... 10

    4.1.  Space ........................................................................................................................... 10
    4.2.  Equipment ................................................................................................................... 10
    4.3.  Staff Support ............................................................................................................... 10
    4.4.  Utilities and Services .................................................................................................. 10
    4.5.  Monitoring and Evaluation ......................................................................................... 10

5.    Confidential Information ....................................................................................................10

6.    Medical Records, Papers and Other Information ................................................................11

7.    Noncompetition ..................................................................................................................11

8.    Solicitation of Patients and Employees .............................................................................11

9.    Term and Termination ........................................................................................................11

　9.1.    Term ...............................................................................................................................11
　9.2.    Termination ....................................................................................................................12
　　9.2.1.    *General Termination* ...............................................................................................12
　　9.2.2.    *Termination for Cause by VIAA* ............................................................................12
　　9.2.3.    *Termination for Cause by Physician* ....................................................................13
　9.3.    Consequences of Nonrenewal or Termination by VIAA for Cause .............................13
　9.4.    Cooperation after Termination ....................................................................................14

10.    Government Regulations ...................................................................................................14

11.    Remedies ...........................................................................................................................14

12.    Notices ..............................................................................................................................15

13.    Severability ........................................................................................................................15

14.    Waiver ...............................................................................................................................15

15.    Amendment .......................................................................................................................15

16.    Assignment ........................................................................................................................16

17.    Complete Agreement .........................................................................................................16

18.    Governing Law ..................................................................................................................16

APPENDIX A .....................................................................................................................18

APPENDIX B .....................................................................................................................20

APPENDIX C .....................................................................................................................21

2

THIS EMPLOYMENT AGREEMENT ("Agreement"), effective April 13th, 2012, ("the Effective Date") is made by and between VIA Affiliates ("VIAA") a Pennsylvania nonprofit corporation, and Joseph S. Auteri, M.D. ("Physician"), sometimes called individually "Party", and together "Parties" on the date set forth beside the signatories' names.

## PURPOSES

WHEREAS, VIAA, an affiliate of Doylestown Hospital ("Hospital"), controlled by the Village Improvement Association ("VIA Health System"), provides and supports the provision of health care services to the residents of communities in Hospital's service area; and

WHEREAS, Physician is qualified to provide cardiovascular and thoracic surgery and appropriate consultations ("Services") to patients, and is licensed to practice medicine by the Commonwealth of Pennsylvania and holds a current Drug Enforcement Administration Number ("DEA Number") in Pennsylvania; and

WHEREAS, VIAA and Physician entered into a Relocation and Employment Agreement (the "Original Agreement") dated November 7, 2006, as amended by that certain First Amendment to the Original Agreement dated February 6, 2008 (together with the Original Agreement, the "Amended Agreement") to provide the Services to VIAA; and

WHEREAS, the Parties desire to enter into a new Employment Agreement to make certain adjustments to Physician's compensation, bonus structure and other fees to reflect the fair market value of Physician's services and productivity; and

NOW THEREFORE, intending to be legally bound hereby, and in consideration of the mutual promises stated herein, including the Purposes set forth above, VIAA and Physician agree as follow:

1.   **Employment**

VIAA employs Physician, and Physician accepts employment, to provide Services to patients at Hospital, to be Medical Director of Cardiovascular Surgery and Cardiology ("Medical Director"), to participate in Hospital's Community Care, Outreach and Education Programs (the "Programs") and to undertake such other duties as shall be assigned by VIAA in consultation with Hospital, all in accordance with the terms and conditions of this Agreement.

2.   **Responsibilities of Physician**

   2.1.   Duties of Physician

   Physician shall:

   2.1.1.   Full-time Employment/Professional Medical Services

   provide Services as a full-time employee and as Medical Director (as more fully described in Attachment A, attached hereto and made part hereof), participating fully in the Programs (as described in Section 2.1.4.) and providing inpatient and outpatient Services,

3

including hospital rounds, and Emergency Department call coverage as required by VIAA and Hospital Chief Medical Officer(s)or his designee(s);

### 2.1.2. Reporting Responsibility

be subject to the supervision and control of the Chief Medical Officer and the President and CEO of Hospital with respect to his provision of Services, activities as Medical Director, participation in the Programs and any other activities performed at or on behalf of VIAA or Hospital;

### 2.1.3. Medical Director Responsibilities

be responsible for managing all aspects of the clinical programs and activities provided by and through the Department including, but not limited to, developing the Department budget, including formulating projected growth plans, and equipment and staffing requirements related to the provision of Services. As Medical Director, Physician shall have control over all aspects of the clinical affairs of the Department, including staffing in cooperation with Hospital management, in accordance with Hospital's policies and procedures;

### 2.1.4. Participation in the Programs

participate in the Programs which may include, but are not limited to, Physician's provision of care to indigent patients, on-call services in Hospital's Emergency Department, and presentations to community groups, employers, potential donors and schools, all as requested by VIAA or Hospital;

### 2.1.5. Quality of Care

provide quality and appropriate care to patients, and monitor and evaluate the quality and appropriateness of Services provided by physicians in the Department, it being understood by the Parties that the goal of Physician and Hospital is for the annual clinical performance of Services at Hospital to be comparable to or better than national standards for mortality and morbidity, on a risk-stratified basis, and that Services rendered shall be at least commensurate with the prevailing professional standard of care;

### 2.1.6. Continuing Medical Education

take continuing medical education courses required by the VIAA, Hospital and the American Board of Thoracic Surgery in order to maintain full Board certification, and a high level of expertise for the provision of Services;

### 2.1.7. License and DEA Number

maintain Physician's medical license and DEA Number in Pennsylvania while this Agreement remains in effect. If Physician's medical license or DEA Number is terminated, revoked, suspended or limited in any jurisdiction, Physician shall immediately notify VIAA;

2.1.8.  <u>Medical Staff Membership</u>

remain a member in good standing of the Active Medical Staff of Hospital and of any other hospital at which Physician obtains staff membership and privileges.  Physician shall notify VIAA of any restriction, suspension, revocation or termination of Physician's privileges or staff membership imposed by Hospital or any other hospital immediately;

2.1.9.  <u>Abide by Rules and Regulation</u>

conduct his medical practice in conformity with all (i) applicable federal, state and local laws, rules, regulations and policies, including those relating to the licensure and regulation of physicians and health care providers for which Physician provides services; and (ii) policies, rules and regulations of VIAA and Hospital (with the exception of any provisions governing appeals of termination of privileges or medical staff membership upon termination of this Agreement) and any hospital or other provider at which Physician has staff membership and privileges;

2.1.10.  <u>Assignment of Billing Rights</u>

assign to VIAA Physician's rights to bill and collect all patient charges generated by Physician's provisions of Services, regardless of the location where the Services are provided.  Physician agrees that VIAA shall set any and all charges to patients for any professional services rendered by Physician during the term of this Agreement.  Physician may bill and collect payment for Outside Activities as defined in Section 2.3.;

2.1.11.  <u>Record of Patient and Administrative Services</u>

file promptly with Hospital, on forms designed by Hospital, a record of all Services provided to patients, including sufficient clinical information for the services to be billed appropriately by Hospital, and a record of his time providing administrative services;

2.1.12.  <u>Completion of Medical Records</u>

maintain to the satisfaction of VIAA and Hospital and in compliance with all legal, VIAA and Hospital requirements, adequate, timely and complete medical records. Physician also shall maintain records of Physician's inpatient admissions and outpatient referrals, specifying the patient's name, the admitting hospital and the date of admission or referral.

2.1.13.  <u>Third-Party Payors</u>

participate in Medicare and Blue Shield and shall take assignment from Medicaid and other third-party payor or insurance Programs that offer assignment arrangements to physicians.  While this Agreement continues in effect, Physician shall not contract independently with any third-party payors for the provision of Services during the term of this Agreement;

2.1.14.  <u>Managed Care Organizations</u>

5

provide Services to any patient who is a member of any health maintenance, preferred provider or similar managed care organization with which VIAA or Hospital has an agreement;

2.1.15. <u>SERVE</u>

support the goals, objectives and programs of Hospital and Hospital's medical staff, including adherence to Hospital's values (Service, Enthusiasm, Respect, Value, Excellence (SERVE)) in dealing with patients, referring physicians and Hospital Associates, including being available for periodic and regular meetings regarding patient and physician satisfaction and care issues related to Services furnished hereunder and cooperating with Hospital in maintaining and evaluating measures of patient and referring physician satisfaction at Hospital;

2.1.16. <u>Consultations</u>

ensure Physician, or another physician in the Department, is available to consult promptly with other members of Hospital medical staff or Associates when such consultation is reasonably requested or required;

2.1.17. <u>Relations with Hospital's Medical Staff</u>

maintain a professional liaison with Hospital's medical staff in order to promote the efficient utilization of Services at Hospital;

2.1.18. <u>Inservice Education</u>

develop and participate in programs of education for Hospital's medical staff and in-service programs for nursing, technical and other non-physician personnel;

2.1.19. <u>Marketing</u>

cooperate with VIAA and Hospital on marketing activities regarding Services and Programs;

2.1.20. <u>Assist Hospital with Licensure and Accreditation</u>

Cooperate with and assist Hospital in obtaining and maintaining all relevant Hospital and Hospital-related licenses and accreditations; and

2.1.21. <u>Additional Services</u>

perform such other services reasonably requested by VIAA and Hospital including, but not limited to those customarily rendered in a hospital furnishing cardiovascular and thoracic surgical services and cardiology and services necessary to maintain Hospital's accreditation and license, and its right to offer cardiovascular and thoracic surgical services and cardiology, and otherwise ensure that patients in the community served by Hospital shall have

prompt and ongoing access to quality cardiovascular and thoracic surgical services and cardiology.

2.1.22. Membership in the Affiliates of Hospital.

join and continue to maintain membership in good standing in the Bucks County Physician Hospital Alliance and in the Hospital Independent Practice Association, and shall participate in agreements with third-party payors entered into by such organizations.

2.2.    Representations of Physician

Physician represents that:

2.2.1.  Licensure

As of the date of providing Services under this Agreement, Physician possesses a valid and unlimited license to practice medicine under the laws of the Commonwealth of Pennsylvania, which license has never been revoked, terminated, suspended or limited. Physician's license to practice in any other state or territory has never been terminated, revoked, suspended, restricted or limited nor has Physician been placed on probation by any medical licensing board, except as disclosed in Exhibit B.

2.2.2.  Pennsylvania Drug Enforcement Administration

As of the date of providing Services under this Agreement, Physician possesses a valid DEA Number in Pennsylvania which has never been revoked, terminated, suspended or limited. Physician's right to prescribe controlled substances in any other state or territory has never been terminated, revoked, suspended, restricted or limited including by probation, except as disclosed in Exhibit B;

2.2.3.  Board Certification

Physician is board certified by the American Board of Thoracic Surgery;

2.2.4.  Medical Staff Privileges and Payor Participation

Physician's medical staff privileges at any hospital or health care provider, and participation with any third-party payor including, but not limited to, Blue Shield, Medicare and Medicaid have never been and are not in the process of being curtailed, suspended, revoked, terminated, or otherwise made the subject of any proceedings, except as disclosed in Exhibit B;

2.2.5.  Criminal Convictions

Physician has not been convicted of a criminal offense, nor is the subject of any proceedings which could have such results, except as disclosed in Exhibit B;

2.2.6.  Litigation or Investigation

To the best of Physician's knowledge and belief, Physician is not now and has not in the past been a party to or subject of any litigation, including professional liability litigation, or investigation, whether civil, criminal or administrative in nature, nor the subject of any investigation relevant to Physician's practice other than those conducted by a state licensing board in the usual course of obtaining and renewing a license, except as disclosed in Exhibit B.

2.3.    Outside Activities

Physician may participate in reasonable health care related activities other than Services, including speaking engagements, expert witness services in a legal or administrative proceeding, program consultation (but not within the non-compete geographic area set out in Section 7) or teaching (collectively, the "Outside Activities") only to the extent such activities do not interfere with Physician's performance of Services, as Medical Director or of Programs under this Agreement, as determined by the Medical Director of VIAA or Chief Medical Officer of Hospital. Physician may bill for and retain the collections from Outside Activities.

3.    **Physician's Compensation**

3.1.    Physician's Salary



3.2.    Payment Schedule for Physician



3.3.    Limit on Compensation



3.4.    Benefits

8

Physician shall receive VIAA's standard employee benefits including, but not limited to, hospitalization and major medical, dental assistance, life and accident insurance, long term disability (meaning the inability to perform in accordance with the terms of this Agreement for a period of six (6) months) and a pension plan provided, when relevant, against Base Compensation only. Physician shall be reimbursed for prior-approved expenses incurred by Physician for publications and business activities, membership on Hospital's medical staff and Physician's Pennsylvania medical license.

3.5.    Insurance

VIAA shall provide Physician with professional liability coverage on a claims made basis in compliance with all legal requirements. VIAA shall provide tail coverage, if such coverage is necessary, upon Nonrenewal or Termination of this Agreement, so long as VIAA does not terminate or not renew this Agreement for cause.

3.6.    Paid-Time-Off

Physician shall have time-off as outlined in Schedule "A" of the "Services Provided by Provider Section of the Temple Cardiac Surgeon Agreement, unless approved by the CMO. Physician will not be entitled to be "paid out" or "roll over" any unused time as outline in Schedule "A" of the Temple Cardiac Surgeon Agreement.

3.7.    Reimbursement for Continuing Medical Education

VIAA shall pay Physician for the reasonable expenses he incurs in attending appropriate Continuing Medical Education ("CME") programs, to be taken in accordance with VIAA's employee policies for CME not to exceed $2,500 per year. In addition, Doylestown Hospital will reimburse Physician for reasonable expenses incurred for participating in any mutually agreed upon program, attending any course, or visiting any facility associated with program or service line development or quality initiative at Doylestown Hospital for which Physician's participation is determined to be of value.

3.8.    Disability

Physician shall be considered "disabled" and "on disability" if Physician becomes unable to perform his or her essential duties hereunder, with or without reasonable accommodation, for a period in excess of ten (10) days due to partial or total disability or incapacity resulting from a mental or physical illness or any similar cause. Subject to timely receipt of documentation reasonably acceptable to VIAA from Physician's treating physician that appropriately documents the extent and anticipated duration of Physician's disability, and after the waiting period of ten (10) days, during which Physician shall be required to use accrued paid time off or unpaid leave, if accrued paid time off is insufficient to cover the waiting period, VIAA shall continue the payment of the VIAA's portion of the Physician's health benefits premiums and payment of Physician's base salary, at its then current rate, for a period of up to ninety (90) days. Thereafter, VIAA shall have no obligation for base salary or other compensation payments to Physician during the continuance of such disability or incapacity, and VIAA shall have the right to terminate Physician's employment in accordance with Section 9.2.2.6 of this Agreement. VIAA reserves the right to require Physician to submit to an

9

independent medical evaluation by an appropriate physician specialist selected and mutually agreed upon by VIAA and Physician for the purpose of determining Physician's ability to continue to substantially perform his duties under this Agreement. The disability coverage described herein is subject to modification from time to time in the sole discretion of VIAA.

**4.    Responsibilities of VIAA**

At its sole discretion, VIAA shall:

4.1.    Space

provide appropriate Offices at Hospital with examination space for Physician, including space to house the medical and other records. The parties agree that it is VIAA's intention, if the Department grows as set out elsewhere in this Agreement, to arrange for the provision of up to two thousand five hundred square feet (2,500 sq. ft.) of office space at the hospital;

4.2.    Equipment

provide equipment at the Offices necessary for Physician to provide Services, when such equipment is not provided customarily by Physician;

4.3.    Staff Support

provide support staff, including clinical staff as determined by VIAA or Hospital;

4.4.    Utilities and Services

utility, laundry, housekeeping, and other services, including medical waste disposal, telephone answering and paging services; and

4.5.    Monitoring and Evaluation

monitor and evaluate the quality and appropriateness of Services provided by Physicians, it being understood by the Parties that one of their goals is that the annual clinical performance in the provision of Services at Hospital is to be comparable to or better than national standards for mortality and morbidity, on a risk-stratified basis.

**5.    Confidential Information**

Physician agrees that he shall not, at any time, use for Physician or others, or disclose to others, trade secrets, patient information, marketing plans, know-how, or other private or confidential information of or about VIAA or Hospital which is not already available to the public, without VIAA's or Hospital's prior written permission. Physician may release such information if clearly required by law, or if such release is required for Physician to defend a lawsuit, or other action, claim, enquiry or investigation related to Physician's practice under this Agreement, either during or following termination or nonrenewal of this Agreement.

10

6. **Medical Records, Papers and Other Information**

   All medical records of patients, and correspondence, memoranda, notes, reports, plans of care, patient lists, tapes, discs, and other papers or any other medium on or by which information is maintained by Physician in connection with Physician's employment by VIAA shall be, as between the Physician and VIAA or Hospital, the property of VIAA or Hospital. Physician shall not make any copies of any patient's medical record at any time without VIAA's or Hospital's prior written permission. Upon Nonrenewal or Termination of this Agreement, if any patient subsequently requests her medical records be transferred to Physician, VIAA or Hospital shall honor that request.

7. **Noncompetition**

   Physician shall not, while this Agreement continues in effect and for two (2) years following its Nonrenewal by VIAA for cause or Termination by VIAA for cause or by Physician without cause, directly or indirectly engage in the practice of medicine within a twenty (20) mile radius of Hospital as the crow flies. In particular, and without limiting the application of this Section in any way, Physician shall not provide Services at Abington Memorial Hospital, Holy Redeemer Hospital, St. Mary Hospital, Langhorne, Grandview Hospital or Central Montgomery Hospital.

   Notwithstanding the forgoing, if Physician has not met the Quality Indicators and VIAA does not renew this Agreement as a result, or Physician terminates for cause pursuant to Section 10.2.3 of this Agreement, or the compensation upon renewal of this agreement is lowered due to regulatory issues or fair market value adjustments; then in any of these circumstances this Section 7 shall not apply.

8. **Solicitation of Patients and Employees**

   Physician shall not, while this Agreement continues in effect and for two (2) years following its Nonrenewal or Termination, directly or indirectly solicit by any means whatsoever any patients being provided Services by any physician employee of VIAA or Hospital or any employee of VIAA or Hospital. Notwithstanding the preceding sentence, this Section shall not apply to any individual recruited by Physician from Virginia or Arizona. Further, this Section 9 shall not apply if this Agreement is terminated for cause by Physician pursuant to Section 10.2.3 of this Agreement.

9. **Term and Termination**

   9.1. _Term_

      This Agreement shall take effect on May 1, 2012 and shall continue in effect for an initial term of five (5) years through and including April 30, 2017 (the "Term"), unless otherwise terminated as provided herein. Thereafter, this Agreement shall be renewed for one additional five (5) year period (an "Additional Term) on the following conditions; the Agreement shall become effective for the Additional Term so long as Physician meets the Quality Indicators set forth in Exhibit C and so long as this Agreement continues to be in effect. Notwithstanding the foregoing, if the Parties agree to change the Quality Indicators set forth in Exhibit C in

11

writing, said new Quality Indicators shall be used in evaluating whether this Agreement will continue in effect and not the Quality Indicators currently set forth in Exhibit C.

Provided that the criteria outlined in Exhibit C have been met prior to January 1, 2016, then the Physician will receive a draft contract by no later than July 1, 2016.

9.2.    Termination

9.2.1.    General Termination

Either Party may give the other Party written notice (in accordance with Section 10 of this Agreement) at least one hundred and eighty (180) days prior to the end of the Term or any Additional Term that said Party will not renew this Agreement ("Nonrenewal").

9.2.2.    Termination for Cause by VIAA

VIAA may terminate this Agreement for cause immediately (except as to Section 10.2.2.5) at any time as follows:

9.2.2.1.Death

Upon Physician's death.

9.2.2.2.Criminal or Civil Offenses

If Physician is convicted, pleads guilty, enters a plea of *nolo contendere* or enters a first offenders program for any crime involving fraud, dishonesty, embezzlement, assault or any felony under Pennsylvania law;

9.2.2.3.Limits on Professional Certification

Upon the revocation, termination, suspension or limitation of Physician's license to practice medicine in any jurisdiction, Physician's DEA Number, or Physician's controlled substances license or registration in any jurisdiction, or revocation, termination, suspension or limitation of Physician's privileges at any hospital or facility, or the termination, cancellation or inability to renew appropriate professional liability insurance coverage;

9.2.2.4.Limits on Payments

Upon the suspension, termination or imposition of other sanctions by Medicare, Medicaid or other government program, or the inability to participate in any third party health insurance program material to Hospital in which Hospital participates;

9.2.2.5.Exclusion

Upon disbarment or exclusion by any federal or state agency;

12

9.2.2.6.Disability

Upon any disability which renders Physician unable to perform the essential functions of his position with a requested reasonable accommodation, provided Physician shall be entitled to such paid and unpaid leave as would be available for such disability pursuant to applicable law and VIAA's Human Resources policies then in effect;

9.2.2.7.Ineligibility for Malpractice Insurance

Upon Physician becoming ineligible for malpractice liability insurance;

9.2.2.8.Inadequate Patient Care

If VIAA or Hospital determine, in good faith after a reasonable investigation, that Physician is not providing adequate patient care or that the safety of patients is jeopardized by his continued services;

9.2.2.9.Breach

Upon the breach of or failure to perform any material term, condition or responsibility contained in this Agreement by Physician and Physician's failure to cure, to the sole satisfaction of VIAA, such breach or failure to perform within thirty (30) days of the date of the written notice.

9.2.2.10.    Safety

If Physician uses or abuses alcohol or controlled substances in a manner that, in VIAA's reasonable judgment, affects or may affect the medical care or safety of Patients.

9.2.3.   Termination for Cause by Physician

Physician may terminate this Agreement for cause as follows:

9.2.3.1.Nonpayment

If VIAA does not make the payments called for by this Agreement on the dates specified in this Agreement, and after Physician has given VIAA five (5) days written notice to cure in accordance with Section 10 of this Agreement;

9.2.3.2.Bankruptcy

Immediately if VIA Health System is adjudicated bankrupt, becomes insolvent, institutes or consents to any voluntary bankruptcy or other similar arrangement, or if a receiver or trustee is appointed for VIA Health System for any similar reason.

9.3.   Consequences of Nonrenewal or Termination by VIAA for Cause

13

Notwithstanding any provisions of the Hospital's Bylaws or its Medical Staff Bylaws, Rules and Regulations, Physician shall surrender all privileges and resign from the Hospital's Medical Staff immediately upon the effective date of the Nonrenewal or Termination of this Agreement in the event that VIAA does not renew for cause or terminates this Agreement for cause. UNDER THESE FOR CAUSE CIRCUMSTANCES, PHYSICIAN WAIVES ANY AND ALL RIGHTS OF APPEAL SET FORTH IN THE HOSPITAL'S DOCUMENTS CITED HEREIN. This Section shall not apply in the event Physician terminates for cause or VIAA terminates for Physician's disability.

    9.4.   <u>Cooperation after Termination</u>

In the event this Agreement is not renewed or is terminated by either Party, Physician shall cooperate with VIAA in the orderly transfer of patients and patients' records to another provider of similar Services associated with VIAA.

**10.**   **<u>Government Regulations</u>**

Should any law, regulation or procedure of the government or any governmental agency, or the Parties reasonable interpretation thereof, effect a change which materially affects the ability of a Party to satisfy any provision of this Agreement, the Parties shall forthwith and in good faith renegotiate the affected provision so that such provision can be satisfied in accordance with such law, regulation or procedure. If the Parties are unable, within ninety (90) days, to agree on an acceptable change to the affected provision, either Party may terminate this Agreement upon no less than thirty (30) days' prior written notice to the other Party.

**11.**   **<u>Remedies</u>**

The Parties acknowledge VIAA's legitimate concern regarding potential future competition by Physician and that any violation of the restrictions described in this Sections 5, 7 or 9, would result in irreparable injury to VIAA, it business and its property. The Parties agree that if a court of competent jurisdiction determines that any restriction contained in this Sections 5, 7 or 9 is invalid or unenforceable by reason of the duration or geographical scope of such restriction, or otherwise, such restriction shall be reduced to the least extent necessary to render it valid and enforceable. Physician acknowledges that, in addition to all other remedies available to VIAA under law or equity, VIAA shall be entitled to injunctive relief in any court of competent jurisdiction for any breach or threatened breach of any of the covenants contained in this Sections 5, 7 or 9 as well as damages and an equitable accounting of all earnings, profits and other benefits arising from any such breach or threatened breach. VIAA also shall be entitled to recover its attorneys' fees and costs incurred in connection with any breach of Sections 5, 7 or 9 as written or any breach of any restriction as modified under this Section to render it enforceable. Physician hereby waives any objection on the grounds of improper jurisdiction or venue to the commencement of an action in the Commonwealth of Pennsylvania and agrees that effective service of process may be made upon Physician by mail in accordance with the notice provisions set forth in Section 13 below. PHYSICIAN ACKNOWLEDGES THAT THE TERMS OF THIS SECTION 12 HAVE BEEN NEGOTIATED AT ARM'S LENGTH. PHYSICIAN FULLY UNDERSTANDS THE TERMS OF THIS SECTION 12 AND AGREES TO BE BOUND HEREBY.

12.  **Notices**

     For purposes of this Agreement, notices and all other communications provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered or mailed by United States certified or registered mail, return receipt requested, postage prepaid, or by a recognized courier service, addressed as follows:

     If to the Physician:



     If to VIAA:

          VIAA Affiliates, Inc,
          595 West State Street
          Doylestown, PA  18901
          Attn:  Barbara A. Hebel, VP, Human Resources

     or to such other addresses as either Party may have furnished to the other in writing in accordance herewith, except that notices of change of address shall be effective only upon notice given in accordance with the Section.

13.  **Severability**

     In the event that any section, Section or term of this Agreement shall be determined to be invalid or enforceable by any competent tribunal for any reason, the remainder of this Agreement shall be unaffected thereby and shall remain in full force and effect, and if any section, Section or term of this Agreement be adjudged to any extent invalid or unenforceable by any competent tribunal, such section, Section or term will be deem modified to the extent necessary to make it valid and enforceable.

14.  **Waiver**

     The waiver by either Party of any breach or violation of any provision of this Agreement shall not operate as, or be construed to constitute a waiver of any subsequent breach of the same or any provision hereof.

15.  **Amendment**

     This Agreement may be amended only by mutual agreement of the Parties in writing.

16.     **Assignment**

This Agreement shall inure to the benefit of and shall be binding upon the respective successors and assigns of the Parties, but it may not be assigned in whole or in part by either Party without the consent of the other Party. in whole or in part.

17.     **Complete Agreement**

This Agreement is the complete and exclusive statement of the entire agreement between the Parties, which supersedes any prior or contemporaneous agreements, oral or written and all other communications between the Parties relating to the subject matter of this Agreement.

18.     **Governing Law**

The interpretation and enforcement of this Agreement shall be governed by the law of the Commonwealth of Pennsylvania without application of its conflicts of laws provisions, and the Parties hereby consent to jurisdiction of the federal or state courts in the Commonwealth of Pennsylvania.

*[Signature page follows]*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the dates written below, to be effective on the date first given above:

VIA AFFILIATES, INC.

Dated: 4/17/12

By: _____
Scott Levy, MD, VIAA Administrator

JOSEPH S. AUTERI, M.D.

Dated: 13 - APRIL - 2012

By: _____
Joseph S. Auteri, M.D.

17

**EXHIBIT A**

**Doylestown Hospital**

**Position Description**
**Medical Director, Cardiovascular Surgery**

Position Summary

The Director of the cardiac surgery program at Doylestown Hospital is responsible for providing clinical direction and leadership in the planning, development and implementation of the open heart program.   These responsibilities are carried out in keeping with the overall goals and objectives for the cardiac program.

Duties and Responsibilities

A.     The Medical Director of Cardiac Surgery will collaborate with the other members of the medical staff, with the Administration of Doylestown Hospital, and with the management team of the cardiac program to plan, develop, implement, and enhance a well-coordinated cardiac surgery program of high clinical quality that is responsive to market needs.

B.     The Medical Director shall oversee and provide direction to all cardiovascular surgery services provided at Doylestown Hospital to ensure the services are provided efficiently and result in high quality care, ensuring patients have access to a comprehensive array of cardiology services.

C.     The Medical Director of Cardiac Surgery will provide clinical direction and leadership to promote interdepartmental and interdisciplinary communications and systems that enhance the quality and cost effectiveness of patient care.

D.     The Medical Director of Cardiac Surgery will assist with the design, evaluation and planning of facilities, equipment, supplies and new products and services intended for the cardiac surgery patient.

E.     The Medical Director of Cardiac Surgery will assist with the needs assessment, recruitment, and selection of personnel and/or contracted specialty and medical services to assure high quality, cost effective care for the cardiac surgery patient from pre-admission to home.

F.     The Medical Director of Cardiac Surgery will assist management in evaluating the performance and competency of the Cardiac OR team, the Perfusion service, and Cardiac Anesthesia.

G.     The Medical Director of Cardiac Surgery will provide leadership for, and participate in, performance improvement initiatives organized for the cardiac surgery program, including participating in developing and ensuring compliance with evidence-based protocols and pathways of care.

18

H.  The Medical Director of Cardiac Surgery will contribute clinical knowledge, insight and leadership in the development of marketing and business plans for the cardiac program, in order to foster continued program development, and integrate market information and research that can enhance the program's value and effectiveness.

I.  The Medical Director of Cardiac Surgery will collaborate with the Chief Medical Officer and the Chairman of Surgery at Doylestown Hospital to assure collegial relations and communications between and among medical staff members.

J.  The Medical Director of Cardiac Surgery shall report to the Chief Medical Officer and shall comply with the Rules and Regulations of the Doylestown Hospital medical staff as defined in the Medical Staff Bylaws.

K.  The Medical Director shall participate in the community outreach and public functions provided by Doylestown Hospital, such as lectures, and be available to assist with fundraising activities and media interviews with an emphasis on, but not exclusively for, cardiovascular surgery.

## Doylestown Hospital Commitments

A.  DOYLESTOWN HOSPITAL makes the following commitments to assure that the cardiac surgery program's primary goal for quality care and service is achieved:

B.  DOYLESTOWN HOSPITAL will work with the Medical Director of Cardiac Surgery to plan and implement the open heart surgery program and will collaborate to foster enhancements and initiate corrective actions as identified.

C.  DOYLESTOWN HOSPITAL will recruit and, as necessary, will train qualified personnel for the Cardiac OR, Perfusion Services, and CRU to assure clinical competency, continuity of care, and staff commitment.

D.  DOYLESTOWN HOSPITAL will provide financial support for continuous after hours medical coverage for the cardiac surgery patient in keeping with the identified needs for patient safety, program outcomes, and cost effectiveness.

E.  DOYLESTOWN HOSPITAL will provide case management support for the cardiac surgical patient by assigning a case manager to the cardiac surgery program.

F.  DOYLESTOWN HOSPITAL will assure that medical staff expertise is identified and obtained to address the critical care and recovery needs of the cardiac patient and nursing staff.

## EXHIBIT B

## DISCLOSURES FOR SECTION 2.2.

NONE

**EXHIBIT C**
**QUALITY INDICATORS**
**(TO BE DETERMINED WITH AGREEMENT BY ALL INVOLVED PARTIES)**

Department shall achieve the Quality Indicator Criteria improvements listed below. If any one of the Quality Indicators below is met, then this contract will be renewed (as per the terms of Paragraph 9.1 and other relevant sections of this Agreement):

1. Implement a TAVR (Trans Aortic Valve Replacement) program, defined as doing our first case.
2. Collaborate with Electrophysiologists to implement an Atrial Fibrillation Center (defined as doing our first case).
3. Collaborate with multidisciplinary task force to implement Lung Cancer Initiative.
4. Maintain Blue Distinction Center for Cardiac Care as designated by Independence Blue Cross in 2 of the next 5 years, or once in the 4th year.
5. Achieve one of the top 3 results (including ties) in the DVSTS Database for either Operative Mortality or In-Hospital Mortality, or Observed/Expected Mortality twice in the next 5 years (or once in the 4th year).
6. Achieve Philadelphia Magazine's 'Top Docs' distinction in 3 of the next 5 years.