# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No.  22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

### PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS

Plaintiff, Joseph S. Auteri, M.D. (**"Plaintiff"** or **"Dr. Auteri"**) objects to the "Defendant's First Set of Interrogatories to Plaintiff" (**"Interrogatories"**) for the following reasons:

1.     Plaintiff objects to the Interrogatories to the extent the Interrogatories seek information protected from disclosure by the attorney-client, work product, or any other privilege or immunity.

2.     Plaintiff objects to the Interrogatories to the extent the Interrogatories are overly broad, unduly burdensome, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence.

3.     Plaintiff objects to the Interrogatories to the extent the Interrogatories seek confidential and/or proprietary information of Plaintiff which (1) could be used by Defendant to harm or usurp Plaintiffs' employment and/or personal relationships/business, (2) would cause the unnecessary disclosure of the confidential information of a third party (including businesses, current and/or former employees of Defendant, or individuals not at issue in the instant action), and/or (3) is not within the scope of discovery, necessary for the parties to complete discovery, or

necessary to prosecute the parties' claims or defenses in the above matter.  The request for such information is unduly prejudicial, unduly burdensome, and done for the purpose of harassment and/or improper purposes.

4.    Plaintiff objects to all Interrogatories which call for "all" and "each and every" as overly broad, global, and all inclusive.  Plaintiff does not and cannot necessarily know and identify "all" and "each and every."

5.    Plaintiff objects to the Interrogatories to the extent the Interrogatories seek the production, identification, or disclosure of documents, data, or information which contain, reflect, or constitute the mental impressions, conclusions, opinions, or legal theories of Plaintiff's representatives or counsel concerning the subject matter of this litigation.

6.    Plaintiff answers the Interrogatories subject to, without intending to waive, and expressly reserving any objections as to competency, relevancy, materiality, privilege, and admissibility of any information and documents.

7.    Plaintiff makes all objections and answers subject to and without in any way waiving or intending to waive, but on the contrary, intending to reserve and reserving the right to object to other discovery practices and procedures involving or relating to the subject matter of the Interrogatories.

8.    Plaintiff reserves the right to supplement Plaintiff's answers and/or assert additional objections.

9.    Plaintiff objects to the Instructions and Definitions to the extent those Instructions and Definitions seek to impose burdens and obligations greater than those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the Eastern

District of Pennsylvania.

10.    Plaintiff incorporates these General Objections into Plaintiff's separate answer to each of the Interrogatories as if set forth fully therein.

Subject to the foregoing General Objections, Plaintiff answers specifically as hereinafter set forth.

## ANSWERS TO INTERROGATORIES

1.    Identify all persons with whom you have had any communications, excluding counsel, regarding any fact or event relating in any way to the claims asserted in your Second Amended Complaint, and for each such person:

(a)    state the date, time, place and manner/method (in-person, telephone, email, etc.) of the communication;

(b)    identify the person or persons participating or present during the communication; and

(c)    state in detail the substance and content of the communication, including, but not limited to, what was said and by whom.

**ANSWER:** Objection. See General Objection No. 1, incorporated herein by reference. Dr. Auteri discussed the allegations in the Second Amended Complaint with his wife as those events were occurring. Those communications were held during their marriage, for the purpose of conveying messages regarding the events which were occurring, and in confidence. All matters which Dr. Auteri discussed with his wife regarding the allegations in the Second Amended Complaint are privileged under the marital communications privilege and barred from disclosure. Without waiving that Objection, Dr. Auteri answers as follows:

1.    Scott Levy, M.D. – Dr. Auteri and Dr. Levy had multiple conversations (dates and times not recorded except as memorialized in meeting minutes discussed below, the instant Answer, or in the Second Amended Complaint) regarding the Mandate, Dr. Auteri's opposition to the Mandate, Dr. Auteri's study of data regarding the risks associated with the Covid-19 "Vaccine," and Dr. Levy's threats to terminate Dr. Auteri if Dr. Auteri did not forego Dr. Auteri's civil right to a religious exemption from the Mandate. Dr. Levy continued his threats

against Dr. Auteri in a meeting on October 10, 2021 at a restaurant in Doylestown, Pennsylvania in which Dr. Levy stated that Dr. Auteri would be known as a "loser" if Dr. Auteri did not subject himself to the risks of the Covid-19 "Vaccine" despite Dr. Auteri's religious objections.  Dr. Levy also was present and engaged in attacks on Dr. Auteri in various Medical Executive Committee meetings in 2020 and 2021 in which Dr. Levy on multiple occasions ridiculed and harassed Dr. Auteri for Dr. Auteri's medical study of the Covid-19 "Vaccine" and the harms associated with the "Vaccine."  Upon information and belief, Defendant has minutes of the Medical Executive Committee meetings which Dr. Auteri expects will be produced in discovery and which will provide additional information.

2.      James L. Brexler, President and CEO, Doylestown Health– witness to conduct of Scott Levy, M.D. as discussed above.  Mr. Brexler attended Defendant's Medical Executive Committee meetings and both engaged in and witnessed the conversations among Dr. Auteri, Dr. Levy, and other members of that Committee described above.  Upon information and belief, Defendant has minutes of the Medical Executive Committee meetings which Dr. Auteri expects will be produced in discovery and which will provide additional information.  Approximately two weeks before the Mandate deadline, Mr. Brexler spoke with Dr. Auteri in person and pressured Dr. Auteri to take the Covid-19 "Vaccine." Mr. Brexler told Dr. Auteri that once Dr. Auteri took the "Vaccine," Defendant would schedule a staff meeting and have Dr. Auteri speak with the 76 Doylestown Health nurses who refused to take the "Vaccine" so that Dr. Auteri could convince those nurses to also take the "Vaccine."  The specific date and time of Mr. Brexler's conversation with Dr. Auteri is not known to be memorialized at this time but the conversation occurred in the timeframe discussed herein.

3.      Barbara Hebel, Vice President and Chief Human Resources Officer– Dr. Auteri had multiple discussions with Ms. Hebel regarding Dr. Levy's conduct toward and harassment of Dr. Auteri as alleged in the Second Amended Complaint. Certain of those conversations are memorialized in the emails Dr. Auteri produced with Dr. Auteri's Response to Defendant's Request for Production of Documents.  Dr. Auteri had multiple discussions with Ms. Hebel regarding Dr. Auteri's retrieval of personal items in Dr. Auteri's office after Dr. Auteri's wrongful termination.  Some of the discussions are in emails produced with Dr. Auteri's Response to Defendant's Request for Production of Documents and some of those discussions are not memorialized but occurred after the date of Dr. Auteri's wrongful termination on November 18, 2021.

4.      Elinor Pernitsky, Director, Medical Staff Services – Ms. Pernitsky was involved in Defendants' internal discussions of the Mandate, in which Dr. Auteri also participated as discussed above.  Ms. Pernitsky attended meetings of the Medical Executive Committee and took notes of those meetings.  Upon information and belief, Defendant has minutes of the Medical Executive Committee meetings which Dr. Auteri expects will be produced in discovery and which will provide additional information.

5.    John B. Reiss, former Vice President, General Counsel, and Chief Compliance Officer of Doylestown Hospital – Mr. Reiss may have attended Medical Executive Committee meetings and if so, witnessed Dr. Levy's conduct discussed above.  If Mr. Reiss did attend those meetings, Mr. Reiss' attendance and potentially Mr. Reiss' involvement in those meetings may be reflected in the meeting minutes.

6.    William Kracht, D.O. – Dr. Kracht is the physician who certified that Covid-19 "vaccination" was not appropriate for Dr. Auteri.  Dr. Auteri objects to any further discovery from or related to Dr. Kracht as privileged and outside the scope of discovery as Dr. Auteri's request for a medical exemption and the discrimination related thereto is not at issue in the Second Amended Complaint.  Dr. Auteri produced Dr. Kracht's certification with Dr. Auteri's Response to Defendant's Request for Production of Documents without waiving any objections as to additional discovery from Dr. Kracht.

7.    Steve Guidera, Eleanor Wilson, John Mitchell, Ed Leonard, and Atul Rao – current/former employees of Defendant – Approximately 1 to 2 weeks before the original Mandate deadline in October 2021, Dr. Guidera stopped Dr. Auteri in the hall at Doylestown Hospital and asked to speak privately with Dr. Auteri about a case.  Dr. Guidera asked Dr. Auteri to speak with Dr. Guidera in the Joseph Auteri Family Conference Room.  Dr. Auteri stepped into that conference room and already present and seated in the room were Ms. Wilson, Mr. Mitchell, Dr. Leonard, and Dr. Rao.  Dr. Guidera entered the Auteri Conference Room with Dr. Auteri and took a seat.  The group asked Dr. Auteri to take a seat so that they could speak to Dr. Auteri.  Each member of the group then went around the room and spoke individually for 3-5 minutes.  Each member told Dr. Auteri how impressive Dr. Auteri and his work were, how important Dr. Auteri was to Doylestown Hospital, that it would be a massive loss to them as a group and Doylestown Health's programs if Dr. Auteri were no longer at Doylestown Health, and that Dr. Auteri should "stop this" and take the Covid-19 "Vaccine."  Ms. Wilson asked if Dr. Auteri would wear a mask and get tested and Dr. Auteri asked in response whether those who had taken the "Vaccine" would also wear a mask and be tested for Covid-19 antibodies.  Dr. Auteri stated that the Covid-19 "Vaccines" did not seem to be working, but that Dr. Auteri knew that Dr. Auteri was protected by Dr. Auteri's immune system.  Dr. Guidera told Dr. Auteri that Dr. Auteri should think of the heart programs at Doylestown Health and everyone else in the program, and to stop putting Dr. Auteri's interests first.  Dr. Auteri was shocked by the meeting and said very little outside of answering the group's questions as stated above.  Dr. Auteri concluded the meeting by stating that Dr. Auteri would think about what the group said and left the room.  To Dr. Auteri's knowledge, the meeting was not memorialized in writing or via a recording.

8.    Dr. Guidera – separate meeting post-termination on December 10, 2021 –– Dr. Auteri asked to meet with Dr. Guidera in an effort to mend fences as Dr. Auteri believed Dr. Guidera to a friend and advocate.  Dr. Guidera agreed to meet and the two met at a Starbuck's coffee location.  Dr. Guidera told Dr. Auteri that Dr.

Guidera thought that Dr. Auteri was going to say that Dr. Auteri had "come to his [Dr. Auteri's] senses" and decided to take the Covid-19 "Vaccine." Dr. Auteri stated that he had not done so but believed that Defendant should grant Dr. Auteri a religious exemption. Dr. Guidera appeared to Dr. Auteri to be surprised by Dr. Auteri's statement and Dr. Guidera responded by saying that "Joe [Dr. Auteri], you need to understand, we all think you're crazy... 'bat-shit crazy.'"

9.  Alex Gorsky, former Chief Executive Officer of Johnson & Johnson – On October 12, 2021, Mr. Gorsky called Dr. Auteri's cell phone. Mr. Gorsky stated that he had been informed that Dr. Auteri had not taken the Covid-19 "Vaccine." Dr. Auteri still is unaware as to how Mr. Gorsky was so informed, because Dr. Auteri did not discuss the issue with Mr. Gorsky prior to the October 12, 2021 conversation. Upon information and belief, an employee or affiliate of Defendant may have so notified Mr. Gorsky of Dr. Auteri's "vaccine status," which was protected health information and should not have been disclosed to a non-employee of Defendant without need to know. Dr. Auteri knew Mr. Gorsky from prior social and business dealings, as Mr. Gorsky was the co-chair of Doylestown Health's Capital Campaign Committee, so Dr. Auteri listened to what Mr. Gorsky had to say. Mr. Gorsky ultimately spoke with Dr. Auteri for approximately 45 minutes attempting to convince Dr. Auteri to take the "Vaccine," even offering to put Dr. Auteri on the phone with a virologist in Europe who helped to develop the "Vaccine." Dr. Auteri listened to what Mr. Gorsky said and could not believe that Mr. Gorsky was pushing so hard to have Dr. Auteri take the "Vaccine." Dr. Auteri declined Mr. Gorsky's offer to speak with the virologist, stating that such a conversation would not assist Dr. Auteri's thinking. Dr. Auteri did not trust that the virologist who developed the "Vaccine" would be forthcoming about adverse reactions and the lack of testing on the vaccine (such as lack of testing on pregnant females).

10. Pastor Joe Focht – Pastor Focht is the Head Pastor at Calvary Chapel of Philadelphia and Dr. Auteri's Pastor. Dr. Auteri had many conversations with Pastor Focht about Dr. Auteri's objections to the Covid-19 "vaccine" as a religious matter, particularly centered on Dr. Auteri's knowledge that Dr. Auteri's immune system as designed by God protected Dr. Auteri from further Covid-19 infection and as such a "vaccine" was unnecessary and possibly harmful. Dr. Auteri objects to any discovery from Pastor Focht under the clergy-penitent privilege (see General Objection No. 1, incorporated herein by reference), including discovery related to any privileged, personal/spiritual matters discussed between Pastor Focht and Dr. Auteri, but Pastor Focht had many discussions with Dr. Auteri about Dr. Auteri's sincere religious objections to the Covid-19 "Vaccine."

2.  Identify all damages and remedies sought by you in this case, including, but not limited to, economic and non-economic damages, explaining in detail how you calculated such damages and identifying all documents that relate to your claim for such damages.

**ANSWER:**

<u>Lost wages</u>

Calculated from October 18, 2021 (date of Defendant Doylestown Health's unlawful suspension without pay of Dr. Auteri) until November 4, 2024, the date on which Dr. Auteri commenced new, full time employment which restored Dr. Auteri to the same salary as in Dr. Auteri's Doylestown Health contract. Dr. Auteri worked on a "temporary" basis at reduced rates from the end of 2021 until August 7, 2023, the date on which Dr. Auteri secured full time employment at a reduced rate from Dr. Auteri's Doylestown Health contract, halfway across the country and away from Dr. Auteri's children, grandchildren, and other family members. The calculation below is further evidenced in the documents which Dr. Auteri produced with Dr. Auteri's Response to Defendant's Request for Production of Documents[1]:

2021: $410,088.00

2022: $1,142,594.00

2023: $851,007.00

2024: $250,000.00

Total lost wages: $2,653,689.00

<u>Compensatory Damages – Pecuniary Losses</u>

Includes COBRA expenses and lost Employment Agreement benefits including dental benefits, life and accident insurance, long term disability insurance, Continuing Medical Education allowance ($2,500.00/year for 2 years), licensing fees, lost paid time off (35 days per year for 1.5 years (2022 and 6 months of 2023) at $4109.00 per day), lost proceeds on sale of home ($240,000.00); moving expenses and related costs, including storage, for move out of home at time of sale. Total not less than $490,165.00.

---

[1] Damages will be updated during discovery, including for all attorney's fees which Dr. Auteri incurs as the instant litigation progresses.

Emotional Distress Damages

Dr. Auteri's emotional distress and pain and suffering due to Doylestown Health's unlawful conduct including being forced to sell Dr. Auteri's home and for a substantially reduced cost due to the exigency of Dr. Auteri's termination, forced travel away from Dr. Auteri's wife and family for extended periods to perform temporary work across the country, forced relocation halfway across the country and away from Dr. Auteri's children and grandchildren in order to secure permanent employment, reputational and professional damage: amount to be determined but in excess of $50,000.00.

Punitive damages

Statutory maximum based upon Defendant's intentional and knowingly harmful conduct.

Attorney's fees

Continuing to accrue but as of September 20, 2024, $71,315.00.

3.    Identify all computers, laptops, cell phones, smart phones and tablets either used by you or in your possession, from January 1, 2020, to the present date, including the years in which you used each device, whether you are still in possession of the device, and all phone numbers, carriers, and account holders associated with any cell phones, smart phones and tablets.

**ANSWER:** During Dr. Auteri's employment with Defendant, Defendant had a laptop (Dell) and a cellular telephone which Defendant provided. Dr. Auteri has both devices in his possession. Defendant has "locked" or terminated service to the laptop and Dr. Auteri has not accessed/cannot access the laptop. Dr. Auteri purchased a new cellular telephone on October 12, 2021 when Dr. Auteri was suspended without pay and Dr. Auteri's unlawful termination was imminent. Dr. Auteri has not taken any information off of the Defendant-issued telephone. Dr. Auteri transferred his cellular telephone number to the new phone in October 2021 and transferred personal photos from the Defendant-issued cellular telephone to the new cellular

telephone.  Both cellular telephones were "iPhones."  The iPhone which Dr. Auteri purchased in

2021 stopped working in October/November 2024 and Dr. Auteri purchased a new iPhone at that

time.  To Dr. Auteri's knowledge, no data was lost in the initiation of services on the new phone.

Dr. Auteri has a MacBook computer which Dr. Auteri uses for strictly personal purposes, such as

personal finances.  Dr. Auteri also has an iPad.  Dr. Auteri's telephone number associated with all

of the above cellular telephones was/is (267) 885-5500.


   4.  Identify all email and instant messenger addresses or accounts you used or
subscribed to during the time you were employed by Defendant.

**ANSWER:**  auteri@cvsurgery.net; jauteri@dh.org


   5.  Identify all individuals whom you believe have knowledge or information relating
in any way to the claims and/or allegations in the Second Amended Complaint, including the
individual's name, phone number, last known address, a detailed description of the facts known to
the individual, as well as their position of employment. To the extent the individual has already
been identified in Plaintiff's Rule 26 Disclosures, please supplement the Disclosures by including
a detailed description of the facts known to the individual, as well as their position of employment,
as required by F.R.C.P. 26(a)(1).

**ANSWER:**  See Answer to Interrogatory No. 1 above, incorporated herein by reference.  Dr.

Auteri cannot provide more detailed descriptions of the Doylestown Health-affiliated witnesses'

knowledge than those above and the descriptions of areas of knowledge Dr. Auteri provided in

Dr. Auteri's Initial Discovery Disclosures.  Dr. Auteri does not control those individuals'

appearance as witnesses and Dr. Auteri is not in contact with those individuals.  Dr. Auteri

intends to depose those Doylestown Health-affiliated individuals to obtain additional information

and those individuals' deposition testimony will supplement the instant Answer.


   6.  Identify any social networking Internet sites to which you belong or since January
1, 2020 belonged, or in which you otherwise participate or since January 1, 2020 participated,
including, but not limited to, Twitter (X), Snapchat, Instagram, Facebook, LinkedIn, Foursquare,
TikTok, and other Internet sites, and for each such social networking Internet site, identify your
account name or "handle", and identify any and all account activity by you, or by any other person
in connection with your account (e.g., another Facebook user posting on your "wall"), from the

beginning of your employment with Defendant through the present including, but not limited to, wall or other postings, uploads, pictures, videos, profiles, messages, check-ins, and any other information, communications or similar activities relating to your employment with Defendant, the termination of your employment at Defendant, the allegations in the Second Amended Complaint, or your efforts to obtain employment or other work since the termination of your employment with Defendant.

**ANSWER:** Dr. Auteri has a Facebook account under the name "Joseph Auteri." Dr. Auteri has

never posted on that account and to Dr. Auteri's knowledge no one has "posted" on Dr. Auteri's

"wall."

7.    Identify and describe each lawsuit and/or legal proceeding (criminal or civil) other than this case, in which you have either been a plaintiff or a defendant in any state or federal court or arbitral forum in the last ten years. Include in your description for each matter, the identity of the parties, court, jurisdiction and civil action number or criminal docket number, the attorneys representing each party and the date the suit began and ended, and summarize the allegations in the complaint, counterclaims and cross-claims, if any, and describe how the suit ended, i.e., settled, dismissed, etc.

**ANSWER:** Dr. Auteri was a defendant in a legal malpractice case during his employment with

Defendant. That case was tried to a jury trial and resulted in a defense verdict. Dr. Auteri does

not have any records about the case but upon information and belief, any such records are in the

possession, custody, and control of Defendant.

8.    Other than the Second Amended Complaint, identify and describe all administrative charges or complaints of wrongful termination, discrimination, retaliation and/or interference that you have filed or that have been filed on your behalf with any employer or any federal or state agency during the last ten years. Include in your description of each such charge or complaint the nature of your claims in the charge or complaint, the relevant dates of the charge or complaint, against whom your claims were brought, and how the charge or complaint was resolved.

**ANSWER:** None other than the administrative proceeding which is the basis of and identified

in the Second Amended Complaint.

9.    Identify each and every person, including, but not limited to, physicians, psychologists, psychiatrists, hospitals, institutions, therapists, groups or agencies, other than expert witnesses, whom you have consulted at any time from October 11, 2021 to the present, for medical, psychological, psychiatric or related treatment, diagnosis or counseling (including, but not limited to, treatment, diagnosis and/or counseling for emotional distress pain, suffering or humiliation, or any related conditions or symptoms), and for each such person or entity:

    (a)     state the date(s) the person or entity was consulted;

    (b)     state the purpose(s) of consulting with the person or entity;

    (c)     state any diagnosis(es) you received;

    (d)     describe any restrictions on your ability to work or engage in other activities that were communicated to you; and

    (e)     identify all documents relating to each consultation (including, but not limited to, any medications prescribed or taken by Plaintiff).

**ANSWER:** Objection. <u>See</u> General Objection No. 2, incorporated herein by reference. The Interrogatory is overly broad, unduly burdensome, and would require the production of medical records for generic medical care, including "wellness" care, not at issue in the Second Amended Complaint. Plaintiff objects to the production of medical information when no such claim is at issue in the Second Amended Complaint. Plaintiff's request for a medical exemption is not at issue in the Second Amended Complaint. Plaintiff produced the physician's certification for that medical exemption with Plaintiff's Response to Defendant's Requests for Production of Documents because that exemption is referenced in the Second Amended Complaint despite not being at issue. Plaintiff objects to any further discovery related to medical care and an exemption not at issue in the Second Amended Complaint. Plaintiff did not seek therapy, counseling, or medical treatment for the emotional distress which Plaintiff suffered as a result of Defendant's unlawful conduct as stated in the Second Amended Complaint.

    10.     Identify each and every person, including, but not limited to, physicians, psychologists, psychiatrists, hospitals, institutions, therapists, groups or agencies, other than expert witnesses, whom you have consulted at any time from January 1, 2020 to October 11, 2021, for medical, psychological, psychiatric or related treatment, diagnosis or counseling (including, but not limited to, treatment, diagnosis and/or counseling for emotional distress pain, suffering or humiliation, or any related conditions or symptoms), and for each such person or entity:

    (a)     state the date(s) the person or entity was consulted;

    (b)     state the purpose(s) of consulting with the person or entity;

    (c)     state any diagnosis(es) you received;

    (d)     describe any restrictions on your ability to work or engage in other activities that were communicated to you; and

      (e)     identify all documents relating to each consultation (including, but not limited to, any medications prescribed or taken by Plaintiff).

**ANSWER:** <u>See</u> Answer to Interrogatory No. 9 above, incorporated herein by reference.  By way

of further response, none.


      11.     Describe all attempts you made to obtain employment or other work, whether permanent or temporary, from October 11, 2021 through the present date and for each such attempt, state or identify the following:

      (a)     the date you first attempted to obtain employment or other work with or through the potential employer or other person or entity;

      (b)     all persons with whom you spoke or corresponded in your attempt to obtain employment or other work, including all persons with whom you had an interview;

      (c)     the response received from the potential employer or other person or entity, including whether you received a job offer or other offer of work;

      (d)     if you received a job offer or offer of other work, state the date of the offer, the amount of salary or compensation offered, all benefits offered, and identify all documents relating to the offer; and

      (e)     your response to the offer, and identify all documents relating to your response to the offer.

**ANSWER:**  Produced with Dr. Auteri's Response to Defendant's Request for Production of

Documents are documents evidencing the extensive efforts which Dr. Auteri made to obtain

alternate work after Defendant unlawfully terminated Dr. Auteri's employment, including

communications with employment agencies and other hospital systems, and Dr. Auteri's

responses to those communications.  Those documents are in a separate subfolder within the

ShareFile containing Dr. Auteri's document production.


      12.     Describe all offers, whether formal or informal, of permanent or temporary employment or other work that you received from October 11, 2021 through the present date and for each such offer, state or identify the following:

      (a)     the date you first received the offer, whether formal or informal, of employment or other work with or through the potential employer or other person or entity;

      (b)     all persons with whom you spoke or corresponded in connection with such offer of employment or other work, including all persons with whom you had an interview;

(c)      state the date of the offer, the amount of salary or compensation offered, all benefits offered, and identify all documents relating to the offer; and

(d)      your response to the offer, and identify all documents relating to your response to the offer.

**ANSWER:** <u>See</u> Answer to Interrogatory No. 11 above, incorporated herein by reference.

Certain of the hospitals at which Dr. Auteri performed work asked Dr. Auteri generally about Dr. Auteri's willingness to accept a full-time position. Dr. Auteri did not receive formal offers of employment from those hospitals. Dr. Auteri did engage in more formal discussions with OSF in Rockford, Illinois, but OSF would extend a formal offer only if Dr. Auteri agreed up front that Dr. Auteri would accept a position if offered. Dr. Auteri was exploring an employment opportunity in Pennsylvania at the time and when Dr. Auteri told OSF that Dr. Auteri also was exploring that opportunity "at home," OSF did not negotiate further and hired another physician. When that physician left OSF approximately one year later, Dr. Auteri had not yet secured a full time position, and OSF offered Dr. Auteri a full time position. Dr. Auteri did not want to move halfway across the country, away from Dr. Auteri's children and grandchild/ren, but the OSF offer was the first full-time offer which Dr. Auteri had received, the position was comparable to Dr. Auteri's prior position before Defendant's unlawful termination of Dr. Auteri's employment, and Dr. Auteri accepted the position. Dr. Auteri's contract with OSF is produced with Dr. Auteri's Response to Defendant's Request for Production of Documents. Dr. Auteri later accepted a contract to work for Capital Health in New Jersey and Pennsylvania. Dr. Auteri's Capital Health contract is produced with Dr. Auteri's Response to Defendant's Request for Production of Documents.

13.      Identify all employment agencies, consultants, counselors, or "headhunters" with whom you have had any contact from October 11, 2021 through the present, and for each, identify all documents relating to any contact to or from you with the agency, counselor, consultant or "headhunter," when and with whom the communication occurred, and any prospective employers about which you were informed.

**ANSWER:** <u>See</u> Answer to Interrogatory No. 11 above, incorporated herein by reference.

14.    Identify each and every person by whom you were employed or for whom you otherwise provided services for remuneration, on a temporary or permanent basis, from October 11, 2021 to the present date and for each such person also:

(a)    state whether you were employed by such person or provided services other than as an employee;

(b)    state the dates on which you were employed or otherwise provided services;

(c)    describe the position held and the services provided;

(d)    indicate the amount of all monetary compensation, benefits, consideration or remuneration you received in return for your services;

(e)    identify your supervisor; and

(f)    if applicable, state the reason(s) for the termination of your employment or other engagement.

**ANSWER:** <u>See</u> Answer to Interrogatory Nos. 11 and 12 above, incorporated herein by

reference.  By way of further response, <u>see</u> IRS 1099 and W-2 forms detailing the compensation

Dr. Auteri received from his employment following his unlawful termination by Defendant,

produced with Dr. Auteri's Response to Defendant's Request for Production of Documents.  IRS

1099 forms and/or W-2 forms for the year 2024 will not be issued/received until January 2025

and will be produced once received.

15.    Identify each person whom you intend or expect to call as an expert witness in the trial of this case and identify each expert witness' specialty; their qualifications to serve as an expert witness, including work experience, degrees earned and licenses and professional certifications obtained; all published articles, books, etc., authored or edited by the expert witness; the subject matters on which the expert witness will testify in this case; the facts about which the expert witness will testify; the substance of the opinions which the expert witness will offer and a complete summary of the specific grounds, including assumptions, for each such opinion; all learned treatises, texts and other publications upon which the expert witness will rely, use or refer to in giving their testimony; all written reports with respect to the substance of the facts and opinions as to which the expert witness is expected to testify; all documents upon which the expert testimony is based, or from which such testimony is derived; and state whether the expert witness has ever been a witness in any other lawsuit, and if so, for each lawsuit, state the parties' names, court name, case name and number of the suit, the issues involved, and the approximate date of all trial or deposition testimony.

**ANSWER:** At this time, Dr. Auteri has not determined whether he will call an expert witness to testify at trial.

16.    Describe your history of collecting unemployment compensation benefits, disability benefits (including, but not limited to, temporary, short-term or long-term disability benefits), and workers' compensation benefits from the termination of your employment with Defendant to the present date, including dates during which you were collecting unemployment compensation benefits, disability benefits or workers' compensation benefits, and the amount of the unemployment compensation benefits, disability benefits, or workers' compensation benefits collected during each time period.

**ANSWER:** None.

17.    Identify and describe any periods from the termination of your employment with Defendant through the present, during which you were unable to work due to any medical conditions and/or physical limitations. Include in your description the condition(s) or limitation(s) that interfered with your ability to work, whether you sought or received medical treatment and/or physical therapy for the medical condition(s) and/or physical limitation(s), and from whom you sought or received medical treatment and/or physical therapy including all physicians, psychologists, psychiatrists, hospitals, institutions, therapists, groups or agencies.

**ANSWER:** None.

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: _____

Kimberly L. Russell, Esquire
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA 19422
(610) 941-2541 (phone)
(610) 684-2026 (fax)
krussell@kaplaw.com

Attorneys for Plaintiff

**Dated:** 12/16/24

16995/1/11025545/2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No.  22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

## VERIFICATION

I, Joseph S. Auteri, M.D., declare under penalty of perjury that, to the best of my

knowledge and belief, the foregoing Answers to Interrogatories Numbers 1 through 17 are

correct.

_____
Joseph S. Auteri, M.D.

Dated: _12 - 16 - 2024_

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No.  22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Plaintiff's Answers to Defendant's First Set of Interrogatories" was caused to be sent via the email by the undersigned on the date stated below, to the addressees stated below, and at the addresses stated below:

Christopher D. Durham, Esquire
Elisabeth G. Bassani, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103
cddurham@duanemorris.com
ebassani@duanemorris.com
Attorneys for Defendant

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: _____
Kimberly L. Russell, Esquire
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
(610) 684-2026 (fax)
krussell@kaplaw.com

Attorneys for Plaintiff

**Dated:** 10/16/24

16995/1/11025545/2

# Exhibit B

| From: | Kimberly L Russell |
|---|---|
| To: | Durham, Christopher D.; Bassani, Elisabeth; Brown, Adam |
| Subject: | Auteri – Subpoena to Testify at a Deposition – Alex Gorsky [IMAN-IMAN_BB.FID667665] |
| Date: | Wednesday, February 5, 2025 1:54:21 PM |
| Attachments: | Subpoena to Testify at a Deposition - Alex Gorsky.pdf |

Good afternoon Chris, Liz, and Adam,

Attached is a Subpoena which I intend to issue for service today to Alex Gorsky for a deposition (no documents requested) in my office on February 12, 2025 beginning at 9:30a.m.  If you will be representing Mr. Gorsky and/or are able to accept service on Mr. Gorsky's behalf, please so advise me.  Thank you, and I will see you tomorrow.

Kim Russell


Kimberly L. Russell, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corporate Center
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422-0765
Direct dial: (610) 941-2541
Fax: (610) 684-2026
krussell@kaplaw.com
http://www.kaplaw.com



eldi@kaplaw.com

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | |
|---|---|
| Joseph S. Auteri, M.D. | ) |
| *Plaintiff* | ) |
| v. | ) |
| VIA Affiliates, | ) |
| d/b/a Doylestown Health Physicians | ) |
| *Defendant* | ) |

Civil Action No. 2:22-cv-03384

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Alex Gorsky

*(Name of person to whom this subpoena is directed)*

☒ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Kaplin Stewart Meloff Reiter & Stein, P.C., 910 Harvest Drive, Suite 200, Blue Bell, PA 19422 | Date and Time: | Wednesday, February 12, 2025 beginning at 9:30 a.m. |
|---|---|---|---|

The deposition will be recorded by this method:  Court Reporter

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  2/5/2025

CLERK OF COURT

OR

_____     _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Plaintiff
_____ , who issues or requests this subpoena, are:

Kimberly L. Russell, Esquire; Kaplin Stewart Meloff Reiter & Stein, P.C., 910 Harvest Drive, Suite 200, Blue Bell, PA 19422;
Email - krussell@kaplaw.com;  Telephone No. (610) 941-2541

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Exhibit C



1:02    5G

such as Zoom. I appreciate your effort to facilitate the service of the subpoena and deposition. My contact information is below in a separate message.

Kim Russell, (610)941-2541, krussell@kaplaw.com

Tuesday 12:15 PM

Hello again, Mr. Gorsky, we received confirmation this afternoon that the copy of the subpoena sent by certified mail to your New York address was delivered today. I am checking in to see whether you intend to appear for deposition tomorrow as scheduled or whether you would like to reschedule? I am happy to do so. Please let me know what dates are convenient for you in the next week or two.  Thank you.



iMessage

# Exhibit D

| From: | Durham, Christopher D. |
|---|---|
| To: | Kimberly L Russell |
| Cc: | Bassani, Elisabeth; Brown, Adam |
| Bcc: | Durham, Christopher D.; Manookian, Lisa D. |
| Subject: | Alex Gorsky |
| Date: | Tuesday, February 11, 2025 5:53:05 PM |

Kim:

Alex Gorsky reached out to me following his receipt of multiple communications from you today. He has engaged us to represent him in this matter. For the avoidance of doubt, Mr. Gorksy has <u>not</u> authorized us (or any other person) to accept service of any subpoena or other process in this matter on his behalf.

Mr. Gorsky relayed that you communicated the following to him:

> *Mr. Gorsky, we received confirmation this afternoon that the copy of the subpoena sent by certified mail to your New York address was delivered today. I am checking in to see whether you intend to appear for deposition tomorrow as scheduled or whether you would like to reschedule? I am happy to do so. Please let me know what dates are convenient for you in the next week or two. Thank you.*

As an initial matter, please provide all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced above, including a copy of all documents and other items delivered.

Please be advised that Mr. Gorsky will not be appearing for a deposition tomorrow, or at any other time unless he is ordered to do so by the Court.

The subpoena is procedurally defective and otherwise subject to being quashed pursuant to Rule 45(d)(3), or Mr. Gorsky's proposed deposition prohibited by a protective order pursuant to Rule 26(c), for several reasons including, but not limited to:

1. Service is/was defective and not in compliance with Rule 45. The subpoena was not personally served on Mr. Gorsky. And, even if service by mail (to some address associated with Mr. Gorsky or otherwise) was permitted by Rule 45, it was not delivered to Mr. Gorsky himself (or even his permanent/primary residence). (We await the documentation requested above to ascertain where the subpoena was actually delivered by mail, and whether it is defective in additional respects under Rule 45.) Notably, as of when I write this email, Mr. Gorsky has not even seen the subpoena you have purported to have "delivered."

2. The time for compliance in the subpoena is unreasonable. The subpoena (based on the copy you sent us last week) purports to require Mr. Gorsky to appear for a deposition <u>tomorrow</u>, one day after it was "delivered" by mail. While we understand you are proposing dates in the future, you cannot cure unreasonable notice on the face of the subpoena by simply offering to reschedule (and your offer to reschedule the deposition in your communication to Mr. Gorsky today itself is a tacit acknowledgement that the time for compliance is unreasonable).

Plaintiff had ample opportunity to timely attempt to serve Mr. Gorsky with a subpoena as evidenced by, among other things, Plaintiff's identification of Mr. Gorsky in his Answers to Defendant's First Set of Interrogatories dated *December 16, 2024*, i.e., almost three months ago. Plaintiff failed to do so.

3. Relatedly, Plaintiff is not entitled to conduct fact discovery after the fact discovery deadline in this case, i.e. tomorrow, February 12, 2025, as set forth in the Court's October 10, 2024 Scheduling Order. Given that Rule 45 requires that a party served with a subpoena be given a reasonable time to comply, and courts have been clear that a <u>minimum</u> of 7 days (and, more typically, 14 days) is required to meet this reasonableness standard, the subpoena necessarily is seeking this third party discovery after the fact discovery deadline. As such, the subpoena is barred by the Court's Scheduling Order.

4. Finally, as discussed previously, Plaintiff's asserted need for Mr. Gorsky's deposition is not proportional to the needs of the case. Plaintiff testified to his sole conversation with Mr. Gorsky, and Plaintiff did not allege in the Second Amended Complaint that Mr. Gorsky was employed by Doylestown Health or involved in any way in the decisions/actions of Doylestown Health that Plaintiff alleges are unlawful. Here, on the eve of the fact discovery deadline, there is no evidence of record to suggest otherwise. On the other hand, Mr. Gorsky is a prominent, well-respected figure in the community and a well-known significant donor to the Doylestown Foundation, and based on Plaintiff's spurious and speculative assertion that Mr. Gorsky was attempting to "bribe" him, it is clear that the purpose of seeking his testimony at a minimum constitutes annoyance and/or embarrassment entitling Mr. Gorsky to a protective order under Rule 26(c).

Chris



**Christopher D. Durham**
Partner

Duane Morris LLP          **P:** +1 215 979 1510
30 South 17th Street      **F:** +1 215 689 4915
Philadelphia, PA 19103-4196   **C:** +1 215 837 2764

E-MAIL | BIO | VCARD

Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

# Exhibit E

| From: | Kimberly L Russell |
|---|---|
| To: | Durham, Christopher D. |
| Cc: | Bassani, Elisabeth; Brown, Adam |
| Subject: | Re: Alex Gorsky |
| Date: | Tuesday, February 11, 2025 6:11:23 PM |

Chris,

Thank you for letting me know  about tomorrow's deposition and for confirming that you now represent Mr. Gorsky.   Please provide me with alternate dates for Mr. Gorsky's deposition.  Thank you.

Kim Russell

Kimberly L. Russell, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
(610) 941-2541
Krussell@kaplaw.com
http://www.kaplaw.com
For more information, visit www.ELDI.legal

Get Outlook for iOS

**From:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Sent:** Tuesday, February 11, 2025 5:53:06 PM
**To:** Kimberly L Russell <krussell@kaplaw.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** Alex Gorsky

Kim:

Alex Gorsky reached out to me following his receipt of multiple communications from you today.  He has engaged us to represent him in this matter.  For the avoidance of doubt, Mr. Gorksy has not authorized us (or any other person) to accept service of any subpoena or other process in this matter on his behalf.

Mr. Gorsky relayed that you communicated the following to him:

*Mr. Gorsky, we received confirmation this afternoon that the copy of the subpoena sent by certified mail to your New York address was delivered today. I am checking in to see whether you intend to appear for deposition tomorrow as scheduled or whether you would like to reschedule? I am happy to do so. Please let me know what dates are convenient for you in the*

*next week or two.  Thank you.*

As an initial matter, please provide all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced above, including a copy of all documents and other items delivered.

Please be advised that Mr. Gorsky will not be appearing for a deposition tomorrow, or at any other time unless he is ordered to do so by the Court.

The subpoena is procedurally defective and otherwise subject to being quashed pursuant to Rule 45(d)(3), or Mr. Gorsky's proposed deposition prohibited by a protective order pursuant to Rule 26(c), for several reasons including, but not limited to:

1. Service is/was defective and not in compliance with Rule 45.  The subpoena was not personally served on Mr. Gorsky.  And, even if service by mail (to some address associated with Mr. Gorsky or otherwise) was permitted by Rule 45, it was not delivered to Mr. Gorsky himself (or even his permanent/primary residence).  (We await the documentation requested above to ascertain where the subpoena was actually delivered by mail, and whether it is defective in additional respects under Rule 45.)  Notably, as of when I write this email, Mr. Gorsky has not even seen the subpoena you have purported to have "delivered."

2. The time for compliance in the subpoena is unreasonable.  The subpoena (based on the copy you sent us last week) purports to require Mr. Gorsky to appear for a deposition <u>tomorrow</u>, one day after it was "delivered" by mail.  While we understand you are proposing dates in the future, you cannot cure unreasonable notice on the face of the subpoena by simply offering to reschedule (and your offer to reschedule the deposition in your communication to Mr. Gorsky today itself is a tacit acknowledgement that the time for compliance is unreasonable).  Plaintiff had ample opportunity to timely attempt to serve Mr. Gorsky with a subpoena as evidenced by, among other things, Plaintiff's identification of Mr. Gorsky in his Answers to Defendant's First Set of Interrogatories dated *December 16, 2024*, i.e., almost three months ago.  Plaintiff failed to do so.

3. Relatedly, Plaintiff is not entitled to conduct fact discovery after the fact discovery deadline in this case, i.e. tomorrow, February 12, 2025, as set forth in the Court's October 10, 2024 Scheduling Order.  Given that Rule 45 requires that a party served with a subpoena be given a reasonable time to comply, and courts have been clear that a <u>minimum</u> of 7 days (and, more typically, 14 days) is required to meet this reasonableness standard, the subpoena necessarily is seeking this third party discovery after the fact discovery deadline.  As such, the subpoena is barred by the Court's Scheduling Order.

4. Finally, as discussed previously, Plaintiff's asserted need for Mr. Gorsky's deposition is not proportional to the needs of the case.  Plaintiff testified to his sole conversation with Mr. Gorsky, and Plaintiff did not allege in the Second Amended Complaint that Mr. Gorsky was employed by Doylestown Health or involved in any way in the decisions/actions of Doylestown Health that Plaintiff alleges are unlawful.  Here, on the eve of the fact discovery deadline, there is no evidence of record to suggest otherwise.  On the other hand, Mr. Gorsky is a prominent, well-

respected figure in the community and a well-known significant donor to the Doylestown Foundation, and based on Plaintiff's spurious and speculative assertion that Mr. Gorsky was attempting to "bribe" him, it is clear that the purpose of seeking his testimony at a minimum constitutes annoyance and/or embarrassment entitling Mr. Gorsky to a protective order under Rule 26(c).

Chris



Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

# Exhibit F

| | |
|---|---|
| **From:** | Durham, Christopher D. |
| **To:** | Kimberly L Russell |
| **Cc:** | Bassani, Elisabeth; Brown, Adam |
| **Bcc:** | Manookian, Lisa D.; Durham, Christopher D. (CDDurham@duanemorris.com) |
| **Subject:** | RE: Alex Gorsky |
| **Date:** | Wednesday, February 12, 2025 4:15:48 PM |

Kim:

Please see my email of yesterday, which addresses your request, and includes my request for all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced in your text communication to Mr. Gorsky, including a copy of all documents and other items delivered.

Thanks.

Chris

**Christopher D. Durham**
Partner

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
**P:** +1 215 979 1510
**F:** +1 215 689 4915
**C:** +1 215 837 2764

cddurham@duanemorris.com
www.duanemorris.com

Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

**From:** Kimberly L Russell <krussell@kaplaw.com>
**Sent:** Tuesday, February 11, 2025 6:11 PM
**To:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** Re: Alex Gorsky

─────────

Chris,

Thank you for letting me know  about tomorrow's deposition and for confirming that you now represent Mr. Gorsky.   Please provide me with alternate dates for Mr. Gorsky's deposition.  Thank you.

Kim Russell

Kimberly L. Russell, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
(610) 941-2541
Krussell@kaplaw.com
http://www.kaplaw.com
For more information, visit www.ELDI.legal

Get Outlook for iOS

---

**From:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Sent:** Tuesday, February 11, 2025 5:53:06 PM
**To:** Kimberly L Russell <krussell@kaplaw.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** Alex Gorsky

Kim:

Alex Gorsky reached out to me following his receipt of multiple communications from you today. He has engaged us to represent him in this matter. For the avoidance of doubt, Mr. Gorksy has <u>not</u> authorized us (or any other person) to accept service of any subpoena or other process in this matter on his behalf.

Mr. Gorsky relayed that you communicated the following to him:

> *Mr. Gorsky, we received confirmation this afternoon that the copy of the subpoena sent by certified mail to your New York address was delivered today. I am checking in to see whether you intend to appear for deposition tomorrow as scheduled or whether you would like to reschedule? I am happy to do so. Please let me know what dates are convenient for you in the next week or two. Thank you.*

As an initial matter, please provide all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced above, including a copy of all documents and other items delivered.

Please be advised that Mr. Gorsky will not be appearing for a deposition tomorrow, or at any other

time unless he is ordered to do so by the Court.

The subpoena is procedurally defective and otherwise subject to being quashed pursuant to Rule 45(d)(3), or Mr. Gorsky's proposed deposition prohibited by a protective order pursuant to Rule 26(c), for several reasons including, but not limited to:

1. Service is/was defective and not in compliance with Rule 45. The subpoena was not personally served on Mr. Gorsky. And, even if service by mail (to some address associated with Mr. Gorsky or otherwise) was permitted by Rule 45, it was not delivered to Mr. Gorsky himself (or even his permanent/primary residence). (We await the documentation requested above to ascertain where the subpoena was actually delivered by mail, and whether it is defective in additional respects under Rule 45.) Notably, as of when I write this email, Mr. Gorsky has not even seen the subpoena you have purported to have "delivered."

2. The time for compliance in the subpoena is unreasonable. The subpoena (based on the copy you sent us last week) purports to require Mr. Gorsky to appear for a deposition <u>tomorrow</u>, one day after it was "delivered" by mail. While we understand you are proposing dates in the future, you cannot cure unreasonable notice on the face of the subpoena by simply offering to reschedule (and your offer to reschedule the deposition in your communication to Mr. Gorsky today itself is a tacit acknowledgement that the time for compliance is unreasonable). Plaintiff had ample opportunity to timely attempt to serve Mr. Gorsky with a subpoena as evidenced by, among other things, Plaintiff's identification of Mr. Gorsky in his Answers to Defendant's First Set of Interrogatories dated *December 16, 2024*, i.e., almost three months ago. Plaintiff failed to do so.

3. Relatedly, Plaintiff is not entitled to conduct fact discovery after the fact discovery deadline in this case, i.e. tomorrow, February 12, 2025, as set forth in the Court's October 10, 2024 Scheduling Order. Given that Rule 45 requires that a party served with a subpoena be given a reasonable time to comply, and courts have been clear that a <u>minimum</u> of 7 days (and, more typically, 14 days) is required to meet this reasonableness standard, the subpoena necessarily is seeking this third party discovery after the fact discovery deadline. As such, the subpoena is barred by the Court's Scheduling Order.

4. Finally, as discussed previously, Plaintiff's asserted need for Mr. Gorsky's deposition is not proportional to the needs of the case. Plaintiff testified to his sole conversation with Mr. Gorsky, and Plaintiff did not allege in the Second Amended Complaint that Mr. Gorsky was employed by Doylestown Health or involved in any way in the decisions/actions of Doylestown Health that Plaintiff alleges are unlawful. Here, on the eve of the fact discovery deadline, there is no evidence of record to suggest otherwise. On the other hand, Mr. Gorsky is a prominent, well-respected figure in the community and a well-known significant donor to the Doylestown Foundation, and based on Plaintiff's spurious and speculative assertion that Mr. Gorsky was attempting to "bribe" him, it is clear that the purpose of seeking his testimony at a minimum constitutes annoyance and/or embarrassment entitling Mr. Gorsky to a protective order under Rule 26(c).

Chris



Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

# Exhibit G

| | |
|---|---|
| **From:** | Kimberly L Russell |
| **To:** | Durham, Christopher D. |
| **Cc:** | Bassani, Elisabeth; Brown, Adam |
| **Subject:** | RE: Alex Gorsky [IMAN-IMAN_BB.FID667665] |
| **Date:** | Wednesday, February 12, 2025 4:57:05 PM |

Chris,

Thank you for your message. The subpoena is moot now that you represent Mr. Gorsky, but Plaintiff also made service. We will send the green card once received. Because we served Mr. Gorsky before the deadline as you referenced in a prior email, I expect that Mr. Gorsky will appear and we will select a mutually agreeable date.

I am proposing 2/26 for a remote deposition; please confirm and I will issue the notice. Absent receiving a date, Plaintiff reserves his right to compel Mr. Gorsky's deposition.

Mr. Gorsky will be on Dr. Auteri's witness list for trial, and I will not subpoena Mr. Gorsky based upon your notice of representation.

Thank you.

Kim Russell

Kimberly L. Russell, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corporate Center
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422-0765
Direct dial: (610) 941-2541
Fax: (610) 684-2026
krussell@kaplaw.com
http://www.kaplaw.com



eldi@kaplaw.com

**From:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Sent:** Wednesday, February 12, 2025 4:16 PM
**To:** Kimberly L Russell <krussell@kaplaw.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** RE: Alex Gorsky

Kim:

Please see my email of yesterday, which addresses your request, and includes my request for all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced in your text communication to Mr. Gorsky, including a copy of all documents and other items delivered.

Thanks.

Chris

**Christopher D. Durham**
Partner

Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196
**P:** +1 215 979 1510
**F:** +1 215 689 4915
**C:** +1 215 837 2764

cddurham@duanemorris.com
www.duanemorris.com

Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

**From:** Kimberly L Russell <krussell@kaplaw.com>
**Sent:** Tuesday, February 11, 2025 6:11 PM
**To:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** Re: Alex Gorsky

Chris,

Thank you for letting me know  about tomorrow's deposition and for confirming that you now represent Mr. Gorsky.   Please provide me with alternate dates for Mr. Gorsky's deposition.  Thank you.

Kim Russell

Kimberly L. Russell, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
(610) 941-2541
Krussell@kaplaw.com
http://www.kaplaw.com
For more information, visit www.ELDI.legal

Get Outlook for iOS

---

**From:** Durham, Christopher D. <CDDurham@duanemorris.com>
**Sent:** Tuesday, February 11, 2025 5:53:06 PM
**To:** Kimberly L Russell <krussell@kaplaw.com>
**Cc:** Bassani, Elisabeth <EBassani@duanemorris.com>; Brown, Adam <ADBrown@duanemorris.com>
**Subject:** Alex Gorsky

Kim:

Alex Gorsky reached out to me following his receipt of multiple communications from you today. He has engaged us to represent him in this matter. For the avoidance of doubt, Mr. Gorksy has <u>not</u> authorized us (or any other person) to accept service of any subpoena or other process in this matter on his behalf.

Mr. Gorsky relayed that you communicated the following to him:

> *Mr. Gorsky, we received confirmation this afternoon that the copy of the subpoena sent by certified mail to your New York address was delivered today. I am checking in to see whether you intend to appear for deposition tomorrow as scheduled or whether you would like to reschedule? I am happy to do so. Please let me know what dates are convenient for you in the next week or two. Thank you.*

As an initial matter, please provide all documentation reflecting the alleged "delivery" of the "copy" of the subpoena by certified mail to the "New York address" referenced above, including a copy of all documents and other items delivered.

Please be advised that Mr. Gorsky will not be appearing for a deposition tomorrow, or at any other time unless he is ordered to do so by the Court.

The subpoena is procedurally defective and otherwise subject to being quashed pursuant to Rule 45(d)(3), or Mr. Gorsky's proposed deposition prohibited by a protective order pursuant to Rule 26(c), for several reasons including, but not limited to:

1. Service is/was defective and not in compliance with Rule 45.  The subpoena was not personally served on Mr. Gorsky.  And, even if service by mail (to some address associated with Mr. Gorsky or otherwise) was permitted by Rule 45, it was not delivered to Mr. Gorsky himself (or even his permanent/primary residence).  (We await the documentation requested above to ascertain where the subpoena was actually delivered by mail, and whether it is defective in additional respects under Rule 45.)  Notably, as of when I write this email, Mr. Gorsky has not even seen the subpoena you have purported to have "delivered."

2. The time for compliance in the subpoena is unreasonable.  The subpoena (based on the copy you sent us last week) purports to require Mr. Gorsky to appear for a deposition <u>tomorrow</u>, one day after it was "delivered" by mail.  While we understand you are proposing dates in the future, you cannot cure unreasonable notice on the face of the subpoena by simply offering to reschedule (and your offer to reschedule the deposition in your communication to Mr. Gorsky today itself is a tacit acknowledgement that the time for compliance is unreasonable).  Plaintiff had ample opportunity to timely attempt to serve Mr. Gorsky with a subpoena as evidenced by, among other things, Plaintiff's identification of Mr. Gorsky in his Answers to Defendant's First Set of Interrogatories dated *December 16, 2024*, i.e., almost three months ago.  Plaintiff failed to do so.

3. Relatedly, Plaintiff is not entitled to conduct fact discovery after the fact discovery deadline in this case, i.e. tomorrow, February 12, 2025, as set forth in the Court's October 10, 2024 Scheduling Order.  Given that Rule 45 requires that a party served with a subpoena be given a reasonable time to comply, and courts have been clear that a <u>minimum</u> of 7 days (and, more typically, 14 days) is required to meet this reasonableness standard, the subpoena necessarily is seeking this third party discovery after the fact discovery deadline.  As such, the subpoena is barred by the Court's Scheduling Order.

4. Finally, as discussed previously, Plaintiff's asserted need for Mr. Gorsky's deposition is not proportional to the needs of the case.  Plaintiff testified to his sole conversation with Mr. Gorsky, and Plaintiff did not allege in the Second Amended Complaint that Mr. Gorsky was employed by Doylestown Health or involved in any way in the decisions/actions of Doylestown Health that Plaintiff alleges are unlawful.  Here, on the eve of the fact discovery deadline, there is no evidence of record to suggest otherwise.  On the other hand, Mr. Gorsky is a prominent, well-respected figure in the community and a well-known significant donor to the Doylestown Foundation, and based on Plaintiff's spurious and speculative assertion that Mr. Gorsky was attempting to "bribe" him, it is clear that the purpose of seeking his testimony at a minimum constitutes annoyance and/or embarrassment entitling Mr. Gorsky to a protective order under Rule 26(c).

Chris



Visit www.duanemorrisinstitute.com for information on training on employment, labor, benefits and immigration.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.