**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No.  22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | JURY TRIAL DEMANDED |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

## ORDER

  **AND NOW**, this _____ day of _____, 2025, upon consideration of the Motion of
Non-Party Alex Gorsky to Quash Subpoena and for a Protective Order and Plaintiff's response
thereto, it is hereby **ORDERED** that:

  1.  the Motion is **DENIED**;

  2.  Mr. Gorsky shall appear for a remote deposition on a mutually agreeable date to
occur within ten (10) days of the date of this Order; and

  3.  the transcript of the deposition shall be marked "Confidential" and treated as such
in accordance with the terms of this Court's prior Confidentiality Order in the above matter.

**BY THE COURT:**

_____
        R. Barclay Surrick, J.

16995/1/11193419/1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH S. AUTERI, M.D. | : | |
| Plaintiff, | : | No.  22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| VIA AFFILIATES, d/b/a | : | JURY TRIAL DEMANDED |
| DOYLESTOWN HEALTH | : | |
| PHYSICIANS | : | |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE TO THE MOTION OF NON-PARTY ALEX GORSKY TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

Plaintiff, by his undersigned counsel, hereby responds to the Motion of Non-Party Alex

Gorsky to Quash Subpoena and for a Protective Order and requests that the Motion be denied for

the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, P.C.

By: _____
Kimberly L. Russell, Esquire
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
(610) 684-2026 (fax)
krussell@kaplaw.com

Attorneys for Plaintiff

**Dated:**  February 28, 2025

16995/1/11193419/1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | | |
| Plaintiff, | : | No.  22-cv-03384 | |
| | : | | |
| v. | : | | |
| | : | | |
| **VIA AFFILIATES, d/b/a** | : | JURY TRIAL DEMANDED | |
| **DOYLESTOWN HEALTH** | : | | |
| **PHYSICIANS** | : | | |
| Defendant. | : | | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE RESPONSE TO THE MOTION OF NON-PARTY ALEX GORSKY TO QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

Plaintiff Joseph S. Auteri, M.D., (**"Dr. Auteri"**) respectfully submits this Memorandum of Law in opposition to Defendant VIA Affiliates, d/b/a Doylestown Health Physicians' (**"Defendant"**) "Motion to Quash Subpoena issued to Non-Party Alex Gorsky and for a Protective Order" regarding the same (the **"Motion"**).

## I.    INTRODUCTION AND FACTUAL BACKGROUND

On or about August 28, 2024, Dr. Auteri filed a complaint alleging that Defendant's denial of Dr. Auteri's requests for religious and medical accommodations violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (**"Title VII"**).  See **Exhibit A**, which is attached hereto, a copy of the Amended Complaint.  By a Scheduling Order of the Court dated October 10, 2024, all fact discovery was to be completed no later than February 12, 2025.  Trial is scheduled for July 21, 2025.  See **Exhibit B**, which is attached hereto, a copy of the Scheduling Order.

On or about December 18, 2024, Defendant's counsel sent an email asking to schedule Dr. Auteri's deposition for January 22, 23, or 24, 2025.  See **Exhibit C**, which is attached hereto, a copy of the December 2024 emails.  The next day, Defendant's counsel sent an email changing the proposed dates for Dr. Auteri's deposition to January 22, 30, and 31, 2025.  See **Exhibit C**.  By

email dated December 20, 2024, Defendant's counsel stated that Dr. Auteri's deposition must occur before any of Defendant's witnesses could be deposed.  See **<u>Exhibit C</u>**.  In that December 20, 2024 email, Defendant's counsel wrote, "<u>[w]e intend to take Dr. Auteri's deposition before the other depositions.  If we end up pushing against the fact discovery deadline as a result, we will agree to depositions after the deadline</u>" (emphasis added).  See **<u>Exhibit C</u>**.

Dr. Auteri's deposition occurred on Defendant's selected date, January 31, 2025.  During Dr. Auteri's deposition, Defendant's counsel fully questioned Dr. Auteri about any conversations or discussions Dr. Auteri had with Alex Gorsky regarding Dr. Auteri's refusal to take the COVID-19 vaccine.  As Defendant indicates in the Motion, Mr. Gorsky is a non-party in this matter.  Mr. Gorsky is the former CEO of Johnson & Johnson pharmaceutical company, a major manufacturer of one of the COVID-19 vaccines.  Mr. Gorsky held that position at the time that Defendant issued the Covid-19 vaccine Mandate at issue in the instant litigation.  Defendant's representatives testified during depositions that Mr. Gorsky has been and continues to be a prominent and significant donor to and participant in fundraising for Defendant's endeavors.

Because Defendant's counsel demanded that Dr. Auteri's deposition occur before Defendant's witnesses' depositions occurred, and because Defendant's counsel was not available to depose Dr. Auteri until January 31, 2025, Dr. Auteri was unable to depose Defendant's witnesses until the following dates: February 7, 10, 11, 13, and 17, 2025 (two of which depositions occurred after the February 12, 2025 discovery deadline).  During multiple depositions of Defendant's witnesses, there was significant testimony regarding Defendant's consultation with Mr. Gorsky regarding the COVID-19 vaccine and Mr. Gorsky's participation and influence regarding Dr. Auteri's repeatedly expressed opinions as a member of the Defendant's Medical Executive Committee (**"MEC"**) regarding Dr. Auteri's concerns about the safety of the COVID-19 vaccine.

As discussed in further detail below, when the undersigned asked several of Defendant's witnesses during deposition what Mr. Gorsky said to Dr. Auteri, the response was generally the same. Each defense witness stated that Mr. Gorsky would have to answer that question. When the undersigned asked several of Defendant's witnesses what Mr. Gorsky meant by particular wording or phrases Mr. Gorsky used in conversation with Dr. Auteri, each defense witness stated that Mr. Gorsky would have to answer that question. When the undersigned asked whether Mr. Gorsky had similar conversations with other members of Defendant's staff who requested exemptions to the Covid-19 vaccine mandate, Defendant's witnesses stated that Mr. Gorsky would have to answer that question.

It was based upon the testimony elicited by Defendant's counsel during Dr. Auteri's deposition and Dr. Auteri's inability to wait until after Defendant's witnesses were deposed that the undersigned decided that Dr. Auteri would need to depose Mr. Gorsky. Given that the fact discovery deadline was February 12, 2025, Dr. Auteri decided on or about February 5, 2025 to issue a deposition subpoena on Mr. Gorsky. On February 5, 2025, Dr. Auteri sent a copy of the subpoena to Defendant's counsel and asked whether Defendant's counsel would represent Mr. Gorsky or accept service of the subpoena. See **Exhibit D**, attached hereto, a copy of Dr. Auteri's counsel's February 5, 2025 email. That same day, Defendant's counsel stated that Defendant's counsel did not represent Mr. Gorsky, so Dr. Auteri proceeded with service of the subpoena. See **Exhibit E**, attached hereto, Defendant's counsel's February 5, 2025 email denying representation of Mr. Gorsky. On February 6, 2025, Dr. Auteri's counsel sent a process server to effect personal service at Mr. Gorsky's Pennsylvania home. On that date, the home appeared to be unoccupied, as there were planters with holiday decorations located outside of the home and no other signs of activity. The process server waited for an extended time into the evening and no one returned to

the home.[1]  Dr. Auteri's counsel engaged the services of a private company to conduct a public skip trace report, which report revealed addresses for Mr. Gorsky in New York City, New York and Freemont, Michigan.[2]  Dr. Auteri's counsel sent the February 5, 2025  subpoena to Mr. Gorsky at each out of state address via certified mail on February 7, 2025.  See **Exhibit F**, which is attached hereto, a copy of the two letters (addresses redacted) enclosing a subpoena to Mr. Gorsky.  Those letters commanded Mr. Gorsky's appearance at a deposition on Wednesday, February 12, 2025 (the fact discovery deadline), at the law offices of Kaplin Stewart Meloff Reiter & Stein, P.C., located at 910 Harvest Drive, Suite 200, Blue Bell, PA 19422 at 9:30 a.m.

On February 11, 2025, the undersigned as Dr. Auteri's counsel sent Mr. Gorsky a text message identifying herself as counsel for Dr. Auteri in a suit against Defendant.  The public skip trace report  listed a mobile telephone number for Mr. Gorsky, and the undersigned sent the text message in a further effort to provide notice of the subpoena.[3]  The text further informed Mr. Gorsky that a deposition subpoena had been issued and inquired if Mr. Gorsky had legal representation.  The text also stated that the deposition could be conducted remotely, and Mr. Gorsky was provided with the undersigned's contact information.  In a subsequent text message on the same day, the undersigned notified Mr. Gorsky that the subpoena had been delivered to Mr. Gorsky's New York address, asked Mr. Gorsky to facilitate the scheduling of the deposition, and offered to reschedule to a convenient date.  Mr. Gorsky read that text message on the same day, February 11, 2025, as indicated in the attached screenshot of the text messages.   See **Exhibit G**, which is attached hereto, a copy of the text messages.

---

[1] The process server documented his service attempt, including taking pictures evidencing the service attempt.  Dr. Auteri will not attach those pictures in order to protect Mr. Gorsky's privacy but those pictures will be supplied upon request of the Court.

[2] The specific addresses are omitted from this public filing to protect Mr. Gorsky's privacy but will be supplied upon request of the Court.

[3] That mobile telephone number is omitted from this public filing to protect Mr. Gorsky's privacy but will be supplied upon request of the Court.

After Mr. Gorsky received those text messages and on that same date, February 11, 2025, Defendant's counsel sent the undersigned an email stating that Defendant's counsel now represented Mr. Gorsky, but that Defendant's counsel was not authorized to accept service on Mr. Gorsky's behalf, and further, that Mr. Gorsky would not appear for the deposition the next day or any day without an order from a Court enforcing the subpoena. See **Exhibit H**, which is attached hereto, a copy of the February 11, 2025 email. In response, the undersigned replied, "Thank you for letting me know about tomorrow's deposition and for confirming you now represent Mr. Gorsky. Please provide me with alternate dates for Mr. Gorsky's deposition." See **Exhibit I**, which is attached hereto, a copy of the undersigned's response.

On February 14, 2025, Dr. Auteri's counsel received the signed green card from the certified mail sent to the New York address acknowledging receipt, along with the date stamped Certified Mail Receipt for the same. See **Exhibit J**, which is attached hereto, a copy of the signed green card and receipt (address redacted). Dr. Auteri's counsel sent a copy of the green card to Defendant's counsel and again requested deposition dates. See **Exhibit K**, which is attached hereto, a copy of Defendant's counsel's February 14, 2025 email attaching the green card.

This motion to quash followed approximately ninety (90) minutes after Dr. Auteri's counsel forwarded the green card.

## LEGAL ARGUMENT

## I.    SERVICE OF THE SUBPOENA BY CERTIFIED MAIL WAS PROPER.

Federal Rule of Civil Procedure 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. Contrary to Defendant's assertion that "When a party seeks the deposition of a nonparty by way of subpoena, "[p]ersonal service is required" (see Defendant's brief, p. 7), Courts in the Third Circuit and other

Circuits have recognized that certified mail, independently or in conjunction with other manners of service, may, under some circumstances, satisfy the service requirements of Fed. R. Civ. P. 45. See, e.g., New Jersey Bldg. Laborers' Statewide Benefit Funds v. Torchio Bros., 2009 U.S. Dist. LEXIS 10267, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009) ("Certified mail serves the same purpose as Rule 45(b) which is to 'mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'" (citation omitted)); Halawani v. Wolfenbarger, 2008 U.S. Dist. LEXIS 100482, 2008 WL 5188813, at *3 (E.D. Mich. Dec. 10, 2008) (recognizing that service of a subpoena by certified mail "may assure proper delivery" for purposes of Fed. R. Civ. P. 45); Cartier v. Geneve Collections, Inc., 2008 U.S. Dist. LEXIS 14714, 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008) (recognizing that alternative forms of service may be permissible under Rule 45 "if [the service] is designed to reasonably ensure the actual receipt of the subpoena by the witness"); Hall v. Sullivan, 229 F.R.D. 501, 506 (D. Md. 2005) (finding "no reason to require in-hand delivery of subpoenas [duces tecum]—so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness")." See also footnote 5 in Alfamodes Logistics LLC v. Catalent Pharma Solutions, LLC, 2011 U.S. Dist. LEXIS 44537 (E.D. PA 2011) referencing High Tech Nat'l, LLC v. Stead, 2020 U.S. Dist. LEXIS 116470 at *3 (E.D. Pa. July 2, 2020); Yelland v. Abington Heights Sch. Dist., 2017 U.S. Dist. LEXIS 150789 at *4 (M.D. Pa. Sept 18, 2017); Jorden v. Glass, 2010 U.S. Dist. LEXIS 74886 at *1 n.1 (D.N.J. July 23, 2010); N.J. Bldg. Laborers Statewide Ben. Funds & Trs. Thereof v. Torchio Brothers, Inc., 2009 U.S. Dist. LEXIS 10267 at *2 (D.N.J. Feb. 11, 2009).  See also Castillo v. Shippensburg Urban Developers, Inc., 2021 U.S. Dist. LEXIS 273260 at *1 (M.D. Pa. Nov. 24, 2021) (allowing service by certified mail in a case in which there was evidence that the subpoenaed party had previously intentionally avoided service and had not responded to the government's motion to

permit alternative service, despite a court directive to do so).

Additionally, as this Court wrote recently in Stadler v. Moore, 2021 U.S. Dist. LEXIS 134632 at *4-5 (E.D. PA 2021), "[r]ecently, a growing number of cases have departed from the view that *personal service* is required and alternatively have found service of a subpoena under Rule 45 absent personal service." Id. (emphasis added.) "The rationale is that (1) the actual language of the rule does not require personal service; (2) as Rule 4(e) demonstrates, the drafters of the Federal Rules knew how to require personal service when they wanted it; (3) the cases holding that personal service is required by Rule 45 do not provide meaningful analysis, but instead, simply quote the rule; and (4) there is absolutely no policy distinction that would justify permitting 'lesser' forms of service for a summons and a complaint—which actually commence a lawsuit—but not for a subpoena." Stadler, *supra*, at 5-6 (citing Hall v. Sullivan, 229 F.R.D. 501, 505 (D. Md. 2005) (citing to 9 MOORE'S FED. PRAC.—CIVIL ¶ 45.03(4)(b)(i))).

Dr. Auteri attempted personal service at Mr. Gorsky's address within this district on February 6, 2025 after inquiring whether Defendant's counsel would represent Mr. Gorsky and/or could accept service of the subpoena on February 5, 2025.  After it appeared that Mr. Gorsky was not currently at the Pennsylvania address, Dr. Auteri attempted service by certified mail.  Both service attempts occurred within one week after Defendant's counsel's questioning in Dr. Auteri's deposition established the need for Dr. Auteri to depose Mr. Gorsky.  Dr. Auteri's counsel obtained Mr. Gorsky's addresses and cell phone number through a public skip-trace search.  The certified mail was accepted and signed for, as evidenced by the signed green card and receipt.  See **Exhibit J**.  It is important to note that in his declaration in support of the Motion to Quash, Mr. Gorsky *does not* state that the New York address is not his address or is not a proper address for him. Instead, Mr. Gorsky vaguely asserts, "I do not reside in New York."  See Declaration of Alex

Gorsky attached to Defendant's moving papers.  Such a statement does not sufficiently deny that the New York address is improper for service.  Mr. Gorsky has a New York address and appeared to not be residing at Mr. Gorsky's Pennsylvania address at the time the subpoena was served.

Moreover, as a courtesy, the undersigned texted Mr. Gorsky on February 11, 2025, the same day the subpoena was received and signed for at Mr. Gorsky's New York address via certified mail, and informed Mr. Gorsky that the subpoena had been served.  Mr. Gorsky read the undersigned's text messages.  Promptly thereafter on February 11, 2025, Defendant's counsel notified the undersigned that Defendant's counsel now represented Mr. Gorsky, after the subpoena was served and Mr. Gorsky read the undersigned's text messages.

Where Courts have adopted the position that the language in Rule 45 regarding "delivering a copy" of the subpoena should not be interpreted as requiring in-hand personal service, they have generally required evidence that the witness received the subpoena or at least had notice of it. See Ott v. City of Milwaukee, 682 F.3d 552, 557 (7th Cir. 2012); Bank of Oklahoma, N.A. v. Arnold, 2008 U.S. Dist. LEXIS 12677 (N.D. Okla. Feb. 20, 2008); Hall v. Sullivan, 229 F.R.D. 501-06 (D. Md. 2005); 9 James Wm. Moore, Moore's Federal Practice § 45.21 at 45-44 (2024).  Herein, there is no dispute that Mr. Gorsky and his legal counsel had notice of the subpoena.

Based on all of the above-undisputed facts, the Court should be satisfied that the nonparty, Mr. Gorsky, was properly served with the subpoena.

II.    **MR. GORSKY, AS THE PARTY SEEKING TO QUASH THE SUBPOENA, HAS FAILED TO DEMONSTRATE THAT THE REQUIREMENTS OF RULE 45 WERE NOT SATISFIED WHERE MR. GORSKY IS A FACT WITNESS WITH DISCOVERABLE INFORMATION**

Under Rule 45(d)(3)(A)(iv), "[t]he party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." Strike 3 Holdings, LLC v. Doe, 2019 U.S. Dist. LEXIS 168379 at *3 (D.N.J. Sept. 30, 2019), quoting Malibu Media, LLC v. John

<u>Does 1-15</u>, 2012 U.S. Dist. LEXIS 105768 at *5 (E.D. Pa. July 30, 2012) (further citations omitted)."  <u>Patrick v. Equifax Info. Servs.</u>, 2024 U.S. Dist. LEXIS 1818639 at *8 (D.N.J. 2024).

"When a party serves a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26(b)(1)." <u>Patrick</u>, 2024 U.S. Dist. LEXIS 1818639 at *6 (D.N.J. 2024), (citing <u>In re Novo Nordisk Sec. Litig.</u>, 530 F. Supp. 3d 495, 501 (D.N.J. 2021)). Fed.R.Civ.P. 26 provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

<u>Fed. R. Civ. P.</u> 26(b)(1); <u>Id.</u> at *6-7. "'Rule 26 [clearly] establishes a liberal discovery policy' and '[t]he federal courts have . . . long permitted broad and liberal discovery.'" <u>Khal Anshei Tallymawr Inc. v. Twp. of Toms River</u>, 2024 U.S. Dist. LEXIS 140972 at *3 (D.N.J. Aug. 8, 2024).

Herein, there is no dispute between the parties of the following: Mr. Gorsky spoke with Dr. Auteri regarding Dr. Auteri's opinions as a member of the MEC expressing concerns over the safety of the COVID-19 vaccine; Mr. Gorsky has donated Millions of Dollars to Defendant; and, Mr. Gorsky was the former CEO of Johnson & Johnson, a well-known manufacturer of one of the COVID-19 vaccines.

Dr. Auteri testified that Mr. Gorsky called Dr. Auteri the day after Defendant suspended Dr. Auteri for failure to take the COVID-19 vaccine and tried to convince Dr. Auteri to take the vaccine <u>after</u> Dr. Auteri requested a religious exemption from the vaccine mandate.  <u>Dr. Auteri testified that Mr. Gorsky asked Dr. Auteri "what it would take to get [Dr. Auteri] on board" to take the vaccine.  Dr. Auteri did not know what Mr. Gorsky meant by that statement, nor did Defendant's representatives know what Mr. Gorsky meant when so questioned by Dr. Auteri's</u>

counsel.

The CEO of Defendant, James Brexler, testified that Mr. Brexler asked Mr. Gorsky to call Dr. Auteri about Dr. Auteri's refusal to take the COVID-19 vaccine.  Brexler Dep. at p. 80, l. 9-16.[4]  Mr. Brexler also testified that Mr. Brexler did not know what Mr. Gorsky meant when Mr. Gorsky asked Dr. Auteri about "what it would take to get [Dr. Auteri] on board" with taking the Covid-19 vaccine; Mr. Brexler testified that to find out what Mr. Gorsky meant, Dr. Auteri would "have to ask Mr. Gorsky."  Brexler Dep. at p. 95, l. 14-16, p. 96, l. 9-20.

In Title VII failure to accommodate cases, the employer's motives in failing to grant an accommodation matter.  See Equal Emp. Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015)( **"Abercrombie & Fitch"**)("if an employer's desire to avoid the prospective accommodation is a motivating factor in [the employer's] decision, the employer violates Title VII").  Due to employers' potential to use legitimate, non-discriminatory reasons – including undue hardship - to mask discriminatory motives, courts allow plaintiffs to "show that the [employer's] reasons are pretextual," i.e. not the real reason for the accommodation denial. Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000); Cain v. Cnty. of Multnomah, 1996 U.S. Dist. LEXIS 8185 at **15-16 (D. Ore. June 14, 1996)(quoting Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996)).

Mr. Brexler testified that Mr. Gorsky's conversation with Dr. Auteri seeking to have Dr. Auteri take the Covid-19 vaccine was about something other than the "undue hardship" associated with patient safety which Defendant claims.  To the contrary, Mr. Brexler testified as to why Mr. Gorsky was critical to Defendant's effort to get Dr. Auteri to take the Covid-19 vaccine:

106

7      Q.  So this was just specific to

---

[4] References are to the transcript of the February 17, 2025 deposition of James Brexler, the cited portions of which are attached hereto as **Exhibit L**.

8    Dr. Auteri, that you asked Mr. Gorsky to pick
9    up the phone and call Dr. Auteri and try to
10   get him to take the vax, correct?
11       A.   It was specific to Mr. Gorsky, who
12   Dr. Auteri and Mr. Gorsky knew each other very
13   well, were part of the development of the
14   Heart Center and was part of the funding
15   program, and was the head of the program that
16   invented the vaccine and the head of our
17   cardiac surgery program that was refusing at
18   that point to take the vaccine.  So it was a
19   very important call.  I felt that it was worth
20   calling Mr. Gorsky and asking if he would
21   be -- after I had asked Joe if he would be
22   open to talking to Mr. Gorsky, and he said he
23   would.  So I did it on follow-up of that
24   conversation with Dr. Auteri.
25       Q.   So it wasn't worth it to have

                        107
1    Mr. Gorsky call any of the other people who
2    were refusing to take the vaccine; is that
3    fair?
4            MR. DURHAM:  Objection.
5            THE WITNESS:  We have the
6       highest paid, most prominent surgeon, and
7       it felt like it was an appropriate issue
8       to ask that he have that conversation
9       with Dr. Auteri.  No, I would not have
10      Mr. Gorsky contact every employee in
11      Doylestown Health.
12   BY MS. RUSSELL:
13       Q.   Did I hear you to say that
14   Mr. Gorsky was a donor to the cardiac program
15   somehow?
16       A.   He was a donor --
17           MR. DURHAM:  Objection.
18           THE WITNESS:  He was a donor to
19      our One Vision Campaign, major donor,
20      which went to the cardiac -- to the whole
21      heart program.
22   BY MS. RUSSELL:
23       Q.   Major donor.  What do you mean by
24   that?
25       A.   Multiple millions of dollars.

108

```
1        Q.  And so by the time that you were
2    asking Mr. Gorsky to call Dr. Auteri, is it
3    fair to say that Mr. Gorsky was already a,
4    quote, major donor to the One Vision Campaign
5    which funded the cardiac program?
6            MR. DURHAM:  Objection.
7            THE WITNESS:  Yes.
```

It is reasonable for Dr. Auteri to seek to depose this material witness, Mr. Gorsky, regarding Mr. Gorsky's direct, personal conversations with Dr. Auteri about the vaccine, Mr. Gorsky's conversations with Defendant's administrators, and whether Mr. Gorsky had similar conversations with other Defendant employees who sought an exemption from the COVID-19 vaccine mandate. Dr. Auteri seeks to determine, based on Mr. Gorsky's prominent standing in the hospital, what influence, role, or participation Mr. Gorsky or Mr. Gorsky's then pharmaceutical company employer, Johnson & Johnson, held with respect to Defendant's COVID-19 vaccine mandate regarding the hospital staff, including physicians such as Dr. Auteri. Dr. Auteri seeks to determine how or if Mr. Gorsky's willingness to fundraise and donate to Defendant would have been impacted by Dr. Auteri's repeated expression of concern regarding the safety of the COVID-19 vaccine as a member of the MEC. All of that evidence goes to the issue of Defendant's motives in denying Dr. Auteri an accommodation of Dr. Auteri's exemption request, which is part of Dr. Auteri's showing of "pretext" as an element of Dr. Auteri's Title VII failure to accommodate claim. See Abercrombie & Fitch, 575 U.S. at 773; Chuang, 225 F.3d at 1123-24. All of that evidence is discoverable, relevant and admissible at trial, and not "tangential" as asserted by Defendant.

As the Court further wrote in Patrick, supra, Federal Rule of Civil Procedure 45(d)(3)(A) provides that a Court should only quash a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i-iv); see also, Patrick, *supra* at *7.

Herein, while the original subpoena requested Mr. Gorsky's appearance at a deposition on February 12, 2025, immediate communications between Mr. Gorsky and the undersigned, and then between Defendant's counsel (acting as Mr. Gorsky's counsel) and the undersigned, made it clear that Dr. Auteri was willing to reschedule the deposition, offered Mr. Gorsky a reasonable time to comply, and was willing to conduct the deposition remotely. As set forth above, Dr. Auteri does not seek privileged information from Mr. Gorsky. Put simply, there is no evidence of any burden, much less an undue burden, to Mr. Gorsky by Dr. Auteri's subpoena. As cited above, Defendant's CEO Mr. Brexler asked Mr. Gorsky to speak with Dr. Auteri about Dr. Auteri's concerns regarding the COVID-19 vaccine. As quoted above, Mr. Brexler asked Mr. Gorsky to reach out to Dr. Auteri and speak with Dr. Auteri because Mr. Gorsky, the then CEO of Johnson & Johnson, a major manufacturer of one of the COVID-19 vaccines, "was the head of the program that invented the vaccine" and a "major donor" to the capital campaign which campaign funds went "to the whole heart program." It was Defendant's witnesses' own testimony that put Mr. Gorsky right in the center of this dispute. Dr. Auteri did not seek out Mr. Gorsky to discuss Dr. Auteri's concerns. In an attempt to persuade Dr. Auteri to change his opinions as an MEC member and as the "highest paid, most prominent surgeon," Defendant asked Mr. Gorsky to speak with Dr. Auteri. Mr. Gorsky agreed and spoke with Dr. Auteri. Thus, any evidence regarding the nature of how, when, who, and under what terms Defendant reached out to Mr. Gorsky to speak with Dr. Auteri, in addition to the nature of the conversation between Mr. Gorsky and Dr. Auteri, as well as Mr. Gorsky's

intentions as to why he agreed to speak with Dr. Auteri after being requested to do so by Defendants – all of that evidence is highly relevant and directly related to the issues in this matter. Any effort by Defendant to assert that testimony is "tangential" should be dismissed as unreasonable. By filing this motion, Defendant merely seeks to protect a prominent, influential fundraiser for the hospital, Mr. Gorsky, from the hassle and supposed embarrassment of being subpoenaed as a witness. However, Defendant should have thought of that before Defendant asked Mr. Gorsky to get involved and try to persuade Dr. Auteri to take the COVID-19 vaccine.

 "The movant must also show that the subpoena is "unreasonable and oppressive." Burgess v. Galloway, 2021 U.S. Dist. LEXIS 195505 at *3 (D.N.J. Jan. 28, 2021) (quotation omitted). That burden has been described as "heavy." Strike 3 Holdings, 2019 U.S. Dist. LEXIS 168379 at *3 (D. N. J. Sept. 30, 2019). As indicated above, there is no evidence of any burden, much less a "heavy" burden, placed on Mr. Gorsky in complying with the subpoena.

"Once the movant meets this heavy burden, a Court must balance the subpoenaing party's interest in disclosure against the subpoenaed party's interest in non-disclosure to determine whether the burden on the nonparty is undue." In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 239 (E.D. Pa. 2014). The balancing test requires the court to weigh (1) the relevance, (2) need, (3) confidentiality of the requested materials, and (4) the harm that compliance would cause the subpoenaed nonparty." See also, Patrick, *supra* at *8. Even if Mr. Gorsky could meet his "heavy burden," which he cannot, Mr. Gorsky's testimony directly relates to the central issue in this matter, namely, did Defendant illegally deny Dr. Auteri's request for an accommodation to the COVID-19 vaccine Mandate based upon the pretext of safety when in reality the denial was based on the fact that Defendant's most significant fundraiser and donor was the then CEO of one of the major pharmaceutical companies producing the COVID-19 vaccine and Defendant could not have one

of its most prominent, well-known heart surgeons telling people he would not get the COVID-19 vaccine.  Mr. Gorsky's testimony is relevant, not confidential, and no harm would result from Mr. Gorsky's compliance.

**III.    CONCLUSION**

Contrary to Defendant's assertions, the subpoena issued to Mr. Gorsky was procedurally and substantively acceptable under the Federal Rules of Civil Procedure and relevant case law. Any feigned effort by Defendant now to oppose the subpoena on the basis that the subpoena violates the Court's Scheduling Order is belied by Defendant's counsel's email to the undersigned in late December wherein Defendant's counsel wrote "[w]e intend to take Dr. Auteri's deposition before the other depositions.  If we end up pushing against the fact discovery deadline as a result, we will agree to depositions after the deadline."   See **Exhibit C**.   The undersigned clearly communicated to Mr. Gorsky that the deposition did not have to take place on February 12, 2025; the deposition could be rescheduled and taken remotely.   Those undisputed facts contradict Defendant's efforts to assert that the subpoena contained an unreasonable timeline or undue burden on Mr. Gorsky.

16995/1/11193419/1

For all of the above reasons, Dr. Auteri respectfully requests that the Motion be denied and that the Court enter an order in the form attached hereto.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: _____

Kimberly L. Russell, Esquire
Attorneys for Plaintiff
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
(610) 684-2026 (fax)
krussell@kaplaw.com

**Dated:** February 28, 2025

16995/1/11193419/1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No. 2:22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of "Plaintiff's Response to the Motion of Non-Party Alex Gorsky to Qush Subpoena and for a Protective Order," together with supporting Memorandum of Law, were caused to be served via the Court's ECF Filing system by the undersigned on the date stated below, to the addressees stated below, and at the addresses stated below:

Christopher D. Durham, Esquire
Adam D. Brown, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103
cddurham@duanemorris.com
adbrown@duanemorris.com
Attorneys for Defendant

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: _____

Kimberly L. Russell, Esquire
Attorneys for Plaintiff
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
(610) 684-2026 (fax)
krussell@kaplaw.com

**Dated:** February 28, 2025