## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH S. AUTERI, M.D.** | : | |
| Plaintiff, | : | No. 2-22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| **VIA AFFILIATES, d/b/a** | : | |
| **DOYLESTOWN HEALTH** | : | |
| **PHYSICIANS** | : | |
| Defendant. | : | |

### <u>ORDER</u>

**AND NOW**, this _____ day of _____, 20__, upon consideration of (1) Defendant's Motion to Exclude the Report and Testimony of Dr. Peter McCullough and Plaintiff's response thereto, and (2) Plaintiff's Cross-Motion to Exclude the Report and Testimony of Dr. Daniel Salmon, Ph.d, MPH, and any response thereto, it is hereby **ORDERED** that:

1.  Defendant's Motion is **DENIED**; and

2.  Plaintiff's Cross-Motion to Exclude the Report and Testimony of Dr. Daniel Salmon, Ph.d, MPH is **GRANTED**.

**BY THE COURT:**

_____

R. Barclay Surrick, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH S. AUTERI, M.D. | : | |
| Plaintiff, | : | No. 2:22-cv-03384 |
| | : | |
| v. | : | |
| | : | |
| VIA AFFILIATES, d/b/a | : | |
| DOYLESTOWN HEALTH | : | |
| PHYSICIANS | : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DR. PETER MCCULLOUGH WITH PLAINTIFF'S CROSS MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DR. DANIEL SALMON, PH.D., MPH**

Plaintiff, by his undersigned counsel, hereby responds to "Defendant's Motion to Exclude the Report and Testimony of Dr. Peter McCullough" (**"Defendant's Motion"**) and respectfully request this Court to deny Defendant's Motion for the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.

Plaintiff, by his undersigned counsel, hereby moves this Court for an order to exclude the report and testimony of Dr. Salmon, Ph.D., MPH (**"Plaintiff's Cross-Motion"**). Plaintiff respectfully requests this Court to grant Plaintiff's Cross-Motion for the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.

**WHEREFORE,** Plaintiff respectfully requests this Court to deny Defendant's Motion, grant Plaintiff's Cross-Motion, and enter an Order in the form attached hereto.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

By: _____

Kimberly L. Russell, Esquire
Daniel M. Zachariah, Esquire
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
krussell@kaplaw.com
dzachariah@kaplaw.com


**PACIFIC JUSTICE INSTITUTE**

By: */s/ Karyn L. White, Esquire*
Karyn L. White, Esquire
PA/NJ Office P.O. Box 276600
Sacramento, CA 95827
(609) 335-4833 (phone)
kwhite@pji.org

Attorneys for Plaintiff

**Dated:** June 12, 2025

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH S. AUTERI, M.D.                    :
                          Plaintiff,    :    No. 2:22-cv-03384
                                           :
     v.                                    :
                                           :
VIA AFFILIATES, d/b/a                      :
DOYLESTOWN HEALTH                          :
PHYSICIANS                                 :
                       Defendant.    :

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DR. PETER MCCULLOUGH WITH PLAINTIFF'S CROSS MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DR. DANIEL SALMON, PH.D., MPH

**I.**     <u>**RESPONSE TO DEFENDANT'S MOTION**</u>

Plaintiff, Dr. Joseph Auteri, asserts that his former employer, Defendant Doylestown Hospital, violated Title VII when it refused to approve his request for an accommodation to the hospital's COVID-19 vaccine mandate based on his sincerely held religious beliefs and terminated him.

A primary issue for the trier of fact in this matter will be whether the Defendant would have suffered an undue hardship if Defendant had granted Plaintiff's request for a religious accommodation to the COVID-19 vaccine. Defendant asserts that granting Plaintiff's accommodation request would have caused undue hardship because Plaintiff would have endangered his patients if allowed to work unvaccinated. Based on this asserted specific basis of an undue hardship, Plaintiff has offered the expert opinion of Dr. Peter McCullough (**Exhibit "1"** hereto). Dr. McCullough's report is limited and tailored to address the specific statements and conduct of Defendant with regard to patient safety from COVID-19, and their statements and conduct toward Plaintiff with regard to his accommodation request. Dr. McCullough's opinions and testimony will aid the jury in determining whether Defendant had a reasonable basis for

1

Defendant's assertion of undue hardship or whether, as Plaintiff asserts, the basis was a mere pretext.

Defendant's Motion to Exclude Dr. McCullough's Expert Report and testimony (the "Motion") fails because that Motion fails to challenge Dr. McCullough's actual report in the instant litigation. In the Motion, Defendant only discusses challenges to other McCullough reports in other cases and requests this Court to adopt the non-precedential reasoning of other Courts regarding reports not at issue in this case. Defendant's failure to challenge the fact-specific and limited opinions in the instant action is fatal to the Motion.

Defendant's Motion is meritless and seemingly nothing more than an attempt to avoid addressing the very specific and substantive basis for Dr. McCullough's expert report in this action. As explained in more detail below, a closer review of the other cases cited by the Defendant indicates that none of those cases provides the direct, uncontroverted basis for excluding Dr. McCullough's opinion in this matter. By basing the Motion on the rulings in other cases, Defendant appears to believe that Defendant is not required to provide the Court with a critical analysis of Dr. McCullough's report in this matter, and that analytical omission is fatal to the Motion.

This Court should deny the Defendant's Motion to Exclude Dr. McCullough's testimony.

A.    **Legal Argument**

The Defendant's Motion is governed by Daubert and F.R.E. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702.

"The Court considers three main prongs in evaluating the admissibility of an expert opinion: qualifications, reliability, and fit." Slattery v. Main Line Health Inc., No. CV 22-4994, 2025 WL 897526, at *3 (E.D. Pa. March 24, 2025), citing Cohen v. Cohen, 125 F.4th 454, 460 (3d Cir. 2025).

1.    *Dr. McCullough's Education, Training, and Experience Render Him Qualified as an Expert.*

"In order to be deemed qualified, a proffered expert must possess the necessary skills, knowledge, education, experience, and training to express an expert opinion. When evaluating the qualifications of an expert, the court considers not only their skills, knowledge, education, experience, or training in general but also whether their specific practice area is relevant to the issues at hand." Slattery, supra, at *9-10. The qualifications requirement is "liberally interpreted and includes a broad range of knowledge, skills, and training." In re TMI Litig., 193 F.3d 613, 664 (3d Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994)).

In challenging Dr. McCullough's qualifications, the Defendant relies almost exclusively on the Court's opinion in Slattery v. Main Line Health Inc., No. CV 22-4994, 2025 WL 897526, at *3 (E.D. Pa. March 24, 2025). However, the Slattery opinion is not binding on this Court and evaluates issues distinct from Defendant's conduct in this case, upon which Dr. McCullough's

opinion is based.  The Third Circuit follows a long-established principle that District Court decisions do not establish the law of the circuit, and are not even binding on other District Courts within the district.  Doe v. Delie, 257 F.3d 309, 321 (3d Cir. 2001) (citing Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1371 (3d Cir. 1991)).  Even if this Court were to consider Slattery, Plaintiff asserts that it would be improper for this Court to rely on a different Court's determination of reliability because the Defendant did not and cannot show that Dr. McCullough's expert report in Slattery is the same expert report challenged herein.  Determinations regarding the reliability of a report must be specific to the report itself.  This Court should not assume that because Dr. McCullough's expert report submitted in Slattery was determined to be unreliable, his expert report in this matter is presumptively unreliable as well.

Further analysis of the Slattery opinion demonstrates why this Court should not rely upon the determinations made by the Slattery Court.  In determining whether it would admit Dr. McCullough's Rebuttal Report responding to the defendant's expert, Dr. Daniel Salmon, the Slattery Court "questioned" and "was not convinced" of Dr. McCullough's qualifications to opine on Covid-19 because Dr. McCullough "never practiced in the field of epidemiology" and his "presence" in this field did not begin until the Covid-19 pandemic began in early 2020. Id. at *18-19. The Slattery Court wrote that it was "unwilling to certify an expert on a relatively novel virus when they have no previous experience with epidemiology, immunology, or infectious disease." Id. That determination by the Slattery Court ignored the Third Circuit Court of Appeals' prior rulings, which "consistently maintained that Rule 702 is to be interpreted liberally" and "eschewed imposing overly rigorous requirements of expertise." Lauria v. Amtrak, 145 F.3d 593, 598 (3d Cir. 1998); see also United States v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995); In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 855 (3d Cir. 1990); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717,

4

741 (3d Cir. 1994); Suter v. Gen. Accident Ins. Co. of Am., 424 F. Supp. 2d 781, 794 (D.N.J. 2006). "Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his qualifications." Id. (quoting Gardner v. General Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974)).

The Third Circuit in Lauria ruled that a witness can qualify as an expert under Rule 702 based on practical experience alone, and a formal degree, title, or education specialty is not required. Lauria, supra, 145 F.3d at 599. The Lauria Court concluded that "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Id. (citing Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996).

The Slattery Court's conclusion to disqualify Dr. McCullough because Dr. McCullough never "practiced" in the field of epidemiology contradicts the binding caselaw established by the Third Circuit Court of Appeals in Lauria. Dr. McCullough's practical, global, and intense experience in dealing with the COVID-19 pandemic more than satisfies the "practical experience" requirement of Lauria. Other Courts in this District applied a "Lauria" standard prior to the Third Circuit's establishment of the Lauria standard, evidencing the appropriateness of reliance upon practical experience in an expert witness's testimony. See Mazur v. Merck Co., 742 F. Supp. 239, 264 (E.D. Pa. 1990) (expert was qualified based on a short-term, but intense study, combined with a specialized understanding of the health hazards associated).

The Defendant next relies on the Slattery Court's "additional concern" about Dr. McCullough, citing Navy Seal I v. Austin, 600 F. Supp. 3d 1 (D.D.C. 2022) and another District Court's commentary regarding Dr. McCullough in Roth v. Austin, 603 F. Supp. 741, 774 (D. Neb.

2022). Reliance on these "concerns," identified by the <u>Slattery</u> Court, was not a proper basis for disqualifying Dr. McCullough. Rather, the <u>Slattery</u> Court should have determined whether Dr. McCullough was competent to testify as an expert in the specific case before the <u>Slattery</u> Court based on Dr. McCullough's education, training, and experience and then any challenges to Dr. McCullough's skill or knowledge would go to the weight to be accorded his expert testimony and not to its admissibility. <u>Fox v. Dannenberg</u>, 906 F.2d 1253, 1256 (8th Cir. 1990). The question of the expert's credibility and the weight to be accorded to the expert's testimony is ultimately for the trier of fact to determine. <u>Id.</u>

Defendant's reliance upon the <u>Slattery</u> Court's recitation of "concerns" as a basis to exclude expert testimony herein also fail to comply with the Third Circuit's adopted liberal approach which prohibits a Court from separately determining the trustworthiness of the data once the court has found that the data relied upon is of the kind upon which experts in the field reasonably rely. <u>Id.</u>; <u>see also</u> <u>In re Japanese Electronic Products Antitrust Litigation</u>, 723 F.2d 238, 275-79 (3d Cir. 1983), <u>rev'd on other grounds</u>, 475 U.S. 574 (1986), The primary focus of a Rule 702 determination is on the soundness of the expert's methodology which leads him to a certain conclusion, rather than on the conclusion itself. <u>Wells v. Ortho Pharmaceutical</u>, 788 F.2d 741 (11th Cir.); <u>Ferebee v. Chevron Chemical Co.</u>, 736 F.2d 1529, 1535-36 (D.C. Cir. 1984). Defendant's reliance upon the <u>Slattery</u> opinion is an effort to avoid the presentation of the expert's conclusions for evaluation by the trier of fact. The Third Circuit is clear that an expert witness's qualifications and testimony are to be permitted liberally, and the weight to be given to those qualifications and testimony is the province of the factfinder. <u>Lauria</u>, 145 F.3d at 598-99.

Defendant also asks this Court to disqualify Dr. McCullough based on unfounded statements allegedly made by other associations, including the American Board of Internal

Medicine, which accused Dr. McCullough of making "false public statements about the Covid-19 vaccine." Such evidence should be provided to the trier of fact through Defendant's cross-examination of Dr. McCullough to determine the weight to be given Dr. McCullough's opinion, and not form the basis to disqualify him as an expert.

This Court, in applying the <u>Lauria</u> precedent of liberality to Dr. McCullough's qualifications, must conclude that although Dr. McCullough "never practiced in the field of epidemiology" until the COVID-19 pandemic began in early 2020, Dr. McCullough's extensive experience in COVID-19 patient treatment, global consultations on COVID-19 patient treatment, lecturing, researching, and consulting high level government officials since the onset of the pandemic, and the over sixty-five peer-reviewed, published articles Dr. McCullough has written on Covid-19, along with Dr. McCullough's impressive educational credentials including a master's degree with a specialty in epidemiology renders Dr. McCullough more than adequately qualified to testify as an expert in this matter. The Defendant's attempt to oppose the same by relying on the Court's decision in <u>Slattery</u> is without merit. The Motion should be denied.

**B.    <u>Dr. McCullough's Opinions are Reliable.</u>**

Approval by the medical community is but one factor to consider in determining reliability, and it is not dispositive. "'General acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence. <u>Suter v. Gen. Accident Ins. Co. of Am.</u>, 424 F. Supp. 2d 781, 789 (D.C.N.J. 2006). "This is especially true and may be especially significant in connection with an assessment of techniques that are new to the litigation setting." <u>United States v. Downing</u>, 753 F.2d 1224, 1238 (3d Cir. 1985). Furthermore, where an expert opinion is based primarily on experience, the testimony may be admitted, as long as the expert can explain "how that experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts." F.R.E. 702. In his report, Dr. McCullough meticulously provided counterpoints, citing sources, and references to support his arguments. His testimony should therefore be admitted if the Court determines that his professional experience provides a reasonable basis for his opinion and that his experience applies to the facts at hand. The Defendant seeks to exclude Dr. McCullough's testimony merely because it differs from their expert's opinions. In their opposition, the Defendant disagrees with Dr. McCullough's opinions, offers their own arguably biased opinions, and seeks to exclude Plaintiff's expert, thus preventing the trier of fact from making its determination. Such action, if permitted, would essentially allow the Defendant to present whatever unopposed evidence it desires to explain why it violated Plaintiff's religious beliefs. The Motion should be denied.

1.    *COVID-19 vaccines are "Genetic Biotechnology Products."*

The Defendant asserts that Dr. McCullough's "core" opinion, that COVID-19 vaccines are "genetic biotechnology products," is not reliable and that Dr. McCullough's "opinions have been scientifically debunked as untrue." The Defendant relies upon alleged statements by the FDA, CDC, and NIH made in 2021 that assert that the COVID-19 vaccines "do not alter DNA."

However, in the Motion, Defendant only critiques Dr. McCullough's citation to one (1) FDA article, and wholly ignores and fails to acknowledge that Dr. McCullough's report also cites a February 2022 publication in the National Library of Medicine–National Center for Biotechnology Information entitled, "Intracellular Reverse Transcription of Pfizer BioNTech Covid-19 mRNA Vaccine BNT162b2 In Vitro in Human Liver Cell Line," along with a published article in the Methods and Protocols 2024 Journal entitled, "Methodological Considerations Regarding the Quantification of DNA Impurities in the Covid-19 mRNA Vaccine Comirnaty" and an article entitled, "DNA fragments detected in monovalent and bivalent Pfizer/BioNTech and

Moderna modRNA COVID-19 vaccines from Ontario, Canada: Exploratory dose response relationship with serious adverse events." Dr. McCullough also cites "EUA briefing documents for commitments as to follow up: Moderna, Pfizer, Janssen" vaccines. Each of those cited authorities supports Dr. McCullough's assertion that COVID-19 vaccines are "genetic biotechnology products."

Additionally, Defendant misstates Dr. McCullough's opinion to mislead this Court into believing that Dr. McCullough made an incorrect statement to exclude the report. Dr. McCullough did not conclude that the COVID-19 vaccines alter DNA as a factual statement. To the contrary, Dr. McCullough's report is clear that the COVID-19 vaccines are genetic vaccines, or vaccines produced from gene therapy molecular platforms which, according to US FDA regulatory guidance, are classified as gene delivery therapies, enter the cells of the human body as their mechanism of action, and as such have the ability to alter an individual's human genome. See McCullough Report at p. 7. Dr. McCullough states that because the COVID-19 vaccines are classified as gene delivery therapies by FDA guidance and extensive periods of study and observation, Dr. Auteri's expressed religious concern about those vaccines was supported by the data available at that time. See McCullough Report at p. 6. As Dr. McCullough cites in his report, it is the mode of action of COVID-19 vaccines that classifies them as "gene therapy products" and justifies Dr. Auteri's religious basis for refusing to take a vaccine which enters the cell and can alter the body as designed by God, as opposed to a traditional vaccine which does not enter the cell to generate an immune system response. See McCullough Report at pp. 7-8.

The Defendant's next assertion, citing Brunson v. Aiken/Barnwell Ctys. Cmty Action Agency, Inc., 2024 WL 418602 (D. S.C. March 1, 2024), that this Court "may take judicial notice of the fact that '[t]he vaccine does not alter a person's DNA,'" should be received with caution.

9

First, in Brunson, citing Phillips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the Court merely stated in a footnote that a "Court may take judicial notice of factual information located in postings on government websites." Brunson, 2024 WL 418602 at n. 3. In Phillips, the Court was reviewing a Rule 12(b)(6) motion and stated that it "may properly take judicial notice of matters of public record." Phillips, 572 F.3d at 180. Those vague statements made in Brunson and Phillips, along with the Court's statements cited by the Defendant in Messina v. Coll. Of N.J. and Smith v. Biden, do not provide support for the assertion that this Court must accept as true or take judicial notice of all publicly posted statements of the FDA, CDC, or NIH. Rather, under F.R.E. 201 and Daubert, 509 U.S. at 592, n.11, a Court may only take "judicial notice" of a scientific theory that is "so firmly established as to have attained the status of scientific law." Herein, there is no "scientific theory" for the Court to take judicial notice of because, in essence, the parties are disputing the definition of the phrase "genetic biotechnology products" and there is simply no statement by the FDA, CDC, or NIH contradicting the assertion that "genetic biotechnology products" can be used for products made from genetic material and using genetic code.

A sufficient factual foundation must accompany an expert's testimony before it can be submitted to the jury. Herein, Dr. McCullough has provided sufficient factual support in the multiple articles noted above, which Defendant did not challenge in their Motion. Based on his training, experience, and education. Dr. McCullough's opinion is therefore reliable, and the Motion should be denied.

     2.     *Vaccinated Individuals Can Transmit COVID-19.*

In opposing Dr. McCullough's opinion that "an unvaccinated Dr. Auteri posed no undue additional risk or harm to himself, hospital staff, or patients greater than that posed by Doylestown

Health's vaccinated medical staff," the Defendant again almost exclusively relies on the findings by a different Court who was analyzing a different expert's report. Specifically, the Defendant cites Divine Equal. Righteous v. Overbrook Sch. For Blind and asserts that because the Divine Court found that the expert in that matter, Dr. Richard Scott French, misconstrued an article from The Lancet, a source on which he relied, that somehow, Dr. McCullough also "misleadingly" cited The Lancet article in this matter. In his report, Dr. McCullough wrote:

> On August 5, 2021, Dr. Rochelle Walensky, head of the CDC, announced that the vaccinated can contract and carry the SARS-CoV-2 virus and spread COVID-19 infection to fellow vaccinated individuals. Multiple studies indicated that fully vaccinated individuals were carrying large viral loads of SARS-CoV-2 in the nasopharynx and fully capable of spreading the virus to vaccinated or unvaccinated contacts.

In support of that statement, Dr. McCullough cited six (6) different articles. One of the articles was from The Lancet and was entitled "ATACCC Study Investigators. Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study." The Defendant's Motion does not challenge the reliability of any of the other five (5) articles Dr. McCullough cited for this assertion in his report. This distinguishes the instant matter from Divine wherein the Court found that the expert, Dr. French's, "conclusions are directly undermined by the studies for his belief." Divine, at *13. The Divine Court rejected Dr. French because all of the studies he relied upon contradicted his opinions.

Additionally, Defendant's challenge is misplaced because The Lancet article, in fact, contains the statement as written in Dr. McCullough's report:

> Multiple studies indicated that fully vaccinated individuals were carrying large viral loads of SARS-CoV-2 in the nasopharynx and fully capable of spreading the virus to vaccinated or unvaccinated contacts.

The statement is taken directly from the first page of The Lancet article. Despite this, the Defendant argues to this Court that because a different District Court judge (whose opinions are not binding) found that a different expert in a different case misconstrued The Lancet article, Dr. McCullough's reliance on The Lancet article renders his testimony unreliable. This assertion is without merit.

The Defendant also cites Federoff v. Geisinger Clinic, 571 F. Supp. 3d 376 (M.D. Pa. 2021), to assert that Dr. McCullough's opinion is a "half-truth." What the Defendant fails to state is that the Federoff matter involved injunctive relief and the Court ultimately ruled that the plaintiff's "take" on 'science' was irrelevant absent a right. The Federoff Court also found that with respect to the "science" of the COVID-19 vaccine "some of what [the plaintiffs] cite seems to have merit." Id. at 379. Most importantly, the Federoff Court stated the plaintiff's argument that "infected vaccinated and unvaccinated individuals transmit the virus at similar rates . . . warrants a response." Id. at 390. Thus, the Federoff Court, cited by the Defendant, did not exclude the expert testimony. Rather, it accepted the expert's opinions and considered the references to The Lancet article, and made a determination regarding its weight. Plaintiff acknowledges that ultimately the Court determined The Lancet article did not provide sufficient support for the plaintiff's assertions and criticized their interpretation and reliance on The Lancet article, but the Court did not exclude The Lancet article as unreliable nor did it exclude the plaintiff's ability to present their interpretation of what The Lancet article stated or supported.

The Third Circuit Court of Appeals has cautioned against applying the reliability requirement too strictly, explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence. The ultimate touchstone [of

admissibility] is helpfulness to the trier of fact." United States v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995) (citing Paoli, 35 F.3d at 742 and Daubert, 113 S. Ct. at 2795).

Next in opposing Dr. McCullough's opinions, in footnote 9, the Defendant cites Klaassen v. Trs. Of Indiana Univ., 549 F. Supp. 3d 836, 878 (N.D. Ind. 2021). However, the Defendant fails to inform the Court that in Klaasen, the plaintiffs were seeking injunctive relief and submitted Dr. McCullough's certification as support. The Klaasen Court wrote, "The parties have tendered declarations, supplemental declarations, and testimony from several experts, leaving to the court the task of deciding what weight to give to their opinions. . . . the students tender Dr. Peter McCullough, MD, MPH. All have credentials and opinions that exceed restatement here." Id. at 849 (emphasis added). Thus, in Klaasen, the Court accepted and considered Dr. McCullough's opinions and found his "credentials" acceptable. It was only as a 'trier of fact' and in determining what weight to give Dr. McCullough's opinions that the Court criticized Dr. McCullough's opinions. The same should occur herein. While this Court or a jury may ultimately not give Dr. McCullough's opinions sufficient credence, under Rule 702 and Daubert, Dr. McCullough's opinions are admissible. The trier of fact will determine what weight it deserves.

Also in footnote 9, the Defendant cites Harris v. Univ. of Mass., Lowell, 557 F. Supp. 3d 304, 309, n. 5 (D. Mass. 2021). In Harris, the plaintiffs were also seeking injunctive relief and submitted Dr. McCullough's certification as support. Similar to Klaasen, the Court accepted and considered Dr. McCullough's opinions. The Harris Court, in a footnote, merely determined what weight to give Dr. McCullough's opinion. The words used by the Defendant in their opposition brief, specifically that Dr. McCullough used "flawed data and mischaracterizations," do not appear anywhere in the Harris Court opinion.

Neither the Klaasen nor Harris opinion stands for the Defendant's assertion that "Dr. McCullough has similarly mischaracterized or exaggerated the significance of sources in other cases…" The Motion should be denied.

## C.    Dr. McCullough's Testimony Would Assist the Trier of Fact.

The third element under Rule 702 is that the expert testimony must assist the trier of fact. The Supreme Court has written that this "condition goes primarily to relevance." Daubert, 509 U.S. at 591. The proffered expert's testimony must "fit" under the facts of the case so that "it will aid the jury in resolving a factual dispute." Id. (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). The standard for this factor "is not that high." Lauria, 145 F.3d at 599. Herein, the primary issue is whether the Defendant would have suffered an undue hardship if it had granted Plaintiff's request for a religious accommodation to the COVID-19 vaccine. The Defendant asserted an undue hardship based on the assertion that Plaintiff would endanger patients if he were allowed to work unvaccinated. Based on this asserted basis of the undue hardship, Dr. McCullough's expert testimony is a good "fit" because Dr. McCullough's report is limited and tailored to address the specific statements and conduct of Defendant with regard to patient safety from COVID-19, and their statements and conduct toward Plaintiff with regard to his accommodation request. Dr. McCullough's opinions and testimony will aid the jury in determining whether Defendant had a reasonable basis for Defendant's assertion of undue hardship or whether, as Plaintiff asserts, the basis was a mere pretext.

Furthermore, the Defendant has retained an expert, Dr. Salmon, and has asked him to opine on the safety and efficacy of the COVID-19 vaccine. For them to now claim that these issues are not a reliable measure for the jury or not "fit" for the issues in this case is disingenuous. The Motion should be denied.

1.    _Dr. McCullough's Opinions as to COVID-19 Vaccines as Gene Therapy_
     _Products._

The issue of the sincerity of Plaintiff's religious beliefs was waived by the Defendant

because at no time and in no written communications to Plaintiff did the Defendant challenge

Plaintiff's religious basis for his opposition to the COVID-19 vaccine.  Additionally, there is no

issue herein whether Plaintiff's stated beliefs in his request for a religious accommodation were

scientific and not religiously based because, again, at no time and in no written communications

to Plaintiff did the Defendant allege that the request for a religious accommodation was denied

because Plaintiff's asserted beliefs were 'scientific' and not religious.  Therefore, the Defendant

has waived this issue.  The only issue in this case for the trier of fact is whether the Defendant

would have suffered an undue hardship if Defendant had granted Plaintiff's request for a religious

accommodation to the COVID-19 vaccine.

Should the Defendant be permitted to challenge the sincerity of Plaintiff's religious beliefs

or assert that the asserted beliefs were scientific and not religious, Dr. McCullough's report is clear

that the COVID-19 vaccines are genetic vaccines, or vaccines produced from gene therapy

molecular platforms which, according to US FDA regulatory guidance, are classified as gene

delivery therapies, enter the cells of the human body as their mechanism of action, and as such

have the ability to alter an individual's human genome.  See McCullough Report at p. 7.  Dr.

McCullough states that because the COVID-19 vaccines are classified as gene delivery therapies

by FDA guidance and extensive periods of study and observation, Dr. Auteri's expressed religious

concern about those vaccines was supported by the data available at that time.  See McCullough

Report at p. 6.  As Dr. McCullough cites in his report, it is the mode of action of COVID-19

vaccines that classifies them as "gene therapy products" and justifies Dr. Auteri's religious basis

for refusing to take a vaccine which enters the cell and can alter the body as designed by God, as

opposed to a traditional vaccine which does not enter the cell to generate an immune system response. See McCullough Report at pp. 7-8. This is clearly beyond the ken of an average juror, and Dr. McCullough's testimony would assist the trier of fact to understand the issue better. The Motion should be denied.

2.    *Dr. McCullough's Opinions Regarding Transmission of COVID-19 by Vaccinated Individuals are Relevant to the Trier of Fact's Determination of the Primary Issue: Whether the Defendant would have suffered an undue hardship if Defendant had granted Plaintiff's request for a religious accommodation to the COVID-19 vaccine.*

As discussed above, the primary issue is whether the Defendant would have suffered an undue hardship if Defendant had granted Plaintiff's request for a religious accommodation to the COVID-19 vaccine. Dr. McCullough's expert testimony is a good "fit" because the Defendant asserted in denying Plaintiff's request for a religious accommodation that unvaccinated employees pose a safety risk in the hospital setting. The Defendant's opposition implies that the only testimony Dr. McCullough could offer is that "viral loads among vaccinated persons are similar to those among unvaccinated persons." That is not an accurate assessment of the entire testimony. Dr. McCullough's report is limited and tailored to address the specific statements and conduct of Defendant with regard to patient safety from COVID-19, and their statements and conduct toward Plaintiff with regard to his accommodation request. Dr. McCullough's opinions and testimony will aid the jury in determining whether Defendant had a reasonable basis for Defendant's assertion of undue hardship or whether, as Plaintiff asserts, the basis was a mere pretext.

## II.    PLAINTIFF'S CROSS MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF DR. DANIEL SALMON, PH.D., MPH

Plaintiff, Dr. Joseph Auteri, asserts that his former employer, Defendant Doylestown Hospital, violated Title VII when it refused to approve his request for an accommodation to the

16

hospital's COVID-19 vaccine mandate based on his sincerely held religious beliefs and terminated him.

The primary issue for the trier of fact in this matter will be whether the Defendant would have suffered an undue hardship if they had granted Plaintiff's request for a religious accommodation to the COVID-19 vaccine. The Defendant asserts that granting the Plaintiff's accommodation request would have caused undue hardship because the Plaintiff would have endangered his patients if allowed to work unvaccinated.

The Defendant has submitted an April 9, 2025 Expert Report of Dr. Daniel Salmon, Ph.D., MPH (**Exhibit "2"** hereto). Plaintiff does not challenge Dr. Salmon's qualifications to testify as an expert; rather, Plaintiff asserts that Dr. Salmon's report will not help the trier of fact to understand the evidence or determine a fact in issue, and thus, under F.R.E. 702, it should be excluded.

**A.      Legal Argument**

 The Plaintiff's Motion is governed by Daubert and F.R.E. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

F.R.E. 702.

"The Court considers three main prongs in evaluating the admissibility of an expert opinion: qualifications, reliability, and fit." <u>Slattery v. Main Line Health Inc.</u>, No. CV 22-4994, 2025 WL 897526, at *3 (E.D. Pa. March 24, 2025) (citing <u>Cohen v. Cohen</u>, 125 F.4th 454, 460 (3d Cir. 2025)).

This cross-motion focuses solely on the general rule of F.R.E. 702 that expert testimony is unnecessary and may even be properly excluded, if people "of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." <u>Salem v. U.S. Lines Co.</u>, 370 U.S. 31, 35 (1962). Dr. Salmon's report in the instant action contains "opinions" which are based on information that a jury of lay people are more than capable of understanding. Dr. Salmon's testimony will not assist the trier of fact and must be excluded under Rule 702.

Dr. Salmon's report is broken down into four broad categories, as follows:

   1.    Threats of COVID-19 to Patients and Healthcare Workers in November 2021.

   2.    Safety and Efficacy of COVID-19 Vaccines.

   3.    Role of COVID-19 Vaccination Mandates in Managing Threats of COVID-19 to Patients and Healthcare Workers.

   4.    Effect of Non-Medical Exemptions From COVID-19 Vaccination Mandates.

   1.    *<u>Dr. Salmon's Report Contains Opinions That Are Irrelevant to the Issue Herein and Do Not Offer Any Scientific, Technical, or Other Specialized Knowledge, But Are Based On Information That A Jury Of Lay People Is More Than Capable Of Understanding and Should Be Excluded Under F.R.E. 702.</u>*

      a.    **Threats of COVID-19 to Patients and Healthcare Workers in November 2021.**

Under this first section, Dr. Salmon provided opinions indicating that in November 2021:

- COVID-19 was a potentially fatal disease for vulnerable populations,

- Cardiac patients were more vulnerable to a COVID-19 infection,

- COVID-19 spreads from person to person,

- COVID-19 significantly impacted healthcare systems and hospitals,

- Asymptomatic people can transmit COVID-19,

- It was difficult for hospitals to track the transmission of COVID-19 within a healthcare facility by vaccinated and/or unvaccinated persons,

- Employees of healthcare facilities were exposed to COVID-19 in the workplace, and

- Healthcare workers were the first priority for initial availability of the COVID-19 vaccines.

None of the above "opinions" offers any scientific, technical, or other specialized knowledge. Each of the above "opinions" is based on information that a jury of lay people is more than capable of understanding. As such, Dr. Salmon's testimony will not assist the trier of fact and must be excluded under Rule 702.

   2.    *Safety and Efficacy of COVID-19 Vaccines.*

Although this section of Dr. Salmon's report is entitled "Safety" and "Efficacy," he does not provide any opinion or scientific, technical, or other specialized knowledge regarding the "safety" of the COVID-19 vaccines. In fact, Dr. Salmon does not address the safety of the COVID-19 vaccine in any manner. Rather, Dr. Salmon provides information regarding controlled trials of the various COVID-19 vaccines and the vaccine's alleged efficacy "in preventing confirmed COVID-19 for a certain number of days after the dose was given. Following these statistics, Dr. Salmon wrote:

> Cases of COVID were reported among vaccinated persons (breakthrough cases) and there were indications that the vaccines were not as effective as previously characterized. The decrease in effectiveness may have been due to waning

immunity of the vaccine (protection goes down over time) or because of differences
in strain (Delta).

That admission by Dr. Salmon that "vaccines were not as effective as previously
characterized," and that effectiveness "goes down over time," completely nullifies any prior
statements in his report regarding vaccine efficacy percentages. Because Dr. Salmon agrees that
the vaccine is not effective "over time," any opinion he attempts to assert regarding the efficacy
of the vaccine must be excluded. Furthermore, his opinion that unvaccinated persons, as compared
to vaccinated persons, are at an increased risk of becoming infected and transmitting the virus also
must be excluded because, in providing this opinion, Dr. Salmon does not offer any quantitative
measure of the alleged "increased risk" of the unvaccinated transmitting the virus. Without the
ability to provide an expert opinion indicating quantitatively how much of an increased risk exists,
and having admitted that the COVID-19 vaccine is not as effective as previously characterized,"
and that effectiveness "goes down over time," his testimony will not aid the trier of fact in this
matter.

Dr. Salmon then provided percentage rates of effectiveness as reported by the CDC. Dr.
Salmon concluded, "the vaccine was still very beneficial in preventing disease and consequent
transmission." This generalized "opinion" that the vaccine was "still beneficial" will not aid the
jury or trier of fact. It is simply not beyond a lay person's understanding that the COVID-19
vaccines had some "benefit." It is not necessary for an expert to provide this information to the
trier of fact. As such, Dr. Salmon's testimony must be excluded under Rule 702.

Next, Dr. Salmon opined:

- mRNA COVID-19 vaccines cannot change someone's DNA (genetic makeup),

- The COVID-19 vaccine developed by Janssen Biotech, Inc. was not an mRNA
  vaccine,

- It was unknown if natural immunity was as effective as the COVID-19 vaccine,

- There was no scientific consensus on how long prior COVID-19 infections would provide protection, and

- Scientific evidence could not predict if antibodies from prior infections would protect against a new strain of COVID-19.

These opinions are irrelevant to the issue at hand. As stated, the issue for the trier of fact is whether it would be an undue hardship for the Defendants to have granted Plaintiff's request for an accommodation to the COVID-19 vaccine based on his sincerely held religious beliefs. Dr. Salmon's expert opinion on the above-identified issues does not provide any evidence either in support or against that determination. As such, this portion of Dr. Salmon's testimony will not assist the trier of fact and must be excluded under Rule 702.

3.  *Role of COVID-19 Vaccination Mandates in Managing Threats of COVID-19 to Patients and Healthcare Workers*

In this section of his expert report, Dr. Salmon opines that COVID-19 posed a threat to patients and staff in healthcare facilities and that mandatory vaccination policies were crucial in protecting both patients and staff. Dr. Salmon then spends a considerable amount of time writing about mandates for flu vaccines. Again, these opinions are irrelevant to the issue at hand. As stated, the issue for the trier of fact is whether it would be an undue hardship for the Defendants to have granted Plaintiff's request for an accommodation to the COVID-19 vaccine Mandate based on his sincerely held religious beliefs. Dr. Salmon's expert opinion on the overall propriety of vaccine mandates is irrelevant. Plaintiff does not challenge the Mandate itself; rather, the Plaintiff, due to sincerely held religious beliefs, sought an exemption from the Mandate and accommodation. As such, this portion of Dr. Salmon's testimony will not assist the trier of fact and must be excluded under Rule 702.

4. _Effect of Non-Medical Exemptions From COVID-19 Vaccination Mandates_

In this section, Dr. Salmon writes that vaccine refusal based on non-medical reasons poses a danger to the community. He offers statistics regarding measles outbreaks and cases of polio occurring because of vaccine refusal and then states that the findings from these studies, involving children, "are very generalizable to non-medical exemptions to COVID-19 vaccine requirements for healthcare workers." Again, this opinion is irrelevant to the issue at hand. As stated, the issue for the trier of fact is whether it would be an undue hardship for the Defendant to have granted Plaintiff's request for an accommodation to the COVID-19 vaccine Mandate based on his sincerely held religious beliefs. Dr. Salmon's expert opinion on how vaccine refusals cause measles outbreaks and polio cases is irrelevant.

**B. TWO REMAINING OPINIONS IN DR. SALMON'S REPORT TO CONSIDER:**

1. _Were The Daily Infection-Control Measures, Such As Health Questionnaires, Temperature Checks, Weekly Testing, Sufficient Safety Measures?_

Upon first blush, one may initially anticipate that this portion of Dr. Salmon's report would apply to the issue herein; namely, whether the Defendants would have suffered an undue hardship if they had provided Plaintiff with an accommodation to the COVID-19 vaccine. However, even a cursory reading of this section indicates that Dr. Salmon does not offer any scientific, technical, or specialized knowledge that would assist the trier of fact in understanding the evidence or determining a fact in issue. Interestingly, Dr. Salmon completely ignores and fails to provide any opinion on the safety measure of masking. He does not even mention masking in his report. Plaintiff asserts that it is undisputed that when an individual wears a properly fitted N95 mask consistently, it provides significant protection from contracting the COVID-19 virus.

Dr. Salmon first opines that "Health questionnaires are self-reported data, which are notoriously inaccurate." No study, foundation, medical experience, or citation is provided to support this opinion. Apparently, Dr. Salmon believes that this is just good old-fashioned common sense. If that is the case, his opinion must be struck because it is certainly not beyond the ability of the average juror. He then opines that even if the person completing the questionnaire is accurate, those responses, along with temperature checks, are only indicative that a "test is warranted." He writes that there are "limitations" to testing because the tests are "imperfect with the potential for both false positives and false negatives. Again, no study, foundation, medical experience, or citation is provided as support for this opinion. No data is provided as to the rate of false positives or false negatives. It is simply a generalized, vague statement that testing is not reliable. Thus, again, because Dr. Salmon does not provide any scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, this opinion must be excluded.

Dr. Salmon further criticizes the use of testing as a safety measure because "regardless of the testing interval, in the time between when a person first became infectious and when the test was taken, there was a risk that the person would infect others." This is, again, common sense, and no expert testimony is required. However, what is interesting is that Dr. Salmon criticizes testing because there is still a "risk" that the asymptomatic person would infect others, but fails to criticize the vaccine on the same basis; specifically, that there is a "risk" for both vaccinated and unvaccinated asymptomatic people to transmit the virus. So, how does the vaccine work any better than testing? Dr. Salmon does not address or answer that question. Dr. Salmon's report should be excluded.

2.    *In Evaluating Requests For Non-Medical Exemptions, Was It Appropriate To Make Distinctions Between More Vulnerable And Less Vulnerable Patient Populations?*

Again, upon first blush, one may initially anticipate that this portion of Dr. Salmon's report would apply to the issue herein; namely, whether the Defendant would have suffered an undue hardship if they had provided Plaintiff with an accommodation to the COVID-19 vaccine. However, in offering his opinion that it would be appropriate for the Defendants to make distinctions between "more vulnerable and less vulnerable" patients to evaluate requests, Dr. Salmon does not provide this Court with any definition of who is "more" vulnerable and who is "less" vulnerable in a hospital. What standards or data provide support to define these terms? Dr. Salmon does not state that the Defendants had a written policy guiding those who determined whether an accommodation would cause an undue hardship to determine who is "more" vulnerable and who is "less" vulnerable. Instead, he writes that "requiring unvaccinated (exempt) staff to work only with less vulnerable patients was based upon well accepted science at the time." No study, foundation, medical experience, or citation is provided to support this opinion. No scientific, technical, or other specialized knowledge was provided to help the trier of fact understand the evidence or determine a fact in issue; nor does Dr. Salmon identify how this opinion is the product of reliable principles and methods. There is simply no evidence in this section of the report reflecting that a reliable application of the (unknown) principles and methods was applied to the facts of this case. This opinion does not meet the requirements of F.R.E. 702 and must be excluded.

## III.    **CONCLUSION**

Plaintiff respectfully requests this Court to deny Defendant's Motion, grant Plaintiff's

Cross-Motion, and enter an Order in the form attached hereto.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, P.C.

By: _____

Kimberly L. Russell, Esquire
Daniel M. Zachariah, Esquire
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA  19422
(610) 941-2541 (phone)
krussell@kaplaw.com
dzachariah@kaplaw.com

**PACIFIC JUSTICE INSTITUTE**

By: */s/ Karyn L. White, Esquire*
Karyn L. White, Esquire
PA/NJ Office P.O. Box 276600
Sacramento, CA 95827
(609) 335-4833 (phone)
kwhite@pji.org

Attorneys for Plaintiff

**Dated:** June 12, 2025

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH S. AUTERI, M.D.                   :
               Plaintiff,        :        No. 2:22-cv-03384
                         :
     v.                                 :
                         :
VIA AFFILIATES, d/b/a                      :
DOYLESTOWN HEALTH                          :
PHYSICIANS                                 :
             Defendant.       :

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing "Plaintiff's Response to Defendant's Motion

to Exclude the Report and Testimony of Dr. Peter Mccullough with Plaintiff's Cross Motion to

Exclude the Report and Testimony of Dr. Daniel Salmon, Ph.D., MPH," together with supporting

Memorandum of Law, was caused to be sent electronically through the Court's ECF system to:

Christopher D. Durham, Esquire
Adam Brown, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Attorneys for Defendant

KAPLIN STEWART MELOFF REITER & STEIN, P.C.

By: _____
     Kimberly L. Russell, Esquire
     910 Harvest Drive
     P.O. Box 3037
     Blue Bell, PA 19422
     (610) 941-2541 (phone)
     (610) 684-2026 (fax)
     krussell@kaplaw.com

     Attorneys for Plaintiff

**Dated:** June 12, 2025