**EXHIBIT "10"**
*Glover v. The Children's Hospital of Philadelphia,*
*2024 WL 290421 (May 29, 2025)*

2025 WL 1527494
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Donald GLOVER, Plaintiff,
v.
The CHILDREN'S HOSPITAL
OF PHILADELPHIA, Defendant.

CIVIL ACTION NO. 23-0463
|
Filed May 29, 2025

**Attorneys and Law Firms**

David S. Dessen, Dessen Moses & Rossitto, Willow Grove, PA, for Plaintiff.

Charlene A. Barker, Joseph J. Centeno, Michael Edward Truncellito, Buchanan Ingersoll & Rooney PC, Philadelphia, PA, Jared Pickell, Fisher & Phillips LLP, Philadelphia, PA, Shareda P. Coleman, Saul Ewing LLP, Philadelphia, PA, for Defendant.

## OPINION

Slomsky, District Judge

### I. INTRODUCTION

**\*1** This case arises from the termination of Plaintiff Donald Glover's ("Plaintiff") employment with Defendant the Children's Hospital of Philadelphia ("Defendant" or "CHOP"). Starting in December 2017, Plaintiff was employed by Defendant as a supervisor in its Biomedical Engineering Department. (Doc. No. 1 at 3.) In August 2021, in response to the COVID-19 pandemic, Defendant mandated that its employees be vaccinated unless they were exempt for religious or other reasons. (Id. at 5.) Plaintiff requested a religious exemption, claiming his religious beliefs prevented him from receiving the vaccine. (See id.) Defendant disagreed and denied Plaintiff's request for an exemption from the vaccine mandate. (See id.) Plaintiff appealed Defendant's denial of his exemption request. But Defendant subsequently denied the appeal. (See id. at 6.) In November 2021, after Plaintiff still refused to be vaccinated, Defendant terminated Plaintiff's employment. (See id. at 7.)

On February 6, 2023, Plaintiff filed a Complaint against Defendant, alleging religious discrimination claims under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA") for the alleged failure to accommodate Plaintiff's religious beliefs. (See generally id.) On April 7, 2025, Defendant filed a Motion for Summary Judgment, arguing that it is entitled to judgment as a matter of law because Plaintiff cannot establish a prima facie case of religious discrimination and, even if he could, Defendant proved as a matter of law that it would have suffered undue hardship if it had granted Plaintiff's exemption request. (Doc. No. 48.) Because there is a genuine dispute of material fact on these issues, Defendant's Motion for Summary Judgment (Doc. No. 48) will be denied.

### II. BACKGROUND

#### A. Factual Background

This Court previously summarized the facts of the case as follows:

On December 17, 2017, Defendant CHOP hired Plaintiff as a supervisor in the Biomedical Engineering Department. (Doc. No. 1 at 3.) Plaintiff worked in CHOP's University City medical facilities. (Doc. No. 8-1 at 8.) On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. (See id. at 2.) On March 13, 2020, ... President Donald Trump declared COVID-19 a national emergency. (See id.) On August 3, 2021, CHOP's Chief Executive Officer ("CEO") issued a vaccine mandate which required all employees to be fully vaccinated against COVID-19 by October 20, 2021. (Id. at 7.) On August 23, 2021, CHOP implemented a Standard Operating Procedure ("SOP") for handling requests for religious exemptions and accommodations to the mandate. (Doc. No. 1 at 5.) CHOP employees seeking a medical or religious exemption were required to file their requests by September 15, 2021. (Id. at 4.)

On September 9, 2021, Plaintiff submitted a Religious Accommodation Request form to CHOP. (See id. at 5.) In the request, Plaintiff sought an exemption from taking the vaccine [for religious reasons] and [requested] no other alternative accommodations. (See id. at 25.) Plaintiff provided [the following religious] reasons in support of the sought-after exemption:

**\*2** [i]t is my sincere religious [belief] that the whole world has entered a PROPHETIC TIMELINE based on the book of REVELATIONS 6th Chapter and the

> 2nd verse, of the HOLY Bible, Which states "And I looked and behold, a white horse. He who sat on it had a BOW; and a CROWN was given to him, and he went out conquering and to conquer. The BOW is the vaccine and BOW translates to POISON in the GREEK. And CROWN is another word for CORONA as in CORONA VIRUS. Hence, I believe the vaccine to be TOXIC ... Vaccine was made at WARP speed, Vaccine is an experiment and risk benefit is not favorable. [1]

(Id. at 2, 25-26.) In his request, Plaintiff also stated that he was a practicing Christian for twenty years and affiliated with Church International since December, 2020. (See id. at 26.) In his request, Plaintiff also acknowledged that he had not previously sought exemptions for other vaccines, including the Influenza ("Flu") vaccine, which was annually required of all CHOP employees. (Doc. No. 1 at 25, Doc. No. 8-1 at 11.)

On September 22, 2021, Defendant denied Plaintiff's request for an exemption because Plaintiff did not "sufficiently demonstrate that the sincerely held religious belief prohibits vaccination." (Doc. No. 1 at 5, 28.) Plaintiff was permitted to file an appeal of Defendant's decision by September 25, 2021. (Id.) On September 22, 2022, Plaintiff timely filed an appeal. (Id. at 5-6.)

In his appeal, Plaintiff cited several reasons why Defendant should grant him a religious exemption to the vaccine mandate. (See id. at 30-32.) First, Plaintiff averred that aborted fetal cells were used in the development of the vaccine, and he believes that abortion is "gravely wrong" because the Bible instructs that murder is a sin. (Id. at 4, 30.) He asserted that taking the vaccine would go against his beliefs that his body is "God's temple" because the vaccine is "unclean." (Id. at 4.) Specifically, he stated that:

> I sincerely believe that all human beings are made in the image of God, and this idea affirms the unique value of all human life. The sixth commandment says "You shall not murder" (Exodus 20:13), I believe that abortion is gravely wrong at every stage. Furthermore, I believe a physical body is given to each of us in our quest to fulfill our destiny and purpose here on earth. Specifically the New Testament teaches that: "Don't you know that you yourselves are Gods temple and that God's Spirit dwells in your mist?" (1 Corinthians 3:16) "If anyone destroys Gods temple, God will destroy that person; for Gods temple is sacred, and you together are that temple" (1 Corinthians 3:17).

> The Pfizer and Moderna COVID-19 vaccines in early development of mRNA vaccine technology used fetal cells for "proof of concept" (to demonstrate how a cell could take up mRNA and produce the SARS-COV-2 Spike protein) or to characterize the SARS-Cov-2 spike protein. The non-replicating viral vector 14 Complaint, Exhibit E. Case 2:23-cv-00463-JHS Document 8-1 Filed 05/12/23 Page 12 of 24 9 vaccine produced by Johnson& Johnson required the use of fetal cell cultures, Specifically PER.CG, in order to produce and manufacture the vaccine. This mechanism for altering my God given body is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Covid-19 vaccines to me are unclean. I believe in and follow God and the principles laid out in his Words and I have a deeply held belief that these vaccines violate them.

(Id. at 4, 30-33.)

Second, Plaintiff alleged that "he is being discriminated against because [he] refuse[s] to take an experimental vaccine." (Id. at 31.) In support of this contention, Plaintiff argued that "just as important, if not more, are my Constitutional rights as an American citizen, which affords me equal protection under the law according to the 14th Amendment." (Id.) Because Plaintiff suggested that other effective, yet unpublicized treatments for COVID-19 existed, he asserted that "something else sinister is going on." (Id.) Third, Plaintiff stated that the vaccine is unnecessary because other treatments exist, such as hydroxychloroquine,[2] and the "low fatality rates" of COVID-19 mean that "there should be no need for anyone to worry about dying from the coronavirus." (Id. at 32.)

**\*3** On October 11, 2021, Defendant denied Plaintiff's appeal. (Id. at 34.) In support of its denial, Defendant stated that "the evidence provided does not support your assertion that your belief is religious in nature ... [or] sincerely held." (Id.) As Defendant stated further:

> ... [y]ou have expressed that your constitutional right not to take a vaccine you view as experimental, is more important than a religious objection. And that the refusal to make public known and well-documented treatments, such as hydroxychloroquine (which has been disapproved as a treatment), 'suggests something sinister is going on.' The vaccines were initially EUA [Emergency Use Authorization], but much has been

learned over the course of this epidemic, and the Pfizer-BioNTech is now fully authorized by the FDA [United States Food and Drug Administration].

(Id.) Consequently, Defendant informed Plaintiff that he must be vaccinated against COVID-19 to remain employed at CHOP. (Id.) Plaintiff did not comply, and on November 8, 2021, Defendant terminated Plaintiff's employment. (Id. at 7.)

On August 4, 2022, Plaintiff filed a signed charge of religious discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant violated Title VII when it denied Plaintiff a religious-based exemption from the vaccine mandate. (Doc. No. 1 at 6.) On November 30, 2022, the EEOC issued to Plaintiff a letter informing him of his right to sue Defendant on this claim. (Id.)

(Doc. No. 24 at 2-5.)

**B. Procedural Background**

As mentioned above, on February 6, 2023, Plaintiff filed a Complaint against Defendant, bringing claims under Title VII of the Civil Rights Act and the PHRA for Defendant's alleged failure to accommodate Plaintiff's religious beliefs. (Doc. No. 1.) On May 12, 2023, Defendant filed a Motion to Dismiss the Complaint. (Doc. No. 8.) On January 25, 2024, the Court issued an Opinion and Order denying Defendant's Motion to Dismiss the Complaint. (Doc. Nos. 24, 25.) Thereafter, on February 8, 2024, Defendant filed an Answer to the Complaint. (Doc. No. 27.)

On March 18, 2025, Defendant filed a Motion for Summary Judgment. (Doc. No. 48.) On April 7, 2025, Plaintiff filed a Response in Opposition. (Doc. No. 49.) On April 14, 2025, Defendant filed a Reply in Support of its Motion. (Doc. No. 51.) Defendant's Motion for Summary Judgment (Doc. No. 48) is now ripe for disposition.

**III. STANDARD OF REVIEW**

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). "A dispute 'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.' " Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). A disputed fact "is material only if it might affect the outcome of the suit under governing law." Id. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011) (quoting Azur, 601 F.3d at 216). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.' " Range v. AG United States, 53 F.4th 262, 269 (3d Cir. 2022) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

**\*4** In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

**IV. ANALYSIS**

Defendant moves for summary judgment on Plaintiff's religious discrimination claims under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"). Under Title VII, a plaintiff may assert two

forms of religious discrimination: failure to accommodate and disparate treatment. See [Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 281 (3d Cir. 2001)](). Here, Plaintiff's religious discrimination claims appear to be asserted under the theory of failure to accommodate. (See Doc. No. 1 (discussing Defendant's denial of Plaintiff's request for a religious accommodation); see also Doc. No. 49-1 (arguing that there is a genuine dispute of material fact as to whether Plaintiff established a prima facie case of religious discrimination based on a failure to accommodate).)

To establish a prima facie case of religious discrimination based on a failure to accommodate under Title VII and the PHRA, a plaintiff must prove the following elements: (1) he held a sincere religious belief that conflicted with a job requirement; (2) he informed his employer of the conflict; and (3) he was disciplined for failing to comply with the conflicting requirement. See [Fallon v. Mercy Cath. Med. Ctr. of Se. Pa., 877 F.3d 487, 490 (3d Cir. 2017)](); see also [Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006)]() ("Claims under the PHRA are interpreted coextensively with Title VII claims."). Once the plaintiff establishes a prima facie case of discrimination, the burden of proof shifts to the defendant to "show either [that] it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the [defendant] and its business." [Webb v. City of Phila., 562 F.3d 256, 259 (3d Cir. 2009)](). If the defendant meets this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's reason for the employment action was mere pretext. [McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973)]().

In the instant case, Defendant only challenges Plaintiff's ability to establish the first element of a prima facie case of religious discrimination, arguing it is entitled to judgment as a matter of law because Plaintiff cannot show that his beliefs were religious nor that they were sincerely held. (Doc. No. 48-1 at 10-20.) Moreover, even if Plaintiff were able to establish a prima facie case of religious discrimination, Defendant argues that allowing Plaintiff to continue working at CHOP while unvaccinated would have created an undue hardship for Defendant. (Id. at 20.) The Court will address each argument in turn.

**A. A Genuine Dispute of Material Fact Exists as to Whether Plaintiff's Beliefs Are Religious**

First, Defendant argues that Plaintiff cannot establish a prima facie case of religious discrimination because he cannot show that the reasons he cited in his vaccine exemption request are based on his religious beliefs. When determining whether beliefs are religious, the Third Circuit Court of Appeals has considered whether the belief: (1) "addresses fundamental and ultimate questions having to do with deep and imponderable matters," (2) is "comprehensive in nature," and (3) is "accompanied by 'certain formal and external signs.' " [Africa v. Commonw. of Pa., 662 F.2d 1025, 1032 (3d Cir. 1981)]().

*5 Concerning the first Africa factor, "beliefs address fundamental and ultimate questions when they consider and attempt to come to terms with what could best be described as ultimate questions—questions having to do with, among other things, life and death, right and wrong, good and evil." [Kennedy v. PEI-Genesis, 719 F. Supp. 3d 412, 417 (E.D. Pa. 2024)]() (citing [Africa, 662 F.2d at 1033](). Concerning the second Africa factor, "beliefs are comprehensive in nature when they 'consist of something more than a number of isolated, unconnected ideas.' " Id. (citing [Africa, 662 F.2d at 1035](). Religious beliefs are not "generally confined to one question or one moral teaching; [they] ha[ve] a broader scope. [They] lay[ ] claim to an ultimate and comprehensive 'truth.' " [Africa, 662 F.2d at 1035](). Concerning the third Africa factor, "courts look to formal, external, or surface signs that may be analogized to accepted religions, like formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays, and other manifestations associated with traditional religions." [Kennedy, 719 F. Supp. 3d at 417]().

Here, there is a genuine dispute of material fact concerning whether the beliefs Plaintiff cited in his exemption request are religious. Defendant argues that Plaintiff's answers on the initial exemption request form reveal that his objection to receiving the COVID-19 vaccine was not based on his religious beliefs but rather on his personal beliefs that the vaccine "was toxic, unsafe, dangerous, experimental, made at warp speed, and part of a 'sinister' plot." (Doc. No. 48-1 at 16.) On the initial exemption request form, however, Plaintiff explained that his opposition to receiving the COVID-19 vaccine stems from his Christian faith and the teachings of the Bible. (See Doc. No. 1 at 25-26.) Specifically, Plaintiff

stated that he is Christian and has been practicing this religion for twenty (20) years. (Id. at 26.) He further indicated that he has been affiliated with Church International since December 2020. (Id.) He also explained that his objection to receiving the COVID-19 vaccine is based on the Bible, stating the following:

> It is my sincere religious [belief] that the whole world has entered a PROPHETIC TIMELINE based on the book of REVELATIONS 6th chapter and the 2nd verse, of the HOLY Bible, Which states "And I looked and behold, A white horse. He who sat on it had a BOW; and a CROWN was given to him, and he went out conquering and to conquer. The BOW is the vaccine and BOW translates to POISON in the GREEK. And CROWN is another word for CORONA as in CORONA VIRUS. Hence, I believe the vaccine to be TOXIC.

(Id. at 25.)

Moreover, in his appeal of CHOP's denial of his initial exemption request, Plaintiff cited additional reasons he believed that receiving the COVID-19 vaccine went against his Christian beliefs. (See id. at 30-32.) For example, he explained that the purported use of aborted fetal cells during the vaccine's development went against his religion because the Bible teaches that abortion is murder and thus "gravely wrong." (Id. at 4, 30.) He also stated that receiving the vaccine would further go against his religious beliefs because the Bible teaches that his body is "God's temple" and because the vaccine is "unclean." (Id.)

Through these explanations, Plaintiff has satisfied the Africa factors. First, his beliefs address fundamental and ultimate questions of life and death, right and wrong, and good and evil. For example, one reason he cites to explain his aversion to receiving the COVID-19 vaccine is his belief that abortion is murder and thus "gravely wrong." Second, his beliefs are comprehensive in nature in that the religious reasons he cited in his exemption request and appeal are based on teachings from the Bible. These beliefs are not "a number of isolated, unconnected ideas," but rather stem from Plaintiff's reading of the Bible. Finally, Plaintiff's beliefs are accompanied by formal and external signs that may be analogized to an accepted religion. For instance, he indicated on his initial exemption request form that he has been Christian for twenty (20) years and has been affiliated with Church International since December 2020. Thus, by satisfying the Africa factors, Plaintiff's beliefs are considered religious for the purpose of his religious discrimination claims.

**\*6** Defendant argues to the contrary that Plaintiff's beliefs are not religious because, in addition to citing religious reasons for his opposition to receiving the COVID-19 vaccine, Plaintiff also cites nonreligious reasons. (See id. at 26.) For example, Plaintiff wrote in his initial exemption request that he did not want to receive the vaccine because it "was ma[d]e at WARP speed," "is an experiment," and the "risk benefit ratio is not favorable." (Id.) But whether the additional, nonreligious reasons cited by Plaintiff nullify the religious reasons he cited is a question of credibility for a jury to decide. As it stands on the instant Motion for Summary Judgment, a reasonable jury may well interpret Plaintiff's objections to the COVID-19 vaccine as stemming from his Christian faith. Accordingly, there is a genuine dispute of material fact concerning whether the beliefs Plaintiff cited in his exemption request are religious.

**B. A Genuine Dispute of Material Fact Exists as to Whether Plaintiff's Religious Beliefs Are Sincerely Held**

Next, Defendant argues that Plaintiff cannot establish a prima facie case of religious discrimination because he cannot show that his religious beliefs are sincerely held. "While courts may not inquire into the verity of a religious belief, it is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity of someone's religious beliefs in both the free exercise context, and the Title VII context." Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 137 (3d Cir. 1986) (quotation marks and citation omitted).

Here, there is a genuine dispute of material fact as to whether Plaintiff's religious beliefs are sincerely held. Defendant argues that Plaintiff's beliefs are not sincerely held due to his "inconsistent positions with respect to vaccines generally and fetal cells within medicines, as well as because [Plaintiff] did not develop a belief regarding fetal cells and vaccines until CHOP issued its [vaccine] mandate[.]" (Doc. No. 48-1 at 20.) But, as above, this argument goes more to Plaintiff's credibility, which is a determination best left for a jury. See Sturgill v. Am. Red Cross, No. 22-cv-11837, 2025 WL 475839, at \*5 (E.D. Mich. 2025) ("A reasonable jury that made all credibility determinations in [the plaintiff's] favor would conclude from [this evidence] that she opposed [the defendant's] vaccine mandate for religious reasons ... Concluding otherwise would require an impermissible credibility determination.")

At the summary judgment stage, because Plaintiff is the nonmoving party, the Court must accept Plaintiff's evidence and draw all justifiable inferences in Plaintiff's favor. Drawing such inferences, a reasonable jury could look to Plaintiff's 20 years of practicing Christianity, his affiliation with Church International, and his references to the Bible when explaining his opposition to receiving the COVID-19 vaccine and conclude that his Christian beliefs are sincerely held. Accordingly, there is a genuine dispute of material fact concerning whether Plaintiff's religious beliefs are sincerely held.

### C. A Genuine Dispute of Material Fact Exists as to Whether Allowing Plaintiff to Continue Working at CHOP Would Have Created Undue Hardship for Defendant

Finally, Defendant argues that even if Plaintiff can demonstrate a prima facie case of religious discrimination, it has established as a matter of law that granting Plaintiff's exemption request would have created undue hardship for Defendant. (See Doc. No. 48-1 at 20.) To establish undue hardship, an employer must demonstrate that a proposed accommodation would impose a substantial burden on their overall business operations. Groff v. DeJoy, 600 U.S. 447, 468 (2023).

Here, Defendant contends that because Plaintiff worked in a hospital, "[a]llowing [him] to work unvaccinated in 2021, amidst the surge of the Delta variant and ongoing pandemic challenges, would have imposed an undue hardship on CHOP by exposing its patients and their families, as well as CHOP coworkers, to COVID-19." (Doc. No. 48-1 at 20.) Each employee who Defendant exempted from its vaccine mandate was required to follow CHOP's accommodation policy, including "physical distancing, testing twice weekly, completing the daily symptom tracker and wearing a CHOP provided surgical mask." (Id. at 12.) Despite its accommodation policy, Defendant argues that granting Plaintiff an exemption from its vaccine mandate and allowing Plaintiff the accommodation would have been a substantial burden on CHOP's business because Plaintiff's job involved interacting with patients.

*7 Plaintiff argues to the contrary that granting him a religious exemption from CHOP's COVID-19 vaccine mandate would not have been a substantial burden on Defendant's business because Defendant granted religious exemptions to other CHOP employees who worked directly with patients. (See Doc. No. 49-1 at 11.) As mentioned above, Plaintiff was a supervisor in the Biomedical Engineering Department at CHOP's University City medical facilities. As part of his job, Plaintiff would interact with patients, including entering high risk patient rooms. (See Doc. No. 48-1 at 21.) However, among the CHOP employees who received exemptions from the vaccine mandate were various nurses including a clinical nurse working in CHOP's neonatal intensive care unit, a physician assistant working in CHOP's surgical services department, and a clinical nurse working in CHOP's emergency department. (See Doc. No. 49-1 at 13.) Thus, even though Plaintiff's job at CHOP involved some patient interaction, Defendant seemingly had no qualms about granting exemptions to other employees whose jobs also involved interacting with patients. Despite this difference, Defendant maintains that exempting Plaintiff from its vaccine policy would have caused it undue hardship because Plaintiff worked a patient-facing job. (See Doc. No. 51 at 9.) Accordingly, there is a genuine dispute of material fact over whether granting Plaintiff an exemption to its vaccine mandate would have created undue hardship for Defendant.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 48) will be denied. An appropriate Order follows.

**All Citations**

Slip Copy, 2025 WL 1527494

---

**Footnotes**

| 1 | Errors in capitalization and punctuation are in the original. |

| | |
|---|---|
| 2 | Hydroxychloroquine is a medicine used to treat malaria and auto-immune disorders, such as lupus. See 🚩 Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin., 479 F. Supp. 3d 570, 574 (W.D. Mich. 2020), aff'd sub nom. 🚩 Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin., 13 F.4th 531 (6th Cir. 2021). |

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.