IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH S. AUTERI, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 2:22-cv-03384 |
| VIA AFFILIATES d/b/a DOYLESTOWN HEALTH PHYSICIANS, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION .................................................................................................1

II.     LEGAL ARGUMENT.........................................................................................2

        A.      Plaintiff Has Failed to Identify an Issue of Material Fact as to Whether the
                Stated Beliefs on Which He Based His Exemption Request Are Religious
                in Nature......................................................................................................... 2

                1.      Doylestown Health Did Not Waive Its Ability to Challenge Whether
                        Plaintiff's Stated Belief Is Religious............................................................. 2

                2.      The Beliefs Plaintiff Stated in the Religious Exemption Request and in His
                        Deposition Are Not Religious as a Matter of Law. .................................... 4

                3.      Plaintiff's Numerous Personal, Secular, and Medical Objections to
                        COVID-19 Vaccines Over the Course of Months in Various Contexts
                        Reinforce That His Exemption Request Was Not Based on a Religious
                        Belief............................................................................................................. 7

        B.      No Genuine Issue of Material Fact Exists as to Whether Allowing Plaintiff
                to Perform Heart Surgery on Cardiac Patients Would Have Caused
                Doylestown Health an Undue Hardship. ................................................. 9

                1.      Recent, Dispositive Case Law Applying the Undue Hardship Defense
                        Requires Summary Judgment for Doylestown Health............................ 10

                2.      Doylestown Health Was Not Required to "Assess Individual
                        Accommodations" or Review "Other Options" for Allowing Plaintiff to
                        Perform Heart Surgery on Vulnerable Patients While Unvaccinated....... 14

        C.      Plaintiff's Arguments Regarding McDonnell Douglas Burden-Shifting,
                Alleged Discriminatory Motive, and Pretext Are Inapplicable and
                Irrelevant to His Failure-to-Accommodate Claim. ................................ 16

III.    CONCLUSION.................................................................................................20

## **TABLE OF AUTHORITIES**

*Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981) .....................................................9

*Angelini v. U.S. Facilities, Inc.*, No. CV 17-4133, 2018 WL 3155995
    (E.D. Pa. June 27, 2018) ...........................................................................................16

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-CV-5734, 2022 WL 507479
    (E.D. Pa. Feb. 18, 2022)....................................................................................... 2-3, 8

*Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164 (E.D. Pa. 2023),
    *aff'd*, No. 24-1117, 2025 WL 1078135 (3d Cir. Apr. 10, 2025) ...........................12

*Bushra v. Main Line Health, Inc.*, No. 24-1117, 2025 WL 1078135
    (3d Cir. Apr. 10, 2025)....................................................................................*Passim*

*Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115 (9th Cir. 2000)..........18

*Davis. v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008).............................................18

*Dykzeul v. Charter Commc'ns, Inc.*, No. CV 18-05826, 2019 WL 8198218
    (C.D. Cal. Nov. 18, 2019)........................................................................................17

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)................................19

*Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pa.*, 877 F.3d 487 (3d Cir. 2017) ................9

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ...........................................................18

*Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-CV-01092 (APM),
    2024 WL 1810621 (D.D.C. Jan. 18, 2024)...............................................................3

*Glover v. Children's Hospital of Philadelphia,* No. CV 2:23-CV-0463, 2024 WL 290421
    (E.D. Pa. Jan. 25, 2024) .......................................................................................... 6-7

*Groff v. DeJoy*, 600 U.S. 447 (2023) ............................................................... 10, 14-15

*Hailey v. Legacy Health*, No. 3:23-CV-00149-IM, 2024 WL 4253238
    (D. Or. Sept. 20, 2024)..............................................................................................16

*Hand v. Bayhealth Med. Ctr., Inc.*, No. CV 22-1548-RGA, 2024 WL 359245 (D. Del.
    Jan. 31, 2024), *aff'd sub nom. McDowell v. Bayhealth Med. Ctr., Inc.*, No. 24-1157,
    2024 WL 4799870 (3d Cir. Nov. 15, 2024)..............................................................6

*Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017 (D. Or. 2008)................................18

*Krone v. Legacy Health*, No. 3:22-CV-01986-AR, 2025 WL 1582793
    (D. Or. May 6, 2025) ....................................................................................... 15, 17-18

*Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135 (D. Or. 2024)......................................17

*MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-CV-01942-IM, 2024 WL 3316199
    (D. Or. July 5, 2024) ..........................................................................................17

*Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136 (N.D. Cal. 2019).......................................18

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................. 1, 16-17

*McDowell v. Bayhealth Med. Ctr., Inc.*, No. 24-1157, 2024 WL 4799870
    (3d Cir. Nov. 15, 2024)...................................................................................5, 7, 9

*McKinley v. Princeton Univ.*, No. 22-CV-5069, 2023 WL 8374486
    (D.N.J. Dec. 1, 2023) ..........................................................................................5

*Meinert v. Port Authority of Allegheny Cnty.*, No. 2:22-CV-01736-RJC,
    2024 WL 4304559 (W.D. Pa. Sept. 26, 2024)...........................................................3

*O'Hailpin v. Hawaiian Airlines, Inc.*, No. CV 22-00532, HG-WRP, 2025 WL 1543951
    (D. Haw. May 30, 2025) ......................................................................................17

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005 (7th Cir. 2024) ...........................................................9

*Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 WL 643543
    (E.D. Pa. Feb. 15, 2024)......................................................................................5

*Saqa v. Factory Mut. Ins. Co.*, No. CV 23-3994 (SDW) (JBC), 2024 WL 939689
    (D.N.J. Mar. 5, 2024) ..........................................................................................8

*Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231 (M.D. Fla. 2024) ........................................3

*Shields v. Main Line Hosps., Inc.*, 700 F. Supp. 3d 265 (E.D. Pa. 2023) ......................................7

*Slattery v. Main Line Health, Inc.*, No. 22-4994, 2025 WL 1758616
    (E.D. Pa. June 25, 2025) ...............................................................................*Passim*

*Smith v. City of Atl. City*, 138 F.4th 759 (3d Cir. 2025) ............................................................10

*Snow v. Women's Healthcare Assocs., LLC*, No. 3:23-CV-01393-IM, 2024 WL 3640111
    (D. Or. Aug. 2, 2024)...................................................................................... 18-19

*Trinh v. Shriners Hospitals for Children*, No. 3:22-CV-01999-SB, 2024 WL 4356501
    (D. Or. Sept. 27, 2024)................................................................................... 14-15

*United States v. Seeger*, 380 U.S. 163 (1965)............................................................................6

*Witham v. Hershey Co.*, No. 23-CV-1563, 2024 WL 4053028 (D. Minn. Sept. 5, 2024)
    ..............................................................................................................17, 19

## I.    INTRODUCTION

Doylestown Health[1] has established multiple bases for summary judgment in this case. In response, Plaintiff has identified no genuine disputes of material fact, instead relying entirely on red herrings, straw men, and self-serving misstatements of law.  The Court should reject Plaintiff's arguments and grant judgment in Doylestown Health's favor.

*First*, Third Circuit jurisprudence is clear that the beliefs Plaintiff identifies as the bases for his Religious Exemption Request are not religious as a matter of law.  Courts repeatedly have rejected the arguments on which Plaintiff relies in this case, including in an on-point decision this Court issued the week prior to this filing.

*Second*, the record is clear and undisputed that allowing Plaintiff to perform surgery on vulnerable heart patients while unvaccinated would have imposed an undue hardship on Doylestown Health.  The Third Circuit has spoken on this issue in a case on all fours with this one, and the aforementioned, just-issued decision of this Court now has applied and reaffirmed the Third Circuit's analysis in another case involving nearly identical facts.  That analysis compels a determination of undue hardship, which is a complete defense to Plaintiff's claims.

*Third*, the Court must reject Plaintiff's attempt to invent a legal framework for evaluating failure-to-accommodate claims that conflates them with disparate treatment claims.  Courts have recognized decisively that the two are distinct and that concepts such as *McDonnell Douglas* burden-shifting, analysis of alleged discriminatory motives, and pretext *do not apply* to failure-to-accommodate claims.  A cursory review of the relevant case law is all that is necessary to dispose of this erroneous argument.

---

[1] Capitalized terms herein have the same meanings as defined in Defendant's opening Memorandum of Law (ECF No. 40; "Def.'s Mem. of Law").

There is no genuine issue of material fact as to whether Plaintiff's stated beliefs were religious, nor is there any such issue as to whether Plaintiff's requested accommodation would impose an undue hardship.  The Court should grant summary judgment for Doylestown Health.

## II.    LEGAL ARGUMENT

### A.    Plaintiff Has Failed to Identify an Issue of Material Fact as to Whether the Stated Beliefs on Which He Based His Exemption Request Are Religious in Nature.

"'[A]nti-vaccination beliefs' themselves 'are not religious' and, therefore, are not entitled to accommodation under Title VII." *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-CV-5734, 2022 WL 507479, at *4 (E.D. Pa. Feb. 18, 2022) (quoting *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pa.*, 877 F.3d 487, 492 (3d Cir. 2017)).  Plaintiff's stated "religious" beliefs are, at bottom, nothing more than anti-vaccination beliefs, and Doylestown Health had no obligation to accommodate such beliefs.  Plaintiff implicitly recognizes this in his response and attempts to divert the Court's attention by, among other things, arguing that Defendant waived its right to argue that Plaintiff's stated beliefs are not religious, insisting that the Court must ignore his repeated secular and medical objections to COVID-19 vaccination, and improperly attempting to augment a factual record that is fatal to his claims.  The Court should reject these arguments.

#### 1.    Doylestown Health Did Not Waive Its Ability to Challenge Whether Plaintiff's Stated Belief Is Religious.

Plaintiff asserts that Doylestown Health "waived" its right to challenge the non-religious nature of the alleged belief that is the basis for his failure-to-accommodate claim.  Pl.'s Mem. of Law 1, 21-22.  Plaintiff identifies two parts of the record as support for this assertion: (1) Doylestown Health's "written denial of [his] request for accommodation," which Plaintiff says "failed to assert such a claim" (*id.* at 1); and (2) testimony that, according to Plaintiff, indicates

2

that certain Doylestown Health representatives were "aware that [Plaintiff] was a Christian and did not question the sincerity of [his] Christian beliefs" (*id.* at 21-22). Plaintiff cites no authority whatsoever for his waiver argument, and it is legally and factually wrong.

The Western District of Pennsylvania recently rejected this very same argument by the plaintiffs in a Title VII case involving claims that an employer unlawfully failed to accommodate the plaintiffs' alleged religious beliefs by exempting them from a COVID-19 vaccination mandate. *Meinert v. Port Authority of Allegheny Cnty.*, No. 2:22-CV-01736-RJC, 2024 WL 4304559, at *4-*5 (W.D. Pa. Sept. 26, 2024). Just like Plaintiff here, the plaintiffs in *Meinert* argued waiver of the employer's ability to challenge the religious nature of the alleged belief, "rely[ing] on prelitigation statements made during their exemption process that [the employer] was not questioning the sincerity or validity of Plaintiffs' religious beliefs when denying Plaintiffs' religious exemptions." *Id.* at *4. The court noted that, like Plaintiff here, "Plaintiffs have not identified any authority by which the Court could find that a defendant's prelitigation statements prevent the defendant from contesting an element of the case that the Plaintiffs themselves must prove." *Id.* Thus, the court held that no waiver had occurred. *Id.* at *5.[2]

In any event, Doylestown Health reserved its right to make this argument. Its initial written denial of Plaintiff's Religious Exemption Request, in an October 22, 2021 letter from

---

[2] Other courts consistently have reached the same conclusion. *See Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-CV-01092 (APM), 2024 WL 1810621, at *1 (D.D.C. Jan. 18, 2024) (rejecting waiver argument in same context, noting "Plaintiff cites no case to support the novel proposition that prelitigation statements of a party as to an element of a claim can foreclose a party from contesting that element in litigation"); *Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231, 1241 (M.D. Fla. 2024) ("While [employer] seemed to assume that [employee] religious beliefs were sincerely held before denying her request for religious accommodation, [employer] has not waived its ability to challenge this element in this Court[.]"). Plaintiff cites no contrary authority.

Barbara Hebel (Def.'s Mem. of Law, Ex. 28 at D0000146), did not address the sincerity or

religiosity of Plaintiff's stated belief only because, as Ms. Hebel's declaration explains:

> In considering religious exemption requests, I did not seek to make any factual
> determination as to whether the stated religious belief was sincerely held. Nor did
> I assess whether the stated belief would qualify as religious under applicable law.
> Rather, if the request on its face asserted a basis for seeking an exemption from the
> Mandate that could reasonably be construed as religious, *I assumed, solely for*
> *purposes of considering the request, that the stated belief was religious*.

Def.'s Mem. of Law, Hebel Decl. ¶ 12 (emphasis added).  Defendant's counsel later reiterated

that Defendant was only *assuming*, for purposes of Plaintiff's accommodation request, that his

purported belief was both sincere and religious, without any waiver.  *Id.*, Ex. 30 at D0000826.

Against this backdrop, testimony that Plaintiff characterizes as showing that Dr. Levy and

Mr. Brexler "knew" Plaintiff was a Christian (Pl.'s Mem. of Law 22) is irrelevant to this case

and certainly immaterial to this Motion.  See Def.'s Mem. of Law 26 ("While Defendant does

not question whether Plaintiff is a 'follower of Christ,' his *general* religiosity is immaterial

here.") (emphasis in original).  Accordingly, the fact that Doylestown Health representatives

"knew" Plaintiff held religious beliefs also does not support any waiver argument.

### 2.    The Beliefs Plaintiff Stated in the Religious Exemption Request and in His Deposition Are Not Religious as a Matter of Law.

The sole belief Plaintiff articulated to Doylestown Health in the Religious Exemption

Request is that his "body belongs to God and is the temple of his Holy Spirit."  Def.'s Mem. of

Law, Ex. 16 at D0000152.  Plaintiff also has claimed in this litigation that the request was based

in part on an objection to mRNA vaccines, which he maintains are "trying to change [his] DNA"

and, therefore, according to his testimony, are not "consistent with [his] religious belief that we

shouldn't mess with people's DNA."  Def.'s Mem. of Law, Ex. 3, Pl. Dep. 313:12-315:3.

The Third Circuit has held squarely that, for purposes of a failure-to-accommodate claim

involving a requested religious exemption from an employer's COVID-19 vaccination mandate,

an employee's assertion that "bodies are G-d's temples, and that receiving the vaccine violates that religious teaching" does not qualify as a religious belief entitled to protection under Title VII. *McDowell v. Bayhealth Med. Ctr., Inc.*, No. 24-1157, 2024 WL 4799870, at *3 (3d Cir. Nov. 15, 2024).[3] Plaintiff does not even address this authority, effectively conceding the point.

Nor, as a matter of law and as this Court *just confirmed*, do Plaintiff's purported beliefs about mRNA vaccines qualify as religious under Title VII. *Slattery v. Main Line Health, Inc.*, No. 22-4994, 2025 WL 1758616, at *4 (E.D. Pa. June 25, 2025). In *Slattery*, the plaintiff-doctor articulated nearly the *exact same* purported beliefs about mRNA vaccines that Plaintiff does here: "that that the COVID-19 vaccine does not 'use the same technology' as other vaccines," that "the medical technology used to develop the 'mRNA vaccines' . . . allegedly 'permanently alter[s] each person's cellular makeup,'" and "that this vaccine contains 'foreign genetic material that would directly coerce [her] body into making foreign proteins.'" *Id.* The court held that those beliefs are not religious, and that they are instead "*medical or scientific beliefs* about a particular medical device or mechanism, in this instance a vaccine, that are couched with religious language." *Id.* (emphasis added) (citing *Fallon*).

Under *Slattery*, as well as under earlier precedent, Plaintiff's contentions that mRNA vaccines would alter his DNA and that they would "enter the body's cells to instruct them to produce a specific protein" (Pl.'s Mem. of Law 24) are "*medical and scientific judgments* [that] *do not qualify* as religious beliefs." *Hand v. Bayhealth Med. Ctr., Inc.*, No. CV 22-1548-RGA, 2024 WL 359245, at *5 (D. Del. Jan. 31, 2024) (emphasis added), *aff'd sub nom. McDowell*,

---

[3] District courts within the Third Circuit consistently hold likewise. *See, e.g.*, *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 WL 643543, at *5 (E.D. Pa. Feb. 15, 2024) (holding stated belief that one's body is a "temple of [God's] Holy Spirit" is not religious); *McKinley v. Princeton Univ.*, No. 22-CV-5069, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023) (holding stated belief that the "body is a temple" is not religious).

2024 WL 4799870 (holding plaintiff's alleged belief about genetic alteration by COVID-19 vaccines "lack[ed] any explanation of how altering one's DNA, even if it is the one 'God created us with,' [was] prohibited by [his] religious beliefs"). Thus, here, as in *Slattery*, "based on the uncontroverted facts in the record, Plaintiff's request is scientific and/or medical in nature, *not religious*." *Slattery*, 2025 WL 1758616, at *5-*6 (emphasis added). The *Slattery* court granted summary judgment on that basis, *id.*, and so should this Court.[4]

As to the *non-mRNA* Janssen Biotech vaccine, Plaintiff now claims for the first time in his opposition brief that he objected to that vaccine because it "utilizes an adenovirus." Pl.'s Mem. of Law 24. As an initial matter, Plaintiff cannot augment the factual record in a legal filing. Regardless, this purported objection has nothing to do with DNA. Plaintiff explains neither how this somehow violates any belief about DNA nor how it is anything other than a scientific view. The undisputed fact remains that Plaintiff could have complied with the Mandate by getting the non-mRNA Janssen Biotech vaccine, which could not possibly have violated any belief about his DNA (even if such a belief was religious, which it is not).

Finally, Plaintiff relies on *Glover v. Children's Hospital of Philadelphia*, a case involving "an objection to receiving the COVID-19 vaccine based upon the use of aborted fetal cells," which the court found, for purposes of stating a claim on which relief could be granted, "constitutes a religious belief." No. CV 2:23-CV-0463, 2024 WL 290421, at *6 (E.D. Pa. Jan.

---

[4] Instead of engaging with this dispositive precedent, Plaintiff makes the irrelevant argument that Doylestown Health should not be allowed to question the "sincerity" of Plaintiff's religious belief (Pl.'s Mem. of Law 23), which Doylestown *did not do* at the time of the Religious Exemption Request and *does not do* in this litigation. Plaintiff further posits that the question whether an employee's belief is religious "is axiomatically fact-based and cannot be determined on summary judgment," citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). Pl.'s Mem. of Law 13. But *Seeger* does not say any such thing—it says only that "the threshold question of *sincerity* . . . is, of course, a question of fact[.]" 380 U.S. at 185 (emphasis added). None of Plaintiff's arguments about sincerity have any bearing on whether summary judgment is appropriate here.

25, 2024) (citing *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981)).  Unlike in *Glover* (and similar cases involving beliefs about fetal cells), Plaintiff does not argue, nor has he ever argued, that his objection to vaccines is based on the use of aborted fetal cells.  *Glover* thus is inapposite and does not support Plaintiff's argument that his stated beliefs are religious.

"[P]laintiffs cannot convert medical beliefs into religious ones by simply mentioning God."  *Shields v. Main Line Hosps., Inc.*, 700 F. Supp. 3d 265, 271 (E.D. Pa. 2023).  As the Third Circuit has stated, were that permitted, it would enable every employee to "'cloak[ ] with religious significance' a fundamentally secular objection to an employment term, and thereby create a 'blanket privilege' whenever an employee invokes scripture."  *McDowell*, 2024 WL 4799870, at *3 (citing *Africa*, 662 F.2d at 1031, 1035).  That is what Plaintiff attempts to do here, and this Court should not allow it.

        **3.**      **Plaintiff's Numerous Personal, Secular, and Medical Objections to COVID-19 Vaccines Over the Course of Months in Various Contexts Reinforce That His Exemption Request Was Not Based on a Religious Belief.**

Plaintiff attempts to draw an artificial distinction, not supported by applicable law, between statements he made about the vaccines that he now says were solely in his capacity as an MEC member, and the statements in his written Religious Exemption Request.  Pl.'s Mem. of Law 23-24.  Specifically, Plaintiff claims that the Religious Exemption Request is the only record evidence of his vaccine-related views, and that the Court must ignore the litany of previous representations he made about COVID-19 vaccines.  *Id.*  The factual record, however, is replete with Plaintiff's plainly secular, personal, and medical concerns about COVID-19 vaccines, including his deposition testimony, his discussions with Doylestown Health officials and colleagues about the vaccines, and his discussions with Defendant about amending his

Employment Agreement to address those concerns.  The Court should reject Plaintiff's attempt to cabin its analysis in the manner he suggests.

Plaintiff testified that, at the time when Defendant implemented the Mandate, his objections to the vaccine included generalized safety concerns (Def.'s Mem. of Law, Ex. 3, Pl. Dep. 154:4-155:1), risks of Guillain-Barre Syndrome and myocarditis (*id.* 128:22-130:17, 140:1-24, 193:1-24), and other alleged harmful effects on persons with previous COVID-19 infections (*id.* 128:22-130:17).  At that time, Plaintiff "was open about the fact that he was not interested in taking the vaccine" and "[i]t was very public that [Plaintiff] was concerned about the vaccine." Def.'s Mem. of Law, Ex. 15, Brexler Dep. 80:24-81:16.

In his capacity as an employee, Plaintiff engaged in discussions with Doylestown Health about amending his Employment Agreement to address the *personal* concerns he said he had about COVID-19 vaccines, all of which were medical and scientific.  Def.'s Mem. of Law, Ex. 22-23; Ex. 3, Pl. Dep. 193:1-24, 194:6-196:24, 297:16-300:19, 289:21-292:21, 297:16-300:19. These negotiations plainly were not ones that Plaintiff engaged in as an MEC member.

Plaintiff cites no legal authority supporting his novel suggestion that a court must circumscribe its analysis of an employee's religious exemption request to the four corners of a writing the employee explicitly labeled as such.  Indeed, relevant decisions within the Third Circuit do not analyze religious accommodation claims in the artificially narrow manner Plaintiff urges.  *See, e.g.*, *Aukamp-Corcoran*, 2022 WL 507479, at *4 (E.D. Pa. Feb. 18, 2022) (granting summary judgment for employer on failure-to-accommodate claim where plaintiff "admitted that she harbored a medical objection to vaccination at the time that her religious exemption request was submitted"); *Saqa v. Factory Mut. Ins. Co.*, No. CV 23-3994 (SDW) (JBC), 2024 WL 939689, at *4 (D.N.J. Mar. 5, 2024) (granting motion to dismiss failure-to-accommodate claim where employee alleged "concern that the COVID-19 vaccine would manipulate his divine-

created body and result in a sin against his God-given conscience," but previously had couched

objections in scientific terms).[5]

*        *        *

Plaintiff has offered no meaningful response to Doylestown Health's argument, based on

undisputed record evidence and on-point case law from this jurisdiction, including the just-issued

decision granting summary judgment in *Slattery*, that his objections to the COVID-19 vaccine

were not religious in nature.  Defendant is entitled to summary judgment on this basis alone.

**B.     No Genuine Issue of Material Fact Exists as to Whether Allowing Plaintiff to Perform Heart Surgery on Cardiac Patients Would Have Caused Doylestown Health an Undue Hardship.**

Ultimately, Plaintiff insisted that Defendant permit him to perform heart surgery while

unvaccinated—and thus more likely to contract COVID-19—on patients with cardiac conditions.

Plaintiff has admitted, and Dr. Salmon has confirmed, that these patients are at elevated risk of

serious consequences from COVID-19.  Def.'s Mem. of Law, Ex. 3, Pl. Dep. 60:10-61:11, Ex. 2,

Salmon Report at 5.  Third Circuit authority is clear: allowing Plaintiff to operate on them

without a COVID-19 vaccination would have imposed an undue hardship on Defendant.  *Bushra*

*v. Main Line Health, Inc.*, No. 24-1117, 2025 WL 1078135, at *2 (3d Cir. Apr. 10, 2025);

*Slattery*, 2025 WL 1758616, at *5-*6.  Plaintiff's attempt to distinguish *Bushra* fails, and his

---

[5] Plaintiff argues alternatively that "[o]nly part of [Plaintiff's] exemption request needs to be based upon [his] sincerely held religious beliefs in order to be entitled to Title VII protection" (Pl.'s Mem. of Law 23), relying on *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024), in which the Seventh Circuit reversed an order granting a motion to dismiss.  As the *McDowell* court explicitly recognized, however, *Passarella* is inapplicable because the law of the Third Circuit differs from that of the Seventh Circuit.  2024 WL 4799870, at *3 (quoting *Passarella*, 108 F.4th at 1014) (Rovner, J., dissenting)) (noting that, under *Africa* and *Fallon*, "to allow such generalized objections would leave 'almost no limit to the accommodations that an employer would have to entertain under Title VII's ban on religious discrimination," and that the Seventh Circuit in *Passarella* was "not bound by our precedents in *Africa* and *Fallon* that prohibit blanket religious privileges").  2024 WL 4799870, at *1 n.2 (citing *Africa*, 662 F.2d at 1031 and *Fallon*, 877 F.3d at 491 n.14).  Accordingly, because *Passarella* is contrary to Third Circuit law, it has no relevance to this case.

argument that the undue hardship defense is not available because Doylestown Health allegedly did not consider "other options" for accommodating Plaintiff is yet another mischaracterization of the law.

       1.       **Recent, Dispositive Case Law Applying the Undue Hardship Defense Requires Summary Judgment for Doylestown Health.**

"Undue hardship is a complete defense to [Plaintiff's] claims." *Bushra*, 2025 WL 1078135, at *2.[6] *Bushra*, which is indistinguishable from this matter in every material respect, conclusively disposes of Plaintiff's claims based on the undue hardship defense. Def.'s Mem. of Law 36-44. And *Slattery*, a similarly indistinguishable case, made even clearer that *Bushra* requires summary judgment where a doctor's accommodation request was to provide "direct patient care" while unvaccinated during the COVID-19 pandemic, because allowing that would pose "a risk and cost to health and safety that is *immeasurable*." *Slattery*, 2025 WL 1758616, at *5-*6 (emphasis added).

In *Slattery*, as here, a doctor requested and was denied a religious exemption from her employer-hospital's COVID-19 vaccination mandate. *Id.* at *2. Applying *Groff v. DeJoy*, 600 U.S. 447 (2023), the court noted that, like Plaintiff here, the doctor was "responsible, contractually," for "direct patient care." *Id.* at *5. Relying on an expert report by Dr. Salmon, the court further noted that "health care personnel were at an increased risk of exposure to COVID-19 cases": the same opinion Dr. Salmon has provided here. *Id.*; Def.'s Mem. of Law,

---

[6] Plaintiff asserts that "[a]n employer may claim a safety interest in implementing a workplace rule, but merely reciting that interest does not establish undue hardship and a factual review of the specific circumstances at issue must occur." Pl.'s Mem. of Law 11 (citing *Smith v. City of Atl. City*, 138 F.4th 759, 770 (3d Cir. 2025)). But Doylestown Health has not "merely recit[ed]" that it has a safety interest; it has explained at length the reasoning for the Mandate and presented expert opinion on why it was appropriate. And, like most of the cases on which Plaintiff relies, *Smith* is factually inapposite: it involved a bearded firefighter seeking exemption from grooming standards. *Smith*, 138 F.4th at 767-69.

Ex. 2, Salmon Report at 17.  The court concluded that, "logically speaking, the increased risk of contracting COVID-19, which may be a knowing decision by the physician who elected not to receive the vaccine, would have translated into an increased, unknown risk for the direct patient care recipient."  *Slattery*, 2025 WL 1758616 at \*5.

Recognizing that the Third Circuit "recently issued an opinion on this exact subject," and applying *Bushra*, the court determined that, as in this case, "the facts as stated in the record demonstrate significant potential non-economic costs, such as a patient who has direct contact with Dr. Slattery, contracting COVID-19 which, as stated by the Court in *Bushra*, and testified to by Dr. Salmon, could lead to death."  *Id.* at \*6.  Based on those facts, the court concluded, in relevant part:

> That is *a risk and cost to health and safety that is <u>immeasurable</u>*, and of which there is no turning back from the finality of the potential loss of life for a person who may contract COVID-19. Moreover, the Court cannot ignore, the enhanced possibility of contracting it at a place where patients who are sick and in need of medical care, emergent or long term, go for treatment from a physician who they presume is safe and will not expose them to a potentially grave illness. *There is no genuine dispute of material fact on this issue. As a result, the Court will hold consistent with the Third Circuit that the <u>Defendant has met their burden of showing an undue hardship</u> in accommodating Plaintiff's accommodation request*.

*Id.* at \*6 (emphasis added).  These are the *same* arguments, based on substantially the *same* undisputed facts, that Doylestown Health has presented.

Plaintiff offers no valid response to these arguments.  Instead, Plaintiff tries to sweep *Bushra* aside as somehow inapplicable because, although the facts in *Bushra* were nearly identical to those before the Court here and the Third Circuit relied heavily on a substantially similar expert report also prepared by Dr. Salmon, Plaintiff emphasizes that "<u>NO REBUTTAL EVIDENCE WAS PRESENTED</u>."  Pl.'s Mem. of Law 27 (all-capitals and emphasis in original).  Relying on this distinction, Plaintiff argues that his proffer of Dr. Peter McCullough as a

purported expert[7] in this case means that "any reliance on *Bushra* is unwarranted" and creates

disputed issues of material fact. *Id.*

The McCullough Report does not allow Plaintiff to escape summary judgment. The

material facts bearing on the existence of an undue hardship all are undisputed here, including

the core facts on which the Third Circuit in *Bushra* and the *Slattery* court recently relied in

finding no issue for trial on the undue hardship defense. Among other things, neither the

McCullough Report nor the factual record supports the existence of any dispute as to the

following:

- As Plaintiff admits and Dr. Salmon explains, cardiac patients are particularly vulnerable to COVID-19, in that they are at increased risk of serious consequences from the virus. Def.'s Mem. of Law, Ex. 2, Salmon Report at 17-19.

- As Dr. Salmon explains, vaccination reduces the likelihood of healthcare workers becoming infected with the virus, thereby reducing the likelihood of transmission by those same vaccinated healthcare workers. *Id.* at 8-9, 19.

- As the district court in *Bushra* recognized, "without the vaccine, [Plaintiff] was at great risk of contracting and transmitting the disease because he had frequent and direct contact with patients and staff as a doctor[.]" *Bushra v. Main Line Health, Inc.*, 709 F. Supp. 3d 164, 175 (E.D. Pa. 2023), *aff'd*, No. 24-1117, 2025 WL 1078135 (3d Cir. Apr. 10, 2025); Def.'s Mem. of Law, Ex. 2, Salmon Report at 8-9, 19. Dr. McCullough does not (and cannot) dispute this fact, instead focusing solely on the *transmissibility* of COVID-19 among vaccinated individuals and ignoring completely that *contracting* the virus is more likely in the absence of vaccination.

- Like the plaintiff-doctors in *Bushra* and *Slattery*, "[u]nvaccinated, [Plaintiff] risked infecting and even causing the death not only of his colleagues and [Doylestown Health] staff but also of vulnerable patients." *Bushra*, 709 F. Supp. 3d at 175; *Slattery*, 2025 WL 1758616 at *6; Def.'s Mem. of Law, Ex. 2, Salmon Report at 9.

- As was true of the hospital in *Bushra*, "[t]he ability of [Doylestown Health] to continue its mission of caring for, treating, and healing the sick and injured would have been severely impaired with an unvaccinated [Plaintiff] in its midst." *Bushra*, 709 F. Supp. 3d at 175; Def.'s Mem. of Law, Ex. 2, Salmon Report at 9-19.

---

[7] Doylestown Health has moved to exclude the report and testimony of Dr. McCullough based on his lack of qualifications as well as the unreliability and irrelevance of his opinions. ECF No. 39.

These undisputed material facts compel the same result the courts reached in *Bushra* and *Slattery*: summary judgment in favor of Defendant on Plaintiff's claims.

Plaintiff also raises an assortment of other arguments about immaterial matters that he maintains preclude summary judgment on Doylestown Health's undue hardship defense. Pl.'s Mem. of Law 27-31. Not one of them creates an issue of material fact:

- Plaintiff notes that Defendant was aware of the possibility of transmission of COVID-19 by vaccinated employees, and that a vaccinated and infected employee could transmit the virus to a patient. Pl.'s Mem. of Law 28. Again, this argument, variations of which Plaintiff has made ad nauseum, ignores the fact that vaccination reduces the likelihood of infection, which necessarily reduces the likelihood of transmission.

- Plaintiff observes that Doylestown Health may not have known whether an asymptomatic individual employee was infected with COVID-19. Pl.'s Mem. of Law 28-29. This empty truism applies equally to vaccinated and non-vaccinated employees and does not change the fact that infection is less likely among the vaccinated.

- Plaintiff states that Doylestown Health granted exemptions from the Mandate for some patient-facing employees, suggesting it could have done the same for Plaintiff. Pl.'s Mem. of Law 29. Plaintiff, however, ignores the fact that such employees, if exempted, were accommodated by way of reassignment to an area involving contact with only less vulnerable patients.[8] Pl.'s Mem. of Law, Ex. 13, Wortman Dep. 104:19-105:18. That simply was not possible for Plaintiff, who was contractually obligated to perform heart surgery and lacked credentials for other areas. Def.'s Mem. of Law, Ex. 18; Ex. 17, Hebel Dep. 27:4-24, 40:4-41:1; Ex. 14, Levy Dep. 133:10-135:7; Hebel Decl. ¶¶ 14-19. Nor does the record reflect that he ever suggested he was willing to accept such a reassignment. In fact, until the end, Plaintiff not only sought to perform heart surgery while unvaccinated, but he also asserted that with his inadequate proposed accommodations he posed *less risk* to his vulnerable patients than vaccinated workers. *See* Def.'s Mem. of Law, Ex. 29 at D0000203 ("By agreeing to daily health screenings and weekly testing for COVID-19, Dr. Auteri poses <u>less</u> of a COVID-19 transmission risk than vaccinated personnel

---

[8] Plaintiff also labels the distinction Doylestown Health made between vulnerable and less vulnerable patients for purposes of providing Mandate-related accommodations "an arbitrary delineation." Pl.'s Mem. of Law 4. That is not accurate; in fact, Doylestown developed this distinction in consultation with subject-matter experts in its Infection Control department and with input from other sources. Def.'s Mem. of Law, Hebel Decl.¶ 6. And Plaintiff himself has admitted that his cardiac patients were at increased risk of serious consequences from COVID-19. Def.'s Mem. of Law, Ex. 3, Pl. Dep. 60:10-61:11.

who are capable of transmitting the virus but not subjected to testing.") (emphasis in original).

- Plaintiff suggests that it would have been "appropriate" for Doylestown Health to perform COVID-19 testing in lieu of vaccination. Pl.'s Mem. of Law 29. But testing was not as effective as vaccination. Def.'s Mem. of Law, Ex. 2, Salmon Report at 16-17. Dr. Salmon explains why this is so, and neither Plaintiff nor Dr. McCullough disputes those reasons.

Doylestown Health has met all requirements for showing undue hardship under *Bushra* and *Slattery*. Accordingly, it has established a complete defense to Plaintiff's claims and is entitled to judgment as a matter of law.

> **2.    Doylestown Health Was Not Required to "Assess Individual Accommodations" or Review "Other Options" for Allowing Plaintiff to Perform Heart Surgery on Vulnerable Patients While Unvaccinated.**

It is undisputed that the accommodation Plaintiff requested was for Doylestown Health to allow him to perform heart surgery on cardiac patients while unvaccinated. There was no accommodation that would enable Doylestown Health to accept the safety and health risk such a scenario posed. Nevertheless, Plaintiff attempts to fault Doylestown Health for allegedly "fail[ing] to consider more than one set of accommodations of a particular exemption request," which he says "violate[s] Title VII" under *Groff*. Pl.'s Mem. of Law 19. Plaintiff cites no pertinent legal authority for this incorrect claim.

The court in *Trinh v. Shriners Hospitals for Children*, No. 3:22-CV-01999-SB, 2024 WL 4356501 (D. Or. Sept. 27, 2024), disposed of a similar argument. In *Trinh*, the plaintiff-employee, a nurse who sought a religious exemption from her hospital-employer's COVID-19 vaccination mandate, "misread[ ] recent Supreme Court precedent to require an individualized assessment and consideration of other options to evaluate undue hardship in every case." *Id.* at *1. The court held that such "a broad interpretation of *Groff* is wrong as a textual matter." *Id.* at *3. Additionally, "in the context of vaccine-mandate cases like this one, it would be unworkable

to impose an 'other options' requirement." *Id.* at *4.[9] Thus, *Groff* "*does not require* courts to

determine in every case whether the employer considered other possible accommodations not

proposed by the employee[.]" *Id.* at *2 (emphasis added); *see also Krone*, 2025 WL 1582793, at

*10 (holding *Groff* does not require an employer to "perform a separate, individualized inquiry

into the reasonableness of accommodating each of many similarly situated employees . . .

[because] [i]t would make little sense to require the employer to engage in such a 'futile act'").

Even assuming there was a legal obligation for Doylestown Health to explore "other

options" (and there was not), Plaintiff's arguments regarding this alleged omission do not create

any material fact issue.  Essentially, Plaintiff attempts to rewrite the history of his

accommodation request, claiming, for example, that Doylestown Health should have discussed

with him the possibility of reassigning him to a different area of the hospital, to treat different

patients.  Pl.'s Mem. of Law 20.   But, as noted above, Plaintiff never expressed any willingness

to move to another area and, in any event, his Employment Agreement and his specific

credentials foreclosed such a move.  Def.'s Mem. of Law, Ex. 14, Levy Dep. 133:10-135:7; Ex.

18; Ex. 17, Hebel Dep. 27:4-24, 40:4-41:1; Hebel Decl. ¶¶ 14-19.

Plaintiff has failed to identify any record evidence to support his argument that

Doylestown Health could allow him to treat vulnerable cardiac patients while unvaccinated

without undue hardship.  Thus, Doylestown Health is entitled to summary judgment.

---

[9] The *Trinh* court further explained that the request of a healthcare worker to treat patients while
unvaccinated is different from the request of the postal worker in *Groff* not to work certain shifts because,
"[i]n vaccine-mandate cases, the employer is not presented with a *Groff*-[ ]like accommodation request
for certain weekdays or weeks off," and, instead, "the option does not exist for an unvaccinated nurse like
Plaintiff to simply swap shifts or take a few weeks' unpaid leave." *Id.*  Thus, "[t]he language of *Groff*
does not require similar consideration when faced with accommodation requests that do not have
similarly obvious alternatives because the employee is an in-person healthcare worker during a global
pandemic." *Id.*

**C.    Plaintiff's Arguments Regarding *McDonnell Douglas* Burden-Shifting, Alleged Discriminatory Motive, and Pretext Are Inapplicable and Irrelevant to His Failure-to-Accommodate Claim.**

Plaintiff maintains that the Court should (1) apply the three-part *McDonnell Douglas* burden-shifting formula to his claim of failure to accommodate religion under Title VII; and (2) examine evidence of Doylestown Health's allegedly "discriminatory motives" for denying the Religious Exemption Request, to determine whether its stated reason for the denial decision was "'pretextual.'"  Pl.'s Mem. of Law 11-12 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).  On these stated premises, Plaintiff argues that summary judgment is inappropriate because "the Third Circuit has determined that whether discriminatory animus motivated an employee is a factual dispute in Title VII cases."  *Id.* at 12 (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).  However, all of the decisions Plaintiff cites in support of this proposition are *disparate treatment* cases, *not* failure-to-accommodate cases, and they do not support his argument.

"To establish a claim for religion-based employment discrimination, employees may rely on *either* the theory of 'disparate treatment' *or* 'failure to accommodate.'"  *Angelini v. U.S. Facilities, Inc.*, No. CV 17-4133, 2018 WL 3155995, at *8 (E.D. Pa. June 27, 2018) (emphasis added) (quoting *Abramson v. William Paterson College of N.J.,* 260 F.3d 265, 281 (3d Cir. 2001)) (other citation omitted).  Plaintiff asserts a failure-to-accommodate claim.[10]

"[W]hile an employer's alleged discriminatory motive is relevant to a disparate treatment claim, *it is not an element of a failure to accommodate claim*."  *Hailey v. Legacy Health*, No.

---

[10] In footnote 13 to his opposition brief, Plaintiff states that he "did not raise" a claim for "'disparate impact,'" purporting to quote from an argument he asserts Doylestown Health has made.  Pl.'s Mem. of Law 30 n.13.  Defendant presumes that Plaintiff intended to refer to "disparate treatment," since Plaintiff has never asserted a claim of "disparate impact," and such a theory of liability plainly is inapplicable here.

3:23-CV-00149-IM, 2024 WL 4253238, at *6 (D. Or. Sept. 20, 2024) (emphasis added) (citing

*Dykzeul v. Charter Commc'ns, Inc.*, No. CV 18-05826, 2019 WL 8198218, at *10 (C.D. Cal.

Nov. 18, 2019)).  Accordingly, a "[d]efendant's allegedly discriminatory motives are *not*

*material* to [a] Title VII claim for failure to accommodate, and so *any related disputes of fact do*

*not preclude summary judgment[.]*"  *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-CV-

01942-IM, 2024 WL 3316199, at *5 (D. Or. July 5, 2024) (emphasis added).[11]  Thus, an

employee's "claim against [an employer] for failing to reasonably accommodate his sincerely

held religious beliefs . . . '*does not turn on the employer's intent or actual motive*.'"  *Witham v.*

*Hershey Co.*, No. 23-CV-1563 (ECT/JFD), 2024 WL 4053028, at *6 (D. Minn. Sept. 5, 2024)

(emphasis added) (quoting *Peebles v. Potter*, 354 F.3d 761, 766–67 (8th Cir. 2004)); *see also*

*Dykezeul*, 2019 WL 8198218, at *10 ("[I]t would be superfluous if the same facts supported

liability under Title VII for both failure to accommodate and disparate treatment.").

Nor, for similar reasons, does the three-part *McDonnell Douglas* burden-shifting formula,

including its pretext step, apply to a failure-to-accommodate claim.  *Krone v. Legacy Health*, No.

3:22-CV-01986-AR, 2025 WL 1582793, at *7 (D. Or. May 6, 2025), *report and*

*recommendation adopted*, No. 3:22-CV-01986-AR, 2025 WL 1581042 (D. Or. June 3, 2025).

"Such a framework is of no use when analyzing a claim that an employer discriminated by

---

[11] *See also Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1149 (D. Or. 2024) ("Plaintiffs contend that it is a disputed issue of material fact 'whether [Defendant] acted with discriminatory motives.' . . . To the contrary, however, this issue is not material to this Motion: Plaintiffs' assertion misunderstands . . . Title VII[.]"); *O'Hailpin v. Hawaiian Airlines, Inc.*, No. CV 22-00532, HG-WRP, 2025 WL 1543951, at *6 (D. Haw. May 30, 2025) (holding that "[d]iscriminatory motive . . . [is] not relevant for failure-to-accommodate claims" and precluding plaintiffs, who asserted claims of disparate treatment based on denial of requests for exemption from COVID-19 vaccination mandate, from introducing at trial any evidence related to alleged motive of employer for denying requests and any evidence related to other employees' religious exemption requests) (citing *Lavelle-Hayden*, 744 F. Supp. 3d at 1149).

17

failing to accommodate the plaintiff's religious beliefs or practices, because discriminatory intent is not an element of a failure-to-accommodate claim." *Id.* (citation omitted).

Unsurprisingly given the uncontroverted authority discussed above, every case Plaintiff presents as support for his erroneous assertion that "courts allow plaintiff employees to demonstrate that the employer's articulated basis of undue hardship was 'pretextual'" (Pl.'s Mem. of Law 11) involved *disparate treatment claims*, not claims of failure to accommodate religion or the undue hardship defense thereto. *See Fuentes*, 32 F.3d at 764-67 (analyzing disparate treatment claim based on national origin); *Davis. v. Team Elec. Co.*, 520 F.3d 1080, 1089-87 (9th Cir. 2008) (gender-based disparate treatment, retaliation, and hostile work environment claims); *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1123-30 (9th Cir. 2000) (race and national origin disparate treatment claims); *Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1147–48, 1155 (N.D. Cal. 2019) (race-based disparate treatment claim); *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022-26 (D. Or. 2008) (disparate treatment claim based on religion).[12]

These cases are inapposite to Plaintiff's failure-to-accommodate claim and do not support his assertion that discriminatory motive and pretext are concepts that apply or even have any relevance to a failure-to-accommodate claim. Under *relevant* case law, "Plaintiff is *incorrect* that there is a disputed fact as to whether [Doylestown Health] acted with discriminatory motives." *Snow v. Women's Healthcare Assocs., LLC*, No. 3:23-CV-01393-IM, 2024 WL 3640111, at *10 (D. Or. Aug. 2, 2024) (emphasis added). That is because "where the defendant moves for summary judgment on undue hardship," purported disputes about alleged

---

[12] Plaintiff cites almost exclusively to Ninth Circuit case law in connection with this unfounded argument, yet he fails to disclose to the Court the extensive, well-developed authority from that same Circuit (discussed above) that directly contradicts and invalidates his argument.

"discriminatory motives" are immaterial and thus *cannot* defeat summary judgment. *Id.* (citing *MacDonald*, 2024 WL 3316199, at *5) (granting summary judgment for employer where plaintiff-employee sought to create disputes of material fact about employer's motives, noting that discriminatory motives are not material to failure-to-accommodate claim).

In an effort to bolster his specious characterization of the applicable legal standard, Plaintiff also misconstrues language from the U.S. Supreme Court's opinion in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). That case involved a claim of disparate treatment based on an employer's decision not to hire an applicant, which decision the applicant alleged was motivated by a desire to avoid accommodating her known religious belief. *Id.* at 770-71. *Abercrombie & Fitch Stores* therefore articulated only a "rule *for disparate-treatment claims* based on a failure to accommodate a religious practice," which is that a decision not to hire an applicant who will need a religious accommodation is unlawful if a "desire to avoid the prospective accommodation" is a "motivating factor" for the hiring decision. *Id.* at 773-74 (emphasis added). The Court did *not* address the legal standard for evaluating standalone failure-to-accommodate claims like the one Plaintiff asserts in this case.

Moreover, even under Plaintiff's mischaracterization of the law, the portions of the record that Plaintiff maintains reflect "discriminatory animus toward" Plaintiff (Pl.'s Mem. of Law 15) consist entirely of statements by Doylestown Health about its development of the Mandate and a process for evaluating requests for exemption from the Mandate. Pl.'s Mem. of Law 16-18. Plaintiff labels these statements "Title VII violations," but not one of them is *even about* Plaintiff or about the Religious Exemption Request. *Id.* Such generalized statements related to the Mandate do not reflect that Doylestown Health "imposed improper burdens on" Plaintiff in connection with the Religious Exemption Request (Pl.'s Mem. of Law 18), and they are not relevant to Plaintiff's failure-to-accommodate claim. *See, e.g.*, *Witham*, 2024 WL

19

4053028, at *6 n.4 (holding employer's "motive, if at all relevant, must pertain to its failure to accommodate, not its implementation of the COVID-19 vaccine mandate in the first place.").[13]

The Court should not adopt or accept the spurious legal framework Plaintiff has concocted. But even were it to do so, there would be no triable issue as to discriminatory motive or pretext, and the record would require judgment for Doylestown Health as a matter of law.

## III.    CONCLUSION

There is no genuine issue of material fact in this case. Accordingly, and for all the reasons set forth above as well as those in its opening brief, Defendant respectfully requests that the Court enter judgment in its favor on both counts of Plaintiff's Second Amended Complaint.

Respectfully submitted,

*/s/ Christopher D. Durham*
Christopher D. Durham, Esquire
Adam D. Brown, Esquire
Elisabeth G. Bassani, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1800

Date:  July 3, 2025                    *Attorneys for Defendant, VIA Affiliates*
                                       *d/b/a Doylestown Health Physicians*

---

[13] Further, as noted above, Plaintiff persistently ignores the undisputed fact that, in considering the Religious Exemption request, Doylestown Health *did not question* the sincerity of Plaintiff's stated religious belief and *did not examine* whether it was in fact religious.  Def.'s Mem. of Law, Ex. 28 at D0000146, Hebel Decl.¶ 12, Ex. 30 at D0000826.  It is glaringly inconsistent, if not disingenuous, for Plaintiff to argue, on the one hand, that Doylestown Health waived its right to raise the non-religious nature of Plaintiff's belief by not contemporaneously questioning the belief he stated in the Religious Exemption Request, and, on the other hand, to claim that Doylestown Health "violate[d] Title VII" by— in Plaintiff's mischaracterization—allegedly asking whether his beliefs were sincere or religious.  These conflicting and irreconcilable positions highlight the fatal defects in his claims.

## <u>CERTIFICATE OF SERVICE</u>

I, Adam D. Brown, certify that on July 3, 2025, I caused a copy of the foregoing

Defendant's Reply in Further Support of Motion for Summary Judgment to be filed

electronically, and the same is available for viewing and downloading from the ECF System by

the following counsel of record:

**Kimberly L. Russell, Esq.**
**Daniel Zachariah, Esq.**
Kaplan Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corp. Center
910 Harvest Dr.
P.O. Box 3037
Blue Bell, PA 19422
610-941-2541
krussell@kaplaw.com
dzachariah@kaplaw.com

**Karyn L. White, Esq.**
Pacific Justice Institute
PA/NJ Office P.O. Box 276600
Sacramento, CA 95827
609-335-4833
kwhite@pji.org

*Attorneys for Plaintiff*

/s/ Adam D. Brown
Adam D. Brown, Esquire
DOCID:  DOCPROPERTY DOCXDOCID
DMS=IManage
Format=<<LIB>>\<<NUM>>.<<VER>>